## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CAROLYN PERLIN, individually and on behalf of all others similarly situated, | Case No. 2:16-cv-10635-GCS-SDD |
| Plaintiff, | Hon. George C. Steeh |
| v. | |
| TIME INC., a Delaware Corporation, | |
| Defendant. | |

## TIME'S MOTION TO DISMISS
## PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

Defendant Time Inc. ("Time") hereby moves for the dismissal of Count 1 of Plaintiff's Complaint for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Count 2 of Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In support of this Motion, Time is contemporaneously filing a Brief, which is incorporated herein.

Pursuant to E.D. Mich. Local R. 7.1(a), counsel for Defendant conferred with counsel for Plaintiff about this Motion by telephone on May 4, 2016. By and through counsel, Plaintiff opposes the relief sought in the Motion.

Dated:  May 6, 2016          /s/ Jeffrey Landis
                             Marc Zwillinger
                             Jeffrey Landis
                             Nury A. Siekkinen
                             ZWILLGEN PLLC
                             1900 M St. NW, Ste. 250
                             Washington, DC 20036
                             (202) 706-5203

                             Robert M. Jackson (P40723)
                             Arthur T. O'Reilly  (P70406)
                             HONIGMAN MILLER SCHWARTZ
                             AND COHN, LLP
                             660 Woodward Avenue
                             2290 First National Building
                             Detroit, MI  48226
                             (313) 465-7400
                             rjackson@honigman.com
                             aoreilly@honigman.com

                             *Counsel for Defendant Time Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CAROLYN PERLIN, individually and on behalf of all others similarly situated, | Case No. 2:16-cv-10635-GCS-SDD |
| Plaintiff, | Hon. George C. Steeh |
| v. | |
| TIME INC., a Delaware Corporation, | |
| Defendant. | |

# TIME'S BRIEF IN SUPPORT OF
# MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

i

## ISSUE PRESENTED

1.     Whether Plaintiff's VRPA claim should be dismissed for lack of standing under the VRPA and Article III of the U.S. Constitution and for failure to state a claim?

**Defendant's Answer:  Yes.**

2.     Whether Plaintiff's unjust enrichment claim should be dismissed for failure to state a claim when it is based solely on Time's retention of the purchase price of her subscription when the only wrong alleged is a violation of the VRPA, which itself provides a complete remedy?

**Defendant's Answer:  Yes.**

## **CONTROLLING OR MOST IMPORTANT AUTHORITY**

M.C.L. § 1712 *et seq.*

S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016)

Federal Rule of Civil Procedure 12(b)(6)

*Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855 (D. Minn. 2015)

*Lahti v. Fosterling*, 357 Mich. 578 (1959)

*In re Oswalt*, 318 B.R. 817 (W.D. Mich. 2004) *aff'd* 444 F.3d 524 (6th Cir. 2006)

*In re Certified Questions from U.S. Ct. of Appeals for the Sixth Cir.*, 416 Mich. 558 (1982)

*Seaton v. Wayne County Prosecutor*, 223 Mich. App. 313 (1998)

*Dep't of Agric. v. Appletree Mktg., L.L.C.*, 485 Mich. 1 (2010)

# **TABLE OF CONTENTS**

ISSUE PRESENTED ................................................................................... ii

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ........................................................................................3

    A. Perlin and Her Allegations ...............................................................3

    B.  Prior VRPA Litigation Against Time .................................................3

    C.  The VRPA ...........................................................................................5

ARGUMENT ..............................................................................................7

    I.  Plaintiff Lacks Article III Standing to Pursue Her VRPA Claim .............7

    A. The Amended VRPA Requires Actual Damages ...............................8

    B. The Actual Injury Requirement Applies Retroactively .....................8

        1)  The Michigan legislature intended retroactively ...........................9

        2)  The actual damages requirement is remedial and does not impact a
           vested right .....................................................................................16

           a)  The requirement is remedial ...................................................16

           b)  SB 490 does not take away Plaintiff's vested rights...............18

    C. Plaintiff's Other Alleged Harms Do Not Confer Standing...............19

    II. Plaintiff's Unjust Enrichment Claim Fails .............................................22

    A. Plaintiff Fails to Adequately Allege an Unjust Enrichment
        Claim .................................................................................................22

B. If the Amendment Does Not Apply Retroactively, the VRPA
Provides Plaintiff's Exclusive Remedy.............................................24

CONCLUSION .......................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AlliedSignal, Inc. v. Amcast Intern. Corp.*,
　　177 F. Supp. 2d 713 (S.D. Ohio 2001) .........................................................13

*Allor v. DeClark, Inc.*,
　　No. 300953, 2012 WL 555779 at *2 (Mich. App. Feb. 21, 2012) ...............23

*Allstate Ins. Co. v. Faulhaber*,
　　157 Mich. App. 164 (1987) ...................................................................10, 17

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009).................................................................................22, 24

*Atty. Gen. v. Flint City Council*,
　　269 Mich. App. 209 (2005) ..........................................................................18

*Beaudry v. TeleCheck Servs., Inc.,* 579 F.3d 702 (6th Cir.2009) ...........................15

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007).................................................................................22, 24

*Bonilla v. Lafler*,
　　No. 06–15466, 2009 WL 2386080, at *21 (E.D. Mich. July 30, 2009).........8

*Bristol Mfg., Inc. v. Jennings Gen. Maint., Inc.*,
　　No. 272006, 2008 WL 1004879 at *6 (Mich. Ct. App. Apr. 10, 2008)........24

*Cain v. Redbox Automated Retail, LLC*,
　　981 F.Supp.2d 674 (E.D. Mich. 2013) .........................................................15

*Carlsen v. GameStop, Inc.*,
　　112 F. Supp. 3d 855 (D. Minn. 2015) .................................................... 20-21

*City of Detroit v. Walker*,
　　258 Mich. App. 594 (2003) ..........................................................................18

