# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CAROLYN PERLIN, individually and on behalf of all others similarly situated, | Case No. 16-cv-10635 |
| Plaintiff, | Hon. George Caram Steeh |
| v. | |
| TIME INC., a Delaware Corporation, | |
| Defendant. | |

## RESPONSE TO TIME'S MOTION TO DISMISS

# ISSUES PRESENTED

1.    Can the 2016 Amendments to Michigan's Video Rental Privacy Act be applied retroactively where the Legislature did not demonstrate that it clearly intended the amendments to have retroactive effect?

**Plaintiff's Answer: No.**

2.    Has Perlin suffered a concrete injury sufficient to confer Article III standing because Time invaded her substantive right to privacy in her choice of reading materials, as defined by the Michigan Legislature in the Video Rental Privacy Act?

**Plaintiff's Answer: Yes.**

3.    Does Perlin state a claim for unjust enrichment where she alleges that Time made money by way of the unlawful disclosure of her private reading habits to third-party data miners?

**Plaintiff's Answer: Yes.**

i

# CONTROLLING AND MOST IMPORTANT AUTHORITY

*Boelter v. Hearst Commc'ns, Inc.*, No. 15-cv-3934,
　　2016 WL 3369541 (S.D.N.Y. June 17, 2016)

*Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180 (Mich. 2001)

*Kia Motors Am. Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*,
　　706 F.3d 733 (6th Cir. 2013)

*Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*People v. Phillips*, 666 N.W.2d 657 (Mich. 2003)

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)

*Tkachik v. Mandeville*, 790 N.W.2d 260 (Mich. 2010)

# TABLE OF CONTENTS

INTRODUCTION.................................................................................1

BACKGROUND ................................................................................2

ARGUMENT ....................................................................................3

    **I.**      **The Legislature Did Not Evince Clear Intent to Make the 2016 VRPA Amendments Retroactive.** .......................................4

    **II.**    **Time's Invasion of Perlin's Private Choice in Reading Materials Was a Concrete Injury Sufficient to Support Article III Standing.** .............................................12

          **A.**    *Spokeo* **Confirmed that the Legislature Can Identify Intangible Concrete Harms Redressable in Federal Court** ...............................................................13

          **B.**    **Time's disclosure was not "a bare procedural violation."**..16

          **C.**    **Time's Disclosure of Its Subscribers' Choices in Reading Materials was a Concrete Injury.** ...........................19

               1.    The VRPA bears a close relationship to traditional common law actions for breach of confidentiality. ........20

               2.    The Michigan Legislature exercised its judgment to protect an individual's interest in the privacy of their reading choices. ......................................22

    **III.**   **Perlin States a Claim for Unjust Enrichment.** ................25

CONCLUSION..................................................................................27

## INTRODUCTION

In an era where consumers' personal data is "under siege from a variety of different directions," even some of the technology companies who make their fortunes collecting such data are beginning to recognize that "[n]ever has the privacy and security of customer data been as important as it is now." Matt Apuzzo, et al., *Apple's Line in the Sand Was Over a Year in the Making*, N.Y. Times (Feb. 18, 2016), http://nyti.ms/1Q4q33S. Other companies, however, relics of a world before big data, are more cavalier with their customers' private information. Instead of defending its customers' right to keep their personal reading habits to themselves, Defendant Time, Inc. offers only *ad hominem* attacks on counsel and thinly reasoned jurisdictional arguments to dig itself out of the hole it created when it unlawfully disclosed what Plaintiff Carolyn Perlin chose to read in the privacy of her home for its own pecuniary gain. (*See* dkt. 10 at 1, 3-5, 15-16) (repeatedly arguing that the actions of Perlin's counsel in other matters bear on the merits of this case).

None of those arguments strip this Court of jurisdiction to decide if Time's conduct violated Michigan's Video Rental Privacy Act. Time's first filing contends that Perlin lacks Article III standing because recent amendments to the VRPA removed the statutory damages provisions of that Act. However, those amendments are not retroactive and therefore have no effect on this litigation.

1

Time also filed a supplemental brief selectively quoting from the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (a case in which Plaintiff's counsel represented the respondent), to argue that this Court lacks jurisdiction because Perlin has not alleged actual harm resulting from Time's violation of the VRPA. Time's argument demonstrates a misunderstanding of *Spokeo*, which rejected this precise argument. *Spokeo* confirms that Perlin has Article III standing because Time's undisputed disclosure of her personal reading choices was an invasion of her legally protected privacy interest. Similar invasions have long been actionable at common law through suits for breach of confidence, and the Michigan Legislature expressly identified and elevated this particular kind of invasion to judicially cognizable status through the VRPA. Though intangible, the invasion of Perlin's privacy rights was a concrete and particularized injury. Finally, Time seeks dismissal of Perlin's unjust enrichment claim, but in doing so it improperly fails to accept the allegations in her complaint as true. Time's motion should therefore be denied, and the case should proceed to discovery.