*Coulter-Owens v. Time, Inc.*,
  308 F.R.D. 524 (E.D. Mich. 2015) ..........................................................5, 15

*Coulter-Owens v. Time, Inc.*,
  2016 WL 612690, *3 (E.D. Mich. Feb. 16, 2016) ...................................5, 15

*Dale Baker Oldsmobile, Inc. v. Fiat Motors of N.A., Inc.*,
  794 F.2d 213 (6th Cir. 1986) ........................................................................17

*Dep't of Agric. v. Appletree Mktg., L.L.C.*,
  485 Mich. 1 (2010) .......................................................................................25

*Detroit Edison Co. v. State*,
  320 Mich. 506 (1948) ...................................................................................16

*Doe v. Boland*,
  698 F.3d 877 (6th Cir. 2012) ..........................................................................7

*Doe v. Mills*,
  212 Mich. App. 73 (1995) .............................................................................21

*Duffy v. Grange Ins. Co. of Michigan*,
  No. 290198, 2010 WL 3655979, at *1-2 (Mich. App. Sept. 21, 2010) ....9, 16

*Durant v. Servicemaster Co.*,
  109 F. App'x 27 (6th Cir. 2004) ...................................................................22

*First Place Bank v. Main*,
  No. 09-cv-14672, 2010 WL 3908659, at *1 (E.D. Mich. Oct. 1, 2010) .........7

*Frank W. Lynch & Co. v. Flex Technologies, Inc.*,
  463 Mich. 578 (2001) .................................................................................9, 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000).........................................................................................7

*Galaria v. Nationwide Mut. Ins. Co.*,
  998 F. Supp. 2d 646 (S.D. Ohio 2014)....................................................20, 24

*Gen. Motors Corp v. Dep't of Treasury,*
    290 Mich. App 355 (2010) ...........................................................................11

*GMAC LLC v. Treas. Dept.,*
    268 Mich. App. 365 (2009) ..........................................................................19

*Halaburda v. Bauer Pub. Co.,*
    No. 12-CV-14390, 2013 WL 4012827, at *4-5
    (E.D. Mich. Aug 6, 2013) .......................................................................4, 15

*In re Certified Questions from U.S. Ct. of Appeals for the Sixth Cir.,*
    416 Mich. 558 (1982) ..............................................................................9, 17

*In re JetBlue Airways Corp., Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) .........................................................23

*In re Oswalt,*
    318 B.R. 817 (W.D. Mich. 2004) *aff'd* 444 F.3d 524 (6th Cir. 2006) ..........11

*In re Oswalt,*
    444 F.3d 524 (6th Cir. 2006) .......................................................................10

*Inhabitants of Montclair Tp. v. Ramsdell,*
    107 U.S. 147 (1883)....................................................................................10

*Kammer Asphalt Paving Co, Inc. v. East China Twp. Sch.,*
    443 Mich. 176 (1993) .................................................................................23

*Kelly Servs., Inc. v. Treasury Dept.,*
    296 Mich. App. 306 (2012) .........................................................................11

*Kinder v. Meredith Corp.,*
    14-CV-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) ...................15

*LaFontaine Saline, Inc. v. Chrysler Group, LLC,*
    496 Mich. 26 (2014) ....................................................................................9

*Lahti v. Fosterling,*
    357 Mich. 578 (1959) ..................................................................... 14-15, 18

*Lindh v. Murphy*,
    521 U.S. 320 (1997)..............................................................................13

*Low v. LinkedIn Corp*,
    No. 11–CV–01468, 2011 WL 5509848, at *4–5
    (N.D. Cal. Nov. 11, 2011) ...............................................................20

*McCreary v. Shields,*
    333 Mich. 290 (1952) ....................................................................22

*Morgan v. Taylor School Dist.*,
    187 Mich. App. 5 (1991) .................................................................13

*NL Ventures VI Farmington, LLC v. City of Livonia*,
    No. 323144, 2015 WL 9392721 (Mich. App. Dec. 22, 2015) ....................23

*People v. Peltola*,
    489 Mich. 174 (2011) ....................................................................12

*People v. Sheeks*,
    224 Mich. App. 584 (2001) ............................................................10

*Reeves v. Reno*,
    61 F. Supp. 2d 661 (E.D. Mich. 1999) ....................................10, 13

*Roberts v. Hamer*,
    655 F.3d 578 (6th Cir. 2011) ..........................................................8

*Romein v. Gen. Motors Corp.*,
    168 Mich. App. 444 (1988) *aff'd*, 436 Mich. 515 (1990)
    *aff'd*, 503 U.S. 181 (1992) ..............................................................11

*Rookledge v. Garwood*,
    340 Mich. 444 (1954) ....................................................................17

*Rory v. Contl. Ins. Co.*,
    473 Mich. 457 (2005) ....................................................................12

*Saldana v. Kelsey-Hayes Co.*,
    178 Mich. App. 230 (1989) ............................................................21

*Sanders v. Allison Engine Co., Inc.*,
    703 F.3d 930 (6th Cir. 2012) .........................................................................12

*Seaton v. Wayne County Prosecutor*,
    223 Mich. App. 313 (1998) ................................................................9, 11, 16

*Van Buren Tp. v. Garter Belt Inc.*,
    673 N.W.2d 111 (Mich. App. 2003) ...................................................... 18-19

*Willingham v. Global Payments, Inc.*,
    No. 1:12-CV-01157-RWS, 2013 WL 440702 at *7
    (N.D. Ga. Feb. 5, 2013) ................................................................................23

## Statutory Provisions and Rules

28 U.S.C. § 1332(d) ...................................................................................................19

Fed. R. Civ. P. 12(b)(6)..........................................................................................8, 22

M.C.L. § 445.1712 ................................................................................................3, 6

M.C.L. § 445.1713(d) .................................................................................................3

Mich. Court Rule 3.501(A)(5) ..............................................................................14

S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016)....................................................*passim*

# PRELIMINARY STATEMENT

Three days after this Court granted Time summary judgment in another class action alleging violations of the VRPA, the same attorneys prosecuting that action filed this putative class action. Like its predecessor, this action is premised on Time's use of a third party to host its consumer marketing database and its participation in a cooperative—and seeks thousands of dollars in damages for a Plaintiff (and each putative class member) who suffered no injury. But the Michigan legislature recently passed SB 490, an amendment to the VRPA clarifying that a plaintiff must suffer actual injury to pursue a claim. Because this requirement applies retroactively, Plaintiff cannot rely on a mere statutory violation for standing. She must allege some other legally cognizable injury. Because Plaintiff fails to do so, she lacks standing.