## BACKGROUND

Time publishes magazines, to which Perlin and other Michigan consumers subscribed. (Dkt. 1 ¶ 30.) In order to wring more money out of its magazine business, Time sells lists of its customers to interested third parties. (Dkt. 1 ¶ 26.) However, Time can sell the lists at a premium if it has other information about

2

each customer, especially demographic information like age, income level, ethnicity, marital status, and health status, among other information. (*Id.*) Not having that information at its fingertips, Time employs the services of data miners, who give it access to a wealth of information about consumers—for a price. (Dkt. 1 ¶¶ 22, 25.) In exchange for access to this valuable demographic information, Time must tell the data miners its subscribers' names and the magazines that each subscribes to. (Dkt. 1 ¶¶ 24-26; 34-35.) Time never tells its customers what it's doing and goes so far as to actively conceal these practices from subscribers. (Dkt. 1 ¶¶ 27, 33.)

Michigan's Preservation of Personal Privacy Act (known as the Video Rental Privacy Act or "VRPA") prohibits a seller of written materials, such as Time, from disclosing information about its customers' purchases without the customers' consent. *See* M.C.L. § 445.1712. To remedy this invasion of her statutorily-protected right to privacy in her choice of reading materials, Perlin sued Time under the VRPA and common law unjust enrichment seeking, among other things, injunctive relief and statutory damages. Time now moves to dismiss.

## ARGUMENT

Time's motion makes a facial challenge to jurisdiction under Rule 12(b)(1) and seeks dismissal for failure to state a claim under Rule 12(b)(6). Accordingly, all allegations in the complaint must be taken as true, and all reasonable inferences

3

drawn in Perlin's favor. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701, 707 (6th Cir. 2015); *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). Under this standard, none of Time's three arguments for dismissal have merit.

## I.   The Legislature Did Not Evince Clear Intent to Make the 2016 VRPA Amendments Retroactive.

The Michigan Supreme Court has repeatedly held that there is a "strong presumption against the retroactive application of statutes in the absence of a clear expression by the Legislature that the act be so applied." *Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180, 185 (Mich. 2001). As it explained, "a requirement that the Legislature make its intention clear 'helps ensure that [the Legislature] itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.'" *Id.* at 184 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268 (1994)). Thus, "[a]bsent a clear legislative intent that the act be so applied," an act should not be deemed to apply retroactively. *Id*. at 185.

"Notably absent from the amended VRPA is any express language indicating the law's retroactive application," *Boelter v. Hearst Commc'ns, Inc.*, No. 15-cv-3934, 2016 WL 3369541, at *5 (S.D.N.Y. June 17, 2016), and for that reason alone, the law fails to "clearly manifest[]" an intent to rebut the presumption of prospective application. *Kia Motors Am. Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733, 739 (6th Cir. 2013). The Legislature

4

"knows how to make clear its intention that a statute apply retroactively," most obviously by using the word "retroactive." *Lynch*, 624 N.W.2d at 183 (citing M.C.L. § 141.1157 ("This act shall be applied retroactively. . . ."); M.C.L. § 324.21301a ("The changes in liability that are provided for in the amendatory act that added this subsection shall be given retroactive application.")). Consequently, "the absence of express retroactive language is a strong indication that the Legislature did not intend a statute to apply retroactively." *Kia Motors*, 706 F.3d at 739 (citing *Brewer v. A.D. Transp. Express, Inc.*, 782 N.W.2d 475, 478 (Mich. 2010)).[1]

Furthermore, not only is there a complete absence of explicit retroactivity language, the amendments expressly do not take effect until ninety days after they were enacted, *i.e.*, July 31, 2016. 2016 Mich. Pub. Acts 92, Enacting Section 1. ("This amendatory act takes effect 90 days after the date it is enacted into law.").

---

[1]     In a recent oral argument involving the VRPA, the Michigan Supreme Court confirmed the primary importance of whether the Legislature used express retroactivity language, and the defendant in that case—represented by the same counsel as Time here—also confirmed that in amending the VRPA, the Legislature did not do so:

> Chief Justice Young: Is [the amended VRPA] retroactive?
> Defendant's Counsel: That's what's the open question, your honor.
> Chief Justice Young: Was it *expressly* retroactive?
> Defendant's Counsel: No, it wasn't.

Michigan Supreme Court, *151104 Deacon v. Pandora Media, Inc.* (Apr. 28, 2016), https://youtu.be/Q- WJQF5sSj4?t=41m.