Michigan law dictates that the VRPA's actual injury requirement apply retroactively. The statute's plain language demonstrates that the legislature intended as much, describing the amendment as "curative and intended to clarify" that a civil action can only be brought by a customer suffering actual damages. SB 490's legislative history confirms that the legislature understood this requirement would apply retroactively. And SB 490 was passed amid controversy in the courts regarding whether the VRPA requires actual injury (of which the legislature was aware), and with another section of SB 490 expressly stating that it will only apply prospectively, further confirming the legislature's retroactive intent for the actual

1

injury requirement.

Retroactive application of the actual injury requirement is also appropriate because SB 490 is "remedial" and does not take away a "vested right." First, SB 490 is remedial because its purpose is to clarify an existing law and it impacts only how a plaintiff would pursue a civil suit under the VRPA. Second, SB 490 does not take away a "vested right" because the ability to sue under a statute without actual damages is not a vested right; nor is the mere expectation of the continuation of an existing statute. No longer able to rely on a mere statutory violation as injury-in-fact, none of Plaintiff's other alleged injuries confers standing. Multiple courts have found "overpayment" and "would not have shopped" allegations like Plaintiff's here insufficient to confer standing. And the disclosure of magazine subscription records are not among the four types of invasions of privacy protected by the common law right of privacy.

In addition, Plaintiff's unjust enrichment claim fails as a matter of law because, like her conclusory allegations of actual harm, she has not plausibly alleged she lost anything of value or that Time was "unjustly" enriched at her expense. Further, if the actual damages requirement is not given retroactive effect, Plaintiff's unjust enrichment claim based on Time's alleged disclosure of magazine information cannot stand because the VRPA provides her complete and exclusive remedy.

# BACKGROUND

## A.    Perlin and Her Allegations

Time is a media company that publishes magazines, including *People*. Compl. ¶ 1. Like most companies, Time uses third parties to assist it in conducting its business. One such third party hosts Time's consumer marketing database, where Time houses subscriber information. *Id.* ¶ 35. Plaintiff Carolyn Perlin claims she purchased a subscription to *People* magazine from Time around March 2015. *Id.* ¶¶ 29, 30. Other than saying she purchased her subscription from Time "directly," she does not say *how* she subscribed to *People*. *Id.* ¶ 30. Perlin concedes, however, that she received her purchased magazines from Time. *Id.* ¶¶ 38, 70.

Perlin's sole allegation against Time is that it disclosed "information that identifies [her] as having purchased a subscription to People," which she calls her "Personal Reading Information." *Id*. ¶ 34. She complains about disclosures to so-called "data miners" and "database cooperatives." *Id*. ¶35. Although she names no data miner or database cooperative specifically, the disclosures she complains of appear to be the same as the disclosures to Acxiom and Wiland complained of by plaintiff in the dismissed Coulter-Owens case.[1] *See infra* at 4-5.

---

[1] Such allegations would not amount to a violation of the VRPA. Disclosures to Axciom fall within the agency exception and disclosures to Wiland fall within the marketing exception. M.C.L. §§ 445.1712; 445.1713(d). Moreover, Time stopped disclosing Michigan subscriber data to Wiland in 2013, two years before Perlin alleges she subscribed. Exhibit A at 13.

3

Perlin claims that Time's disclosure of her so-called Personal Reading Information violates the VRPA. Compl. ¶ 4. And that as a result, her magazine subscriptions were less valuable than she thought. *Id.* ¶¶ 38, 63, 64. She also suggests that had she known about Time's alleged VRPA violations prior to subscribing, she would not have purchased her *People* subscription. *Id.* ¶ 65. She does not allege, however, that she knew of the VRPA when she subscribed, or that any portion of the price she paid for her subscription was intended to ensure confidentiality of her information.

## B.  **Prior VRPA Litigation Against Time**

The same counsel representing Plaintiff also represented Rose Coulter-Owens ("Coulter-Owens") in her failed class action asserting VRPA and unjust enrichment claims against Time. Coulter-Owens originally objected to Time's alleged renting of mailing lists to companies. *Coulter-Owens*, ECF 119 at 12, attached as Exhibit A. She later abandoned that theory, focusing instead on Time's use of two service providers—Acxiom, who hosted Time's consumer marketing database, and Wiland, who administered a list rental "cooperative." *Id.*

Like Perlin, Coulter-Owens initially alleged that the value of her personal information was diluted or that she overpaid for her subscription based on Time's alleged VRPA violations. *Halaburda v. Bauer Pub. Co.,* No. 12-CV-14390, 2013 WL 4012827, at *4 (E.D. Mich. Aug 6, 2013). In addressing Time's motion to

4

dismiss for lack of standing, however, this Court observed that "it was unclear ... whether plaintiff could articulate any injury other than a violation of the statute." *Id.* The Court nevertheless found that Coulter-Owens had standing because the VRPA, as it was then written, "contain[ed] absolutely no language to require that a claimant suffer any actual injury apart from a violation of the statute." *Id.*

Coulter-Owens later disavowed any theory of actual injury when moving for class certification. *See* June 2, 2015 Mot. Hrg. Tr. At 47:15-21, *Coulter-Owens*, ECF 115, attached as Exhibit B ("[We] told [Time] over and over again that we're not pursuing those theories of actual harm. We're pursuing statutory damages under the VRPA."); *Coulter-Owens*, 308 F.R.D. 524, 534 (E.D. Mich. 2015) ("plaintiff, as well as the remainder of the class are not proceeding under a theory of actual damages"). This Court eventually found that Coulter-Owens and the class did not purchase their subscriptions "at retail" as the VRPA requires. *Coulter-Owens*, 2016 WL 612690, *3 (E.D. Mich. Feb. 16, 2016). The Court awarded summary judgment to Time. *Id.* Just ***three days*** after that decision, Plaintiff's counsel filed this case.