The Michigan Supreme Court has repeatedly held that "providing a specific future effective date and omitting any reference to retroactivity supports a conclusion that a statute should be applied prospectively only." *Johnson v. Pastoriza*, 818 N.W.2d 279, 287 (Mich. 2012) (quoting *Brewer*, 782 N.W.2d at 479). Here, both the complete absence of express retroactivity language and the express inclusion of a future effective date establish that the VRPA amendments apply prospectively. *See LaFontaine Saline, Inc. v. Chrysler Group, LLC*, 852 N.W.2d 78, 86 (Mich. 2014) ("The Legislature's silence regarding retroactivity in its amendment … undermines any argument that [the amended statute] was intended to apply retroactively. That the Legislature provided for the law to take immediate effect [on a future date] only confirms its textual prospectivity.").

Faced with an explicit future effective date and an absence of express retroactivity language, Time seeks refuge in the enactment provision's statement that "[t]his amendatory act is curative and intended to clarify." 2016 Mich. Pub. Acts 92, Enacting Section 2. But even where the Michigan Legislature intends to cure some problem in the statute's application or clarify some ambiguity, it *still* uses express retroactivity language or provides an antecedent effective date if it wishes the cure/clarification to apply retroactively. *Compare id.* Enacting Sections 1-2 *with* 2014 Mich. Pub. Acts 352, Enacting Sections 1-2 (calling amendatory act "a curative measure" and specifying that it "applies to all fines, costs, and

6

assessments ordered or assessed under [a statutory provision] before June 18, 2014") *and* 2007 Mich. Pub. Acts 103, Enacting Section 2 (stating that amendatory act "is curative and intended to prevent any misinterpretation," *and* that the act "is retroactive"). Indeed, several of the cases on which Time attempts to rely actually illustrate this point. *See, e.g.*, *Romein v. Gen. Motors Corp.*, 425 N.W.2d 174, 176-77 (Mich. Ct. App. 1988) (quoting act amending workers' compensation statute that, while "remedial and curative," also explained exactly how it applied to injuries occurring before an antecedent date); *In re Oswalt*, 444 F.3d 524, 529 (6th Cir. 2006) ("the amendment states explicitly that it applies to mortgages recorded prior to July 12, 2003, and it contains a separate retroactivity clause."); *Gen. Motors Corp. v. Dep't of Treasury*, 803 N.W.2d 698, 706-07 (Mich. Ct. App. 2010) ("The Legislature gave the act retroactive effect by providing as follows: . . . 'This amendatory act is retroactive[.]'") (quoting 2007 Mich. Pub. Acts 103).

In fact, the only cases Time cites that even arguably support its view that the Legislature's use of the phrase "curative and intended to clarify" requires retroactive application are *Allstate Insurance Co. v. Faulhaber*, 403 N.W.2d 527 (Mich. Ct. App. 1987) and *People v. Sheeks*, 625 N.W.2d 798 (Mich. Ct. App. 2001). But both of those cases are decisions of intermediate Michigan courts predating the Michigan Supreme Court's opinion in *Lynch* and its requirement of "a clear expression by the Legislature" that an act apply retroactively. 624 N.W.2d

7

at 185. *Allstate*, for example, cites a 1984 Michigan Supreme Court case for the proposition that the Legislature can "expressly *or impliedly*" indicate that an act apply retroactively, 403 N.W.2d at 166 (emphasis added), and *Sheeks* in turn cites *Allstate* for that proposition, 625 N.W.2d at 801. After *Lynch*, however, only a "clear expression" of such intent will do. 624 N.W.2d at 185.

Time also attempts to find refuge in what the Michigan Supreme Court has termed "the so-called 'exception' to the general rule of prospective application providing that statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intent is manifested." *Lynch*, 624 N.W.2d at 183 (internal quotations omitted). But the new requirement that a person must "suffer[] actual damages" does destroy or diminish existing rights. 2016 Mich. Pub. Acts 92. Prior to the amendment, a consumer suffering injury to her intangible—but nevertheless real—privacy interest without any consequential monetary loss or bodily harm (*i.e.*, actual damages) held a private right under the VRPA. After the amendment, such a consumer no longer does. That change significantly affects substantive rights by terminating such consumers' ability to bring suit to protect their privacy, and thus does not fall within the so-called exception. *See Lynch*, 624 N.W.2d at 183. Regardless, even if the amendment *did* fall within the exception and was thus

8

presumptively retroactive, the Legislature manifested a contrary intent by expressly providing a future effective date for the amendment to take effect.