## C.    The VRPA

In 1988, after a newspaper published in a profile of Judge Robert Bork the titles of films his family had rented from a local video store, Congress passed the Video Privacy Protection Act. Compl. ¶ 11. A few weeks later, Michigan passed the VRPA which placed certain limitations on the disclosure of customer information.

M.C.L. § 445.1712. For 25 years, the VRPA sat dormant, with no one ever charged

with a misdemeanor by Michigan authorities or sued civilly. That changed in 2012,

when attorneys started brandishing it against magazine publishers.

On April 13, 2016, the Michigan legislature passed a bill amending the VRPA

("SB 490"). S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016), attached as Exhibit C. On

May 2, 2016 Michigan's governor signed SB 490 into law. The law clarifies that the

VRPA requires a plaintiff to suffer actual damages to bring a claim. SB 490's

Enacting Section states:

> This amendatory act is ***curative*** and is ***intended to clarify*** . . . that a civil action
> for a violation of those prohibitions [on disclosure of customer information]
> may only be brought by a customer ***who has suffered actual damages as a
> result of the violation.***

SB 490 Enacting Provisions, § 2 (emphasis added). This requirement is also in

Section 5 of SB 490, which revised the previous version of the VRPA as follows

(additions in capitalized, bolded text, deletions struck through):

> **(2) A** customer **DESCRIBED IN SUBSECTION (1) WHO SUFFERS
> ACTUAL DAMAGES AS A RESULT OF A VIOLATION OF THIS
> ACT** may bring a civil action against the person **THAT VIOLATED THIS
> ACT** and may recover both of the following:
>
> > (a) ~~Actual~~ **THE CUSTOMER'S ACTUAL** damages, including
> > damages for emotional distress**.** ~~, or $5,000.00, whichever is greater.~~
>
> > (b) ~~Costs~~ **REASONABLE COSTS** and ~~reasonable~~ attorney fees.

SB 490, § 5(2). During discussion of SB 490, Senator Warren urged the Senate to

reject SB 490, warning that "the law will likely be interpreted as retroactive." 33

6

Jour. of Mich. Senate, 98th Legis., Apr. 12, 2016 ("Senate Jour.") at 473 (excerpts

attached as Exhibit D). She also tried to re-insert the original damages provision that

did not include language clarifying the actual injury requirement. *Id.* at 469. The

Senate rejected these efforts, however, and passed SB 490 as presented. It was

subsequently signed by the Governor. 42 Senate Jour. pp. 633.[2]

## ARGUMENT

## I.   PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE HER VRPA CLAIM

To establish Article III standing, a plaintiff must demonstrate (1) cognizable

injury, (2) traceable to the defendant's alleged conduct (3) redressable by judicial

decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528

U.S. 167, 180-81 (2000). To satisfy the injury-in-fact prong, a plaintiff must allege

an "actual … invasion of a concrete and particularized legally protected interest."

*Doe v. Boland*, 698 F.3d 877, 882 (6th Cir. 2012) (internal quotation marks and

citation omitted). Here, because the Complaint identifies no legally protected interest

---

[2] It is unclear when SB 490 takes effect. *See* S.B. 490 ("This amendatory act takes effect 90 days after the date it is enacted into law" and "This act is ordered to take immediate effect."). If SB 490 takes effect 90 days after it was signed, which would be July 31, 2016, it is unlikely that this motion will be fully briefed and argued before then in the normal course. But this Court can also set the schedule in a way that no decision will be rendered until SB 490 goes into effect. *See First Place Bank v. Main*, No. 09-cv-14672, 2010 WL 3908659, at *1 (E.D. Mich. Oct. 1, 2010) (noting that district courts have "broad discretion to manage the schedule by which litigation takes place").

7

of Plaintiff that Time invaded, Plaintiff lacks Article III standing.[3]

### A.     The Amended VRPA Requires Actual Damages

The VRPA as amended requires that a plaintiff suffer actual injury to bring an action. Section 5 states that only a customer, "who suffers actual damages as a result of a violation of this act" may pursue a civil action. SB 490, § 5(2). This requirement is confirmed by the statute's enacting section which expressly states that "a civil action for a violation … may only be brought by a customer who has suffered actual damages as a result of the violation." S.B. 490, Enacting Provisions, § 2.

### B.     The Actual Injury Requirement Applies Retroactively

The VRPA's actual injury requirement applies not only prospectively, but also retroactively. "The question of [whether] a Michigan statute should be applied retroactively is a matter of state law." *Bonilla v. Lafler*, No. 06–15466, 2009 WL 2386080, at *21 (E.D. Mich. July 30, 2009). Michigan courts consider four principles when determining whether a law has retroactive effect:

> First, we consider whether there is specific language providing for retroactive application. Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in

---

[3] For the reasons Plaintiff lacks Article III standing, she also lacks statutory standing and fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). The Sixth Circuit has explained that "[w]here a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted." *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011). Here, a legally cognizable injury is a now a required element of a VRPA claim. Plaintiff has not adequately alleged such injury, and therefore fails to state a claim upon which relief can be granted and lacks statutory standing.

determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute.

*LaFontaine Saline, Inc. v. Chrysler Group, LLC*, 496 Mich. 26, 38-39 (2014).[4] These principles demand that SB 490's actual injury requirement be applied retroactively.