Time's legislative history argument fares no better. The Michigan Supreme Court has repeatedly warned that "resort to 'legislative history' in the search for legislative intent is a perilous venture" that is "doubly fraught with danger in Michigan" because Michigan (unlike Congress) does not keep a word-for-word transcript or detailed records of legislative proceedings and committee hearings. *Id.* at 185 n.7. Isolated statements from a single senator and an interested attorney's testimony warning that courts might interpret the amendments as applying retroactively do not establish legislative intent that they do, much less the "clear expression" of such intent *Lynch* requires. *Id.* at 185. To the degree that the legislative history is relevant at all, the fact that such warnings were ignored suggests that the Legislature understood that the amendment would not be applied retroactively and intentionally rejected the contrary view.

Nor were the amendments enacted "amid ongoing controversy" over who may bring a VRPA action. (Dkt. 10 at 14.) As one of Time's own cases recognized, "every single court" to consider the issue adopted the same interpretation of the statute. *Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 WL 4209575, at *2 (E.D. Mich. Aug. 26, 2014). And unlike other statutory amendments enacted to resolve a controversy and applied retroactively, the

legislative history is completely silent as to the supposed problem. *Cf. Sheeks*, 625 N.W.2d at 802 (quoting House Legislative Analysis detailing problems arising out of judicial interpretation of statute); *In re Oswalt*, 318 B.R. 817, 822 (W.D. Mich. 2004) ("The legislative analysis specifically addresses the problem created by [a case interpreting the statute]."). As the Legislature has provided no reason to conclude that the 2016 amendments to the VRPA are retroactive, the presumption of prospective application applies here.

Finally, Time's last-ditch effort to salvage its position asks the Court to read retroactivity into the statute by applying the *expressio unius* canon of construction to the amendment. It argues that because § 3(d) of the amended VRPA creates a new exception that "only applies to a record or information that is created or obtained after the effective date of the amendatory act that added this subdivision," the Court must presume that only that section should apply prospectively, and the rest of the statute should apply retrospectively. (Dkt. 10 at 11-12.) As discussed above, retroactive application requires a *clear* expression by the Legislature. But because reliance on canons of construction is only permitted "where the statutory language is ambiguous," *People v. Phillips*, 666 N.W.2d 657, 660 (Mich. 2003) (internal quotation omitted), Time can't use a maxim like *expressio unius* to demonstrate the clear intent of the Legislature. *See Dep't of Treasury v. Psychological Res., Inc.*, 383 N.W.2d 144, 146 (Mich. Ct. App. 1985) (refusing to

apply *expressio unius* where a statute was "unambiguous on its face"); *AFSCME v. Detroit*, 704 N.W.2d 712, 715 (Mich. Ct. App. 2005) (noting that *expressio unius* "is merely an aid to interpreting legislative intent and cannot govern if the result would defeat the clear legislative intent") (quoting *Grand Rapids Employees Indep. Union v. Grand Rapids*, 597 N.W.2d 284, 288 (Mich. App. 1999)). By relying on a canon of construction, Time concedes that it views the amended VRPA as unclear as to retroactivity, and an unclear statute cannot support retroactive application.[2]

Further, *expressio unius* cannot be used "if the result would defeat the clear legislative intent." *AFSCME*, 704 N.W.2d at 715. As the only court to consider this question held:

> The qualifying language in § 3(d) does not concern the prospective force of the provision itself … but only the information to which the exception applies. The clearest reading of the statutory text is that the legislature intends the amended law to govern the disclosure of consumer data regardless of whether the information pre- or post-dates the amendment—except § 3(d), which applies only where information post-dates the amendment.

*Boelter*, 2016 WL 3369541, at *5. Because Time's application of the maxim results in an interpretation that runs contrary to the clearest reading of the text, it is wrong. The amended VRPA applies only prospectively, not retroactively.

---

[2]     Underscoring the weakness of Time's position, it can only support the application of a canon of construction to the amended VRPA by misrepresenting a dissent as the binding opinion of the Michigan Supreme Court. (Dkt. 10 at 12) (quoting *Rory v. Contl. Ins. Co.*, 703 N.W.2d 23, 49 (Mich. 2005) (Kelly, J., dissenting). The majority in that case considered only "the plain language of the statute[.]" *Id.* at 33 (majority opinion).

## II.   Time's Invasion of Perlin's Privacy in Her Choice of Reading Materials Was a Concrete Injury Sufficient to Support Article III Standing.