### 1. The Michigan legislature intended retroactivity

The Michigan legislature intended SB 490's clarification of the actual injury requirement to apply to all VRPA claims, regardless of when they were brought. In determining whether an amendment to a statute should be applied retroactively "'[t]he primary and overriding rule is that legislative intent governs.'" *Frank W. Lynch & Co. v. Flex Technologies, Inc.*, 463 Mich. 578, 583 (2001). To determine legislative intent, courts are "guided by 'traditional tools of statutory construction'" which include examination of the statutory 'language itself, the specific context in

---

[4] Courts place heavy weight on the first element. *Duffy v. Grange Ins. Co. of Michigan*, No. 290198, 2010 WL 3655979, at *1 (Mich. App. Sept. 21, 2010) ("In determining whether a statute should be applied prospectively or retroactively, the intent of the Legislature controls.") The second element is inapplicable because "[s]econd rule cases relate to measuring the amount of entitlement provided by a subsequent statute in part by services rendered pursuant to a prior statute." *In re Certified Questions from U.S. Ct. of Appeals for the Sixth Cir.*, 416 Mich. 558, 571 (1982). Courts generally analyze elements three and four together, determining which of the contrasting categories the statute falls within. *See, e.g., Seaton v. Wayne County Prosecutor*, 223 Mich. App. 313, 317 (1998) ("Accordingly, the present question is determined by either rule three or rule four.").

which the language is used, and the broader context of the statute as a whole,' as well as the statute's legislative history." *Reeves v. Reno*, 61 F. Supp. 2d 661, 665 (E.D. Mich. 1999). These indicia demonstrate that Michigan's legislature intended retroactivity here.

**First**, the statute's plain language indicates retroactive intent. When examining a statute "[i]t is the duty of the court to give effect, if possible, to every clause and word ... avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883). This includes the enacting section. *See In re Oswalt*, 444 F.3d 524, 529 (6th Cir. 2006). Here, the enacting section states that SB 490 is "***curative*** and intended to ***clarify***" that the VRPA requires actual damages. SB 490, Enacting Provisions, § 2 (emphasis added).

Michigan courts recognize that where an amendment clarifies an existing law, it applies retroactively. In *Allstate Ins. Co. v. Faulhaber*, 157 Mich. App. 164 (1987), the court held that because "the amendment was intended by the Legislature to clarify [an] ambiguity … the Legislature intended for it to apply retroactively to all actions." *Id*. at 167. Likewise, in *People v. Sheeks*, 224 Mich. App. 584 (2001), the court found a statute applied retroactively where the language "plainly indicates an intent to clarify the statute and to reform existing rights under the statute." *Id*. at 594. Other courts have reached similar conclusions. S*ee In re Oswalt*, 318 B.R. 817, 821

10

(W.D. Mich. 2004) *aff'd* 444 F.3d 524 (6th Cir. 2006); *Kelly Servs., Inc. v. Treasury Dept.*, 296 Mich. App. 306, 317 (2012).

Michigan courts also apply amendments retroactively when the amendment is curative. In *Romein v. Gen. Motors Corp.*, 168 Mich. App. 444 (1988) *aff'd*, 436 Mich. 515 (1990) *aff'd*, 503 U.S. 181 (1992), in finding that an amendment to the Workers' Disability Compensation Act should apply retroactively, the court relied on the fact that the act "describe[d] the amendatory subprovisions as 'remedial and curative.'" *Id.* at 454. In doing so, the court observed that "[c]urative legislation has been defined as legislation enacted to cure defects in prior law." *Id.* at 456. *See also Gen. Motors Corp v. Dep't of Treasury*, 290 Mich. App 355, 371 (2010) (curative amendment was retroactive); *Seaton*, 223 Mich. App. at 323 ("Courts have consistently upheld the retroactive application of 'curative' legislation which corrects defects subsequently discovered in a statute and which restores what Congress had always believed the law to be.").

Intent to apply the actual damages requirement retroactively is further confirmed by the contrast between Section 5 and Section 3(d) of SB 490. SB 490 clarifies two aspects of the VRPA: (1) that it does not prohibit disclosures incident to the ordinary course of business and (2) that civil actions require actual damages. S.B. 490, Enacting Provisions, § 2. The ordinary course of business exception is clarified in subsection 3(d). That subsection includes two sentences, one laying out

11

the exception and a second stating that the subsection "only applies to a record or information that is created or obtained after the effective date of the amendatory act that added this subdivision." S.B. 490, § 3(d). The actual damages requirement is clarified in Section 5. Unlike in Section 3, however, that section does not restrict the actual damages requirement to prospective application.

"The Supreme Court has instructed that where a statute includes 'particular language in one section ... but omits it in another section of the same Act,' it leads to the general presumption that the 'disparate inclusion or exclusion' was done 'intentionally and purposely.'" *Sanders v. Allison Engine Co., Inc.*, 703 F.3d 930, 936 (6th Cir. 2012). The Michigan Supreme Court has characterized this maxim (known as *expressio unius est exclusio alterius*) as "a rule of construction that is a product of logic and common sense" and noted that "no maxim is more uniformly used to properly construe statutes." *Rory v. Contl. Ins. Co.*, 473 Mich. 457, 504 (2005). Such logic and common sense apply here. SB 490 includes language limiting the ordinary course of business exception to prospective application but excludes such language from the section clarifying the actual damages requirement. "Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v. Peltola*, 489 Mich. 174, 185 (2011).