Time links its contention that the VRPA applies retroactively with its argument that Perlin lacks Article III standing. Because there are no longer statutory damages, the argument goes, Perlin must not have alleged an injury in fact, and therefore she must not have standing. (*See* Dkt. 10 at 7-8.) After the Supreme Court issued its decision in *Spokeo*, Time doubled down on that position, arguing that the substantive right granted by the VRPA is not sufficiently "concrete" to support federal jurisdiction. By that, Time means that Perlin purportedly didn't suffer monetary harm resulting from its invasion of her privacy. (*See* dkt. 13 at 6.)[3]

Time's argument ignores the difference between "injury" and "damages." Those terms have different meanings, and the distinction is critical. "Injury is the illegal invasion of a legal right; damage is the loss, hurt, or harm that results from the injury." 22 Am. Jur. 2d Damages § 2. Here, by enacting the VRPA, the Michigan Legislature defined a legal right to privacy—the right not to have one's

---

[3]      In any event, Perlin *did* allege monetary harm in the form of overpayment for Time's services. (Dkt. 1 at ¶¶ 63-64.) That economic harm provides an independent basis for Perlin's Article III standing. *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 691 (6th Cir. 1994) ("Palpable economic injuries have long been recognized as sufficient to lay the basis for standing[.]"); *see also Spokeo*, 136 S. Ct. at 1549 (noting that "tangible injuries are perhaps easier to recognize" and setting out specific requirements only for identifying *intangible* harms).

12

choice in reading materials disclosed to others without one's consent—the invasion of which is an injury. To bring suit under the VRPA a plaintiff must have suffered that injury; but damage is irrelevant to whether a plaintiff has suffered a cognizable injury. Damages—which may take the form of statutory damages, *see, e.g.*, *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 706 (6th Cir. 2009)—are a remedies issue.

Whether or not statutory damages are available, disclosing a person's reading habits without permission is an intangible harm that can be redressed in court. Such conduct is not a "bare procedural violation" divorced from the harm the Michigan Legislature was trying to remedy when it passed the VRPA. *Spokeo*, 136 S. Ct. at 1549. It's not a procedural violation at all; the VRPA directly prohibits the very injury the Michigan Legislature sought to remedy. Further, that injury is concrete because it is both closely related to a harm that was recognized at common law, and the Michigan Legislature exercised its judgment in identifying and elevating that injury to a cause of action. Accordingly, Perlin has Article III standing and this Court has jurisdiction.

### A.      *Spokeo* confirmed that the Legislature can identify intangible concrete harms redressable in federal court.

Article III of the Constitution extends the judicial power of federal courts to "Cases" and "Controversies," U.S. Const. art. III, § 2, and requires the litigant invoking the federal courts' jurisdiction to have "standing," the first element of

which being that the litigant has suffered "an injury in fact." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 709-10 (6th Cir. 2015). *Spokeo* reiterated the long-standing rule that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Importantly, and contrary to Time's suggestion, the Supreme Court expressly held that the violation of a statutory right—in and of itself—may be a concrete injury so long as the right protects a legislatively identified interest.[4] "'Concrete' is not … necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Spokeo*, 136 S. Ct. at 1549. Put simply, a plaintiff vindicating a concrete statutory interest "need not allege any *additional* harm beyond the one Congress has identified." *Id*. at 1549-50.

In so holding, the Court reaffirmed the Sixth Circuit's governing rule. *See Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) ("Congress may … enact statutes creating legal rights, the invasion of which

---

[4]    There is no reason to believe that *Spokeo*'s references in the Article III equation to the central role of Congress (the relevant legislative body in that case) was meant to deny state legislatures equal solicitude. *See, e.g.*, *Diamond v. Charles*, 476 U.S. 54, 65 n.17 (1986) ("The [state] Legislature, of course, has the power to create new interests, the invasion of which may confer standing. In such a case, the requirements of Art. III may be met.").

14

creates standing, even though no injury would exist without the statute.") (internal quotations omitted); *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009) ("Congress no doubt has the power to create new legal rights, and it generally has the authority to create a right of action whose only injury-in-fact involves the violation of that statutory right.").

To be sure, a plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. But the relevant issue is not whether Perlin suffered a "resulting concrete harm[.]" (Dkt. 13 at 6.) That is the precise argument the Supreme Court rejected. The issue is whether the *legislature* has created a concrete private interest. Endorsing Justice Kennedy's *Lujan* concurrence, the Court held that "'Congress,'" or, here, the Michigan Legislature, "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580) (Kennedy, J., concurring in part and concurring in the judgment); *see id*. at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights.").

The issue, then, is whether the Legislature has created such a right—not, as Time would have it (and as Spokeo unsuccessfully argued to the Court), whether

Perlin suffered an additional harm resulting from those disclosures. (*See* dkt. 13 at 4.) Because Perlin alleged "the unlawful disclosure of legally protected information," the intangible harm she suffered is "concrete in the sense that it involves a clear *de facto* injury[.]" *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441, slip op. at 24 (3d Cir. June 27, 2016) (concluding in a federal Video Privacy Protection Act case that "[n]one of [the] pronouncements" in *Spokeo* "calls into question whether the plaintiffs in this case have Article III standing"). That's enough to establish Article III standing.