Courts have applied *expressio unius* in cases evaluating retroactivity of an

12

amendatory act. In *Reeves*, 61 F. Supp. 2d 661, where Congress provided for retroactive application in one provision of AEDPA, the court found "that silence in another provision created 'negative implication' that Congress intended prospective application when it had not expressly provided for retroactive application." *Id.* at 666. The court in *AlliedSignal, Inc. v. Amcast Intern. Corp.*, 177 F. Supp. 2d 713 (S.D. Ohio 2001), likewise used the maxim to conclude that Congress intended certain sections of CERCLA to have retroactive effect. *Id.* at 729-30. So too here. If the legislature had not intended that SB 490's clarification regarding actual damages be applied retroactively, it would not have expressly limited the ordinary course of business exception to prospective application.[5]

***Second***, the legislature's intent is visible from the bill's legislative history. Courts are guided by a statute's legislative history when determining whether a statute applies retroactively. *See Reeves*, 61 F. Supp. 2d at 665; *Morgan v. Taylor School Dist.*, 187 Mich. App. 5, 12 (1991). Here, that history shows that the Michigan legislature was aware of the retroactive effect of the actual injury requirement when it passed SB 490.

---

[5] This negative implication is made even stronger by the fact that the Michigan legislature amended both sections of the VRPA at the same time. "[N]egative implications raised by disparate provisions are strongest when the portions of a statute treated differently had already been joined together and were being considered simultaneously when the language raising the implication was inserted." *Lindh v. Murphy*, 521 U.S. 320, 330 (1997).

Senator Warren noted that "if passed, the law will likely be interpreted as retroactive." Senate Jour. at 473. Similarly, Perlin's counsel objected to the House Commerce Committee that the bill's proponents were seeking to "giv[e] SB 490 retroactive effect." Testimony of Ari J. Scharg, Cmte. on Commerce and Trade, Mich. House of Reps., Feb. 9, 2016 ("Scharg Testimony"), at 10, attached as Exhibit E. Legislators thus understood the retroactive impact of SB 490, but nevertheless "determined that the benefits of retroactivity outweigh[ed] the potential for disruption or unfairness." *Frank W. Lynch*, 463 Mich. At 587. If anything, applying the injury requirement retroactively ***cures*** an unfairness. Michigan law already prohibits actions seeking statutory damages without actual injury from proceeding as class actions in state court. *See* Mich. Court R. 3.501(A)(5). It is only because of a procedural loophole that such actions have been filed in federal court. Applying the actual injury requirement retroactively closes that loophole and harmonizes the VRPA with Rule 3.501(A)(5).

***Third***, the Michigan legislature's intent is demonstrated by the fact that the amendment was adopted amid ongoing controversy over statutory standing. "In the absence of an express intent to make the amendment prospective only, courts must look to the facts and circumstances surrounding the adoption of the amendment to determine whether or not the legislature intended it to be retroactive." *Lahti v. Fosterling*, 357 Mich. 578, 589 (1959).

14

Michigan federal courts have presided over multiple class actions brought under the VRPA. These courts were confronted with the question of whether the statute required a plaintiff to suffer actual damages to have standing. *See, e.g*, *Cain v. Redbox Automated Retail, LLC*, 981 F.Supp.2d 674, 682–684 (E.D. Mich. 2013); *Halaburda*, 2013 WL 4012827 at *4; *Kinder v. Meredith Corp.*, 14-CV-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014). This was no easy question. In *Coulter-Owens*, this Court noted its "hesitation" to find that allegations like those here "meet the definition of an injury in fact" and "reluctance" to find that the VRPA does "not require a showing of actual damages." *Halaburda* 2013 WL 4012827, at *4-5. The Court ultimately held, however, that it could not distinguish the case from the Sixth Circuit's decision in *Beaudry v. TeleCheck Servs., Inc.,* 579 F.3d 702 (6th Cir.2009), *f*inding that the FCRA did not require actual damages. Chief Judge Rosen expressed the same hesitation in another VRPA case. *See Cain*, 981 F. Supp. 2d at 683.

With SB 490, the Michigan Legislature addressed and corrected these doubts, making the VRPA distinguishable from the FCRA and the Sixth Circuit's decision in *Beaudry.* The Michigan legislature knew of this ongoing controversy and the fact that courts had previously interpreted the VRPA as not requiring actual damages. In her statement, Senator Warren noted the ongoing VRPA-related controversy. Senate Jour. at 473. As did Perlin's counsel in his testimony. Scharg Testimony at 1. Where, as here, an amendment is "enacted soon after controversies arose as to the

interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change." *Detroit Edison Co. v. State*, 320 Mich. 506, 520 (1948).

> 2. **The actual damages requirement is remedial and does not impact a vested right**

Retroactive application of the damages requirement is also required because the provision is remedial and does not impact a vested right. "Statutes related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing will, in the absence of language clearly showing a contrary intention, be held to operate retrospectively and apply to all actions accrued, pending or future, there being no vested right to keep a statutory procedural law unchanged and free from amendment." *Seaton*, 223 Mich. App. at 318. The clarification of the actual damages requirement meets this description.

> a) The requirement is remedial

SB 490 is remedial because it clarifies an existing law. "A statute is remedial if it is designed to correct an existing oversight in the law … or is intended to reform or extend existing rights." *Duffy v. Grange Ins. Co. of Michigan*, 290198, 2010 WL 3655979 at \*2 (Mich. App. Sept. 21, 2010). The Michigan legislature amended Section 5 to clarify that plaintiffs bringing civil actions under the VRPA must suffer actual injury. *See supra* Section I.B. Such amendment is remedial in that it

16

"abridge[s] superfluities of former laws, remedying defects therein, or mischiefs thereof." *Rookledge v. Garwood*, 340 Mich. 444, 453 (1954).

The actual damages requirement is also remedial because it impacts only how a plaintiff enforces a VRPA right. A "remedial statute" is one related to "the means employed to enforce a right or redress an injury." *Id.*; *accord Dale Baker Oldsmobile, Inc. v. Fiat Motors of N.A., Inc.*, 794 F.2d 213, 216 (6th Cir. 1986). In *In re Certified Questions from U.S. Ct. of Appeals for the Sixth Cir.*, 416 Mich. 558 (1982), the Michigan Supreme Court categorized as remedial a statute imparting a comparative negligence regime in product liability actions. *Id.* at 578. The court explained that "[s]ince the Legislature has adopted comparative negligence as a principle which reduces plaintiff's damages in proportion to the amount of his negligence, such legislation operates to improve and further a remedy." *Id.* at 466. Similarly, in *Allstate*, 157 Mich. App. 164 (1987), the court found remedial an amendment that effectively changed the statute of limitations for a claim from three years (under the catchall provision) to two years. *Id.* at 16-68. The court reasoned that "the amendment did not create a new substantive right for insurance companies but instead simply provided for a definitive statute of limitations in reimbursement actions." *Id.* at 167. SB 490 likewise does not create a new substantive right, but instead provides a definitive statement of the Michigan legislature's intent that a plaintiff must suffer actual injury before seeking to bring a civil VRPA action.