### B.  Time's disclosure was not "a bare procedural violation."

Time's supplemental brief starts by correctly quoting *Spokeo*'s holding that a "bare procedural violation" is insufficient to establish standing. (Dkt. 13 at 1) (quoting 136 S. Ct. at 1549). But a few pages later, it performs some sleight of hand, claiming *Spokeo* holds that "a plaintiff cannot rely on a bare *statutory* violation as injury-in-fact," and it relies on that formulation of the rule to support its argument. (Dkt. 13 at 3) (emphasis added). There is a difference between a statute that creates a *procedural* obligation such as in *Spokeo*, 136 S. Ct. at 1545, or *Beaudry*, 579 F.3d at 704 (both involving a statute that requires entities to "follow reasonable procedures" to achieve the goal of the statute) (internal quotation omitted), and a statute like the VRPA that directly protects the Legislature's underlying *substantive* concern.

16

In *Spokeo*, the Supreme Court was concerned with cases where a procedural violation is "divorced from [the] concrete harm" that the statute is designed to protect against. 136 S. Ct. at 1549. A procedural statute, by definition, typically does not tell the regulated entity *what* to do—it tells the regulated entity *how* (or how not) to do something. *Cf. Spokeo*, 136 S. Ct. at 1550 (using "fail[ure] to provide [a] required notice" as an example of a "bare procedural violation"); *Lujan*, 504 U.S. at 572 (describing "procedural requirement for a hearing prior to denial of [a] license application" and "procedural requirement for an environmental impact statement before a federal facility is constructed"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (treating denial of "the ability to file comments on some Forest Service actions" as "procedural injury"). In such procedural rights cases, courts must assess whether the procedural violations "entail a degree of risk" to the statutorily defined interest "sufficient to meet the concreteness requirement." *Spokeo*, 135 S. Ct. at 1550. And when they have, "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549-50.

But that principle is inapplicable when a statute directly regulates an actor's substantive conduct. Lower courts since *Spokeo* have understood and correctly applied this distinction. Thus, district courts applying *Spokeo* have determined that plaintiffs do not necessarily have Article III standing when they can point only to a

defendant's failure to follow a certain procedure. *See, e.g.*, *Smith v. Ohio State Univ.*, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (holding that plaintiffs did not have standing in a FCRA case where they alleged only that defendants did not follow the correct procedure for seeking consent to run credit reports). But plaintiffs *do* have standing when they allege violations of statutes that specifically proscribe certain substantive conduct. *See, e.g.*, *Boelter*, 2016 WL 3369541, at *3 (holding that a VRPA plaintiff had standing under *Spokeo*); *Storey v. Attends Healthcare Products, Inc.*, 2016 WL 3125210, at *4 (E.D. Mich. June 3, 2016) (concluding that plaintiffs had Article III standing when they claimed that the defendant made false representations about a product's qualities in violation of a consumer protection statute, even if they did not suffer additional harm as a result of the alleged defect in the product); *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (concluding that receiving junk telephone calls in violation of the Telephone Consumer Protection Act is concrete and not procedural in nature).

The latter line of cases applies here because this violation—Time's disclosure of its subscribers' confidential reading choices—is not a bare procedural violation divorced from any concrete harm. In fact, *it is not a procedural violation at all*. Rather, the VRPA directly regulates the substantive privacy interest at issue. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)

18

(rejecting argument that "impermissible disclosures of one's sensitive, personal information" was a mere technical violation of a statute designed to protect video viewing history because such disclosures were precisely what the statute was intended to prohibit). The VRPA's prohibition on the disclosure of personal information "do[es] not deal with the procedure or process for enforcing" consumers' privacy rights; it actually defines those rights as a matter of substantive law. *Wysocki v. IBM Corp.*, 607 F.3d 1102, 1106-07 (6th Cir. 2010).

By disclosing Perlin's private reading choices, Time "deprived [Perlin] of [her] right to keep [her] information private … and unjustly retained the economic benefit the value of that information conferred." *Boelter*, 2016 WL 3369541, at *3; *see also Stanley v. Georgia*, 394 U.S. 557, 565 (1969) ("[The appellant] is asserting the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home."). This is a violation of a substantive—not procedural—right.

## C.   Time's disclosure of its subscribers' choices in reading materials was a concrete injury.

By virtue of the VRPA, Perlin had a legally protected interest in a substantive right: the right to privacy in her reading choices. Time invaded that right by disclosing her choice in reading material to data miners, causing an intangible harm to Perlin. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of [the legislature] play important

19

roles." *Spokeo*, 136 S. Ct. at 1549. As explained below, both factors establish that the Michigan Legislature created a substantive concrete interest in the privacy of Perlin's reading choices, which Time invaded. No more is required to establish Article III injury in fact.[5]

### 1. The VRPA bears a close relationship to traditional common law actions for breach of confidentiality.

Under *Spokeo*, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. This is because federal judicial power under Article III applies to "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). If the interest follows from the common law, it is obviously concrete.