17

b)      SB 490 does not take away Plaintiff's vested rights

SB 490 does not take away a vested right.  All SB 490 takes away is the plaintiffs' statutory ability to recover something—$5,000—for nothing (without injury). "It is the general rule that that which the legislature gives it may take away. A statutory defense, or a statutory right, though a valuable right, is not a vested right, and the holder thereof may be deprived of it." *Lahti*, 357 Mich. at 589. *See also Atty. Gen. v. Flint City Council*, 269 Mich. App. 209, 216 (2005) ("A right that arises by statute is valuable, but not vested"). In *Flint City Council*, the court evaluated the retroactivity of a statute reducing the compensation of local council members. The court found that the council members had no vested right to a certain level of continued compensation on the ground that any right they had to that compensation level arose by statute and could be eliminated by statute. *Id.* at 216. Likewise, here, even assuming the legislature originally intended to allow plaintiffs to recover $5,000 without any actual injury (which the legislature clarified it did not), the legislature can change its mind.

Further, "a right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws." *City of Detroit v. Walker*, 258 Mich. App. 594, 633 (2003). *See also Van Buren Tp. v. Garter Belt Inc.*, 673 N.W.2d 111, 135 (Mich. App. 2003) ("[N]o one has a vested right to the continuation of an existing law by

18

precluding the amendment or repeal of the law."); *GMAC LLC v. Treas. Dept.*, 268 Mich. App. 365, 378 (2009) ("[A] vested right cannot be premised on an expectation that general laws will continue."). Plaintiff can, at most, assert that she could, under the previous version of the VRPA, bring a civil action without suffering any actual injury, and now the legislature has clarified that she may not. But even if that were the case, the ability to obtain a $5,000 windfall without suffering any injury is not a vested right; and she still has the ability to assert a claim if she has actual injury.

*          *          *          *

The VRPA as amended requires that a plaintiff suffer actual injury to assert a VRPA claim. That requirement applies retroactively and prospectively. Accordingly, Perlin can no longer rely on the mere allegation of a violation of the statute as injury-in-fact to confer Article III standing. She must allege actual cognizable injury. The injuries she vaguely references in her complaint, however, do not qualify as legally protected interests sufficient to confer standing.[6]

### C.     Plaintiff's Other Alleged Harms Do Not Confer Standing

Plaintiff's allegation that she paid more for the subscription than she would have had she known about Time's alleged practices or that she would not have paid at all is not enough to confer standing. To the contrary, it recasts the oft-rejected

---

[6] The fact that Plaintiff can no longer avail herself of statutory damages without any injury also renders her unable show that the amount in controversy in this case exceeds the $5 million needed for CAFA jurisdiction. *See* 28 U.S.C. § 1332(d).

argument that the value of a plaintiff's personal information is diminished by disclosure. *See Low v. LinkedIn Corp*, No. 11–CV–01468, 2011 WL 5509848, at *4–5 (N.D. Cal. Nov. 11, 2011) (finding allegation "that [plaintiff] was not justly compensated for [defendant's] transfer of his personal data" was "too abstract and hypothetical to support Article III standing"); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 658 (S.D. Ohio 2014) (refusing to find "that the loss of privacy alone constitutes an injury sufficient to confer standing"); *Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 861 (D. Minn. 2015) ("Courts have generally found 'overpayment' theories insufficient to establish injury, even in situations involving highly sensitive PII.").

*Carlsen* is instructive. The plaintiff alleged that he was injured when a video game website shared his information in violation of its privacy policy. *Id.* at 858. He alleged that he would not have paid as much for his subscription or he would not have purchased a subscription had he known about those disclosures. *Id.* at 859. The court first rejected plaintiff's overpayment theory, noting that the plaintiff failed to allege that he paid anything specific for privacy protections or facts showing that the market value of the subscription was less than he paid. *Id.* at 862. The plaintiff's "general allegation that 'Defendants' services were fundamentally less useful and valuable' than what he paid for" did not suffice. *Id.* The court then rejected plaintiff's "would not have shopped" theory because the plaintiff failed to allege facts showing

20

2:16-cv-10635-GCS-MKM   Doc # 10   Filed 05/06/16   Pg 33 of 39   Pg ID 69

he relied upon or even read the privacy policy. *Id.* at 864-65.

Like the plaintiff in *Carlsen*, Plaintiff here asserts overpayment and would-not-have-shopped theories with mere conclusions unsupported by facts. Plaintiff fails to allege that she paid anything specific for additional "privacy protections" or that she would have commanded a discount to forego the protections of the VRPA. She also does not allege that she relied upon or read the VRPA before subscribing— which makes sense given she does not allege that she even knew of the VRPA when subscribing. Plaintiff's conclusory allegations cannot confer Article III standing.

An alleged violation of Plaintiff's common law privacy right does not confer standing because disclosing subscription information cannot invade the common law right of privacy. The common law right to privacy protects only "against four types of invasion of privacy: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Doe v. Mills*, 212 Mich. App. 73, 80 (1995). Time has not intruded upon Plaintiff's seclusion by disclosing *its own business records*, because it did not obtain them "by a means or method that is objectionable to a reasonable person." *Saldana v. Kelsey-Hayes Co.*, 178 Mich. App. 230, 233 (1989) (parties' business relationship can limit intrusion upon seclusion claims). Nor does Plaintiff allege that Time appropriated

21

her likeness, made public disclosures that place her in a false light, or disclosed "embarrassing private facts."