Here, while Time necessarily obtains information about its customers' reading choices as part of the subscriber relationship, the VRPA requires Time to keep that information confidential. Time's unauthorized disclosure of that

---

[5] Time does not argue that the invasion causing this injury was conjectural or hypothetical, or not particularized to her. Nor could it. An injury is "particularized" so long as it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). The violation of an individual's statutory rights (not the statutory rights of others) and the assertion of individual (rather than collective) rights makes an injury particularized. *See id*. Here, Perlin suffered a particularized injury because Time violated her statutory rights by disclosing her choice in reading material, which was an individual rather than a collective injury.

information to third parties was a breach of this duty, and breach of confidentiality has a long history of providing a basis for suit in English and American courts. As scholars have noted, "[c]onfidentiality (or 'confidence' to use its earlier terminology) is a concept with ancient origins in the Anglo-American common law[.]" Neil M. Richards & Daniel J. Solove, *Privacy's Other Path: Recovering the Law of Confidentiality*, 96 Geo. L. J. 123, 133 (2007); *see also* Ari Ezra Waldman, *Privacy As Trust: Sharing Personal Information in A Networked World*, 69 U. Miami L. Rev. 559, 617 (2015) (noting that the "tort of breach of confidentiality … has a long tradition in Anglo-American common law").

For example, in *Prince Albert v. Strange*, (1849) 41 Eng. Rep. 1171 (Ch.), Prince Albert sued to enjoin publication of private etchings made by members of the British royal family for their own amusement, which had been provided to a printer solely to make copies to give to a few personal friends. Lord Chancellor Cottenham held that Prince Albert was entitled to an injunction on the basis of "breach of trust, confidence, or contract" because the printer made more copies than ordered, which made their way to the defendants. *Id.* at 1178-79 (quoting precedent that "[e]very clerk employed in a merchant's counting-house is under an implied contract that he will not make public that which he learns in the execution of his duty as clerk"); *see also Pollard v. Photographic Co.*, (1880) 40 Ch. D. 345, 349 ("Where a person obtains information in the course of a confidential

21

employment, the law does not permit him to make any improper use of the information so obtained.")

An early Kentucky case noted that "[t]he ruling in [*Pollard*] has been followed in America, uniformly, so far as we have seen." *Douglas v. Stokes*, 149 S.W. 849, 849-50 (Ky. Ct. App. 1912). And indeed, by the end of the nineteenth century, "a robust body of confidentiality law protecting private information from disclosure existed throughout the Anglo-American common law," Richards & Solove, 96 Geo. L. J. at 125, and by the mid-twentieth century, American courts were hearing tort cases asserting breach of confidentiality, and contract cases asserting breach of an express or implied contract of nondisclosure. *Id*. at 151-52. The VRPA is simply an extension of these well-established common-law suits for breach of confidentiality.

> **2.** **The Michigan Legislature exercised its judgment to protect an individual's interest in the privacy of their reading choices.**

Even if the VPRA does not follow from the common law, which it does, the statute still creates a concrete interest. "The judiciary clause of the Constitution … did not crystallize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy otherwise cognizable by the federal courts." *Nashville, C. & St. L. Ry. Co. v. Wallace*, 288 U.S. 249, 264 (1933). A legislative body therefore can create "new rights of action that do not have clear

analogs in our common law tradition." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment).[6] To do so, the legislature must "identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." *Id*. The Michigan Legislature did so here.

The Legislature recognized that a person's choice in reading materials "is nobody's business but one's one," and passed the statute "to explicitly protect a consumer's privacy in buying and borrowing" such materials. *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. 5331 (Jan. 20, 1989). The VRPA was sparked by an incident involving President Reagan's nomination of Judge Robert Bork to the Supreme Court. *Id.* During the contentious battle over Judge Bork's nomination, a Washington, D.C. newspaper published a list of 146 videotapes rented from his local video store by his family. *See generally,* Neil M. Richards, *The Perils of Social Reading*, 101 Geo. L.J. 689, 694-95 (2013). This invasion of privacy also prompted Congress, one year before the Michigan Legislature acted, to pass a federal law prohibiting video providers from

---

[6]     Time's suggestion that Congress lacks this power, (dkt. 10 at 21), would render numerous prior rulings void. *See, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."); *O'Shea v. Littleton*, 414 U.S. 488, 493 n.2 (1974) (same); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.24 (1982) (same). The Supreme Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000).

disclosing the rental and purchase records of their customers without consent. *See* Video Privacy Protection Act, 18 U.S.C. § 2710. In passing the VRPA's federal counterpart, Congress noted its concern with the creation of digital dossiers—or "information pools"—about ordinary citizens by companies collecting and gathering information about their behavior. *See* S. Rep. No. 100-599, 7 (1988) (Statement of Sen. Leahy). Ultimately, the Michigan Legislature chose to protect Michiganders' privacy in their reading choices by, among other things, prohibiting exactly what Time did here: disclosing to third parties information identifying its customers as purchasers of particular reading materials. *See* M.C.L. § 445.1712.