## II.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS

Plaintiff's unjust enrichment claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[7] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Labels, conclusions and "formulaic recitation[s]" will not suffice. *Twombly*, 550 U.S. at 555. Where the alleged facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint has alleged, but has not shown, that the pleader is entitled to relief. *Iqbal*, 556 U.S at 679. That is the case here.

### A.   Plaintiff Fails to Adequately Allege an Unjust Enrichment Claim

Plaintiff's allegations do not support a claim of unjust enrichment. Unjust enrichment is the retention of "money or benefits which in justice and equity belong to another." *McCreary v. Shields,* 333 Mich. 290, 294 (1952). The defendant must

---

[7] If the Court dismisses Plaintiff's VRPA claim, it should also decline to exercise supplemental jurisdiction over her unjust enrichment claim. *See, e.g., Durant v. Servicemaster Co*., 109 F. App'x 27, 30 (6th Cir. 2004).

22

be "unjustly enriched *at the expense of another*." *Kammer Asphalt Paving Co, Inc. v. East China Twp. Sch.,* 443 Mich. 176, 185 (1993) (emphasis added). While a plaintiff's recovery is calculated by the defendant's benefit, the plaintiff *must suffer loss* such that the defendant's gain is at her expense. *See Allor v. DeClark, Inc.*, No. 300953, 2012 WL 555779 at *2 (Mich. App. Feb. 21, 2012). "The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *NL Ventures VI Farmington, LLC v. City of Livonia*, No. 323144, 2015 WL 9392721 (Mich. App. Dec. 22, 2015).

Plaintiff fails to state an unjust enrichment claim because she fails to allege that she lost anything of value. Plaintiff's unjust enrichment theory is that she would not have provided Time with personal data or paid Time for her magazine subscription had she known Time would disclose her information. Compl. ¶¶ 69, 73. But Time was always entitled to have her personal data once she subscribed. And courts have repeatedly held that such data has no inherent monetary value and plaintiffs do not suffer loss when such data is disclosed to a third party. *See Willingham v. Global Payments, Inc*., No. 1:12-CV-01157-RWS, 2013 WL 440702 at *7 (N.D. Ga. Feb. 5, 2013) ("Plaintiffs' PII does not have an inherent monetary value."); *In re JetBlue Airways Corp., Privacy Litig*., 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (passenger data disclosed to third party in violation of airline's privacy policy had no compensable value). Even if Plaintiff's Personal Reading

Information has monetary value, she fails to allege facts which show Time's disclosures actually deprived her of that value. *See Galaria*, 998 F. Supp. 2d at 660 (plaintiffs "failed to allege any facts explaining how their PII became less valuable").

Nor is Plaintiff's subscription price an adequate loss. Plaintiff does not allege that she did not receive the magazines she purchased. To the contrary, she concedes that Time sent her magazines. Compl. ¶¶ 38, 70.[8] And her allegation that she would not have purchased her subscription at all is factually untenable and fails to pass muster under *Iqbal/Twombly* where she was not even aware of the VRPA when she subscribed. Similarly, although the Complaint asserts that Time should not be able to retain money it received by disclosing Plaintiff's personal data, *id.* ¶ 72, the complaint fails to identify any such money Time actually received. Such conclusory allegations are simply not enough.

### B.    If the Amendment Does Not Apply Retroactively, the VRPA Provides Plaintiff's Exclusive Remedy

If the Court does not dismiss Plaintiffs' VRPA claim because of the enactment of SB 490, her unjust enrichment claim should be dismissed for the additional reason that it is preempted by her VRPA claim. Plaintiff's unjust enrichment claim is

---

[8] For the same reason, any benefit conferred to Time was also not unjust. *See Bristol Mfg., Inc. v. Jennings Gen. Maint., Inc.*, No. 272006, 2008 WL 1004879 at *6 (Mich. Ct. App. Apr. 10, 2008) ("It is not enough that . . . the defendant received a benefit. ... [T]he plaintiff must show that the defendant was unjustly or inequitably enriched at the plaintiff's expense.").

24

premised on her theory that the price she paid for her *People* subscription entitled her to non-disclosure of her Personal Reading Information. Compl. ¶ 71. Any purported entitlement to such non-disclosure, however, is only alleged to arise from the VRPA's prohibitions on disclosure. *Id.*

Because any privacy interest in non-disclosure of Plaintiff's Personal Reading Information is covered by the VRPA, if Plaintiff's VRPA claim survives the Amendment, it preempts her unjust enrichment claim. *See, e.g.*, *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 7–10 (2010) ("[I]f 'a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only.'"). Plaintiff either has a claim under the VRPA for Time's allegedly improper disclosure of her Personal Reading Information (in which case the VRPA provides her a complete and adequate remedy), or she does not (in which case, Time cannot have been unjustly enriched under Plaintiff's theory which relies entirely upon Time's alleged violation of the VRPA).

## CONCLUSION

For the foregoing reasons, Time respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated:  May 6, 2016          /s/ Jeffrey Landis
                             Marc Zwillinger
                             Jacob Sommer
                             Jeffrey Landis

Nury Siekkinen
ZWILLGEN PLLC
1900 M St. NW, Ste. 250
Washington, DC 20036
(202) 706-5203

Robert M. Jackson (P40723)
Arthur T. O'Reilly (P70406)
HONIGMAN MILLER SCHWARTZ
AND COHN, LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
(313) 465-7400
rjackson@honigman.com
aoreilly@honigman.com

*Counsel for Defendant Time Inc.*

### <u>CERTIFICATE OF SERVICE</u>

I certify that on May 6, 2016, I electronically filed the foregoing Motion to Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) with the Clerk of the Court via the ECF system, which will send a notification of such filing to all counsel of record.

/s/ Jeffrey Landis
Jeffrey Landis

27