That said, the principle that a legislative body can define new legal rights, the invasion of which is an injury sufficient to support Article III standing "is not unlimited." *Carter*, 553 F.3d at 988. Congress or the Michigan legislature could not, for example, pass a law requiring an "executive agency to 'follow the law'" and expect that obligation to be privately enforceable without some showing of harm beyond the violation of the statute itself. *Spokeo*, 136 S. Ct. at 1552 (Thomas, J., concurring). But that is not what the Michigan Legislature did here. It created a right that protects the privacy of information consumers share with the companies from which they buy their reading materials. "A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." *Id*. at 1553. Ms. Perlin alleged an invasion of the private right

24

defined by the Michigan Legislature in the VRPA, and she therefore suffered an injury sufficient to allow her to pursue her claim in federal court. *Cf. In re Nickelodeon*, slip op. at 24-25 ("Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.") Article III is no bar to the Court's jurisdiction here.

## III.   Perlin States a Claim for Unjust Enrichment.

Finally, Time argues that Perlin's unjust enrichment claims should be dismissed because her personal information has no value (even though Time made money on it) and because the VRPA purportedly preempts her equitable claim. (Dkt. 10 at 22.) Unjust enrichment "is defined as the unjust retention of money or benefits which in justice and equity belong to another." *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010) (internal quotations omitted). "The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993). Here, Time made money by disclosing Perlin's personal information—which Perlin gave to Time—to third parties without Perlin's consent and in violation of state law. It's fundamentally unjust for Time to benefit

financially from using Perlin's information in an unlawful manner, and therefore the profits it made from that endeavor should be disgorged.

In its motion, Time first argues that Perlin "fails to allege that she lost anything of value," citing out-of-circuit district court cases that purportedly hold that personal information has no "inherent monetary value." (Dkt. 10 at 23.) But "inherent" value doesn't play into it. Perlin alleges that Time derived an actual, cash-money benefit from the disclosure of her information in this specific instance. There's no need to demonstrate that information has some kind of "intrinsic" value when Perlin has alleged that Time *actually made millions of dollars selling it*. (Dkt. 1 ¶ 3.) It is unfair and inequitable for Time to keep that money, and at this stage of the litigation, Perlin's allegations are sufficient to survive dismissal.

Time's other argument supporting dismissal is that Perlin cannot obtain restitution for Time's unjust enrichment because the VRPA purportedly "preempts her unjust enrichment claim" by providing the sole remedy for that claim. (Dkt. 10 at 24-25.) But that proposition of law "cannot be applied in a manner that conflicts with the plain language prescribed by the Legislature." *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 241 (Mich. 2010). The VRPA provides for the recovery of "[a]ctual damages … or $5,000.00, whichever is greater." MCL 445.1715 § 5(a). One measure of actual damages here is the restitution Perlin is owed as recompense for Time's unjust enrichment. Because Perlin does not know

26

whether Time made more or less than $5,000 by unlawfully selling her personal information, she seeks disgorgement of those profits in the event that her actual damages exceed $5,000.

## CONCLUSION

Because the 2016 amendments to the VRPA are not retroactive, and because Perlin both has Article III standing and states a claim for unjust enrichment, the Court should deny Time's motion to dismiss in its entirety.

Respectfully submitted,

CAROLYN PERLIN

Dated:  June 27, 2016                By: /s/ Ari J. Scharg
                                     One of Plaintiffs' attorneys

                                     Ari J. Scharg
                                     ascharg@edelson.com
                                     Benjamin S. Thomassen
                                     bthomassen@edelson.com
                                     EDELSON PC
                                     350 North LaSalle Street, Suite 1300
                                     Chicago, Illinois 60654
                                     Tel: 312.589.6370
                                     Fax: 312.589.6378

                                     Henry M. Scharg (P28804)
                                     hmsattyatlaw@aol.com
                                     LAW OFFICE OF HENRY M. SCHARG
                                     718 Ford Building
                                     Detroit, Michigan 48226
                                     Tel: 248.596.1111
                                     Fax: 248.496.1578

*Counsel for Plaintiff and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I, Ari J. Scharg, an attorney, certify that on June 27, 2016, I served the above and foregoing by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.


/s/ Ari J. Scharg