UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN PERLIN, individually
and on behalf of all others
similarly situated,

                Plaintiff,               CASE NO. 16-10635
                                              HON. GEORGE CARAM STEEH
   v.

TIME INC., a Delaware Corporation,

                Defendant.

_____/

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS (DOC. 10)

Plaintiff Carolyn Perlin filed a two-count complaint against defendant Time Inc., alleging in Count 1 that Defendant violated Michigan's Video Rental Privacy Act ("VRPA"), Mich. Comp. Laws § 445.1711 *et seq.*, and alleging in Count 2 that Defendant was unjustly enriched through its violation of the VRPA. (*See* Compl., Doc. 1). Now before the Court is Defendant's Motion to Dismiss. (Doc. 10). Defendant argues that a recent amendment to the VRPA, eliminating the VRPA's statutory-damages remedy, applies retroactively so as to bar Plaintiff's claims. Defendant also argues that based on the Supreme Court's recent decision in *Spokeo, Inc.*

- 1 -

*v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff lacks Article III standing.

Finally, Defendant argues that Plaintiff's unjust-enrichment count fails to

state a claim upon which relief can be granted.  A hearing on Defendant's

motion was held on September 1, 2016.  For the reasons explained below,

the Court denies Defendant's motion in full.

## I. BACKGROUND

Plaintiff was a subscriber to *People*, a magazine published by

Defendant.  (Compl. ¶ 30).  Plaintiff claims that Defendant "has disclosed,

and continues to disclose, [Plaintiff's] Personal Reading Information (i.e.,

information that identifies [Plaintiff] as having purchased a subscription to

*People*)—without obtaining her permission or providing prior notice—to

data mining companies . . . ."  (*Id.* ¶ 34).  "Data miners," according to

Plaintiff, are "companies [that] purchase, trade, and otherwise collect

massive databases of information about consumers."  (*Id.* ¶ 19).  They

"profit by selling this 'extraordinarily intrusive' information in an open and

largely unregulated market."  (*Id.*).  Plaintiff alleges that Defendant "profited

from its disclosures" to the data miners, and Plaintiff further alleges that

"what [Plaintiff] received (a subscription without privacy protections) was

substantially less valuable than what she paid for (a subscription with accompanying privacy protections)."  (*Id.* ¶¶ 37-38).

Plaintiff claims that Defendant's conduct violates the VRPA.  The VRPA—like the federal Video Privacy Protection Act and similar state laws around the country—was enacted in the late 1980s in the wake of the disclosure of Robert Bork's video-rental records during Bork's (ultimately unsuccessful) candidacy for the position of Supreme Court Justice.  *See generally* Neil M. Richards, *The Perils of Social Reading*, 101 Geo. L.J. 689, 693-97 (2013).  Despite its popular name[1] and historical origin, the VRPA applies to more than just video rentals.   Its central provision states that

> a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not knowingly disclose to any person, other than the customer, a record or information that personally identifies the customer as having purchased, leased, rented, or borrowed those materials from the person engaged in the business.

---

[1] The act has also been called the "[P]reservation of [P]ersonal [P]rivacy [A]ct (PPPA)." *In re Certified Question from United States Court of Appeals for Ninth Circuit*, No. 151104, 2016 WL 3619346 (Mich. July 6, 2016).

Mich. Comp. Laws § 445.1712(1).  The VRPA provides both a criminal penalty and a civil cause of action to enforce this prohibition.  *See id.* §§ 445.1714, 445.1715.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge a court's subject-matter jurisdiction.  Where, as in the instant case, the defendant argues that the allegations in the complaint are insufficient to create subject-matter jurisdiction, the court should "confine its . . . ruling to matters contained within the pleadings and accept all well-pleaded allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009); *see also Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).  If the complaint fails to set forth an adequate basis for subject-matter jurisdiction, the court must dismiss it.  *See Sweeton v. Brown*, 27 F.3d 1162, 1169 (6th Cir.1994).

Pursuant to Rule 12(b)(6), a defendant may move to have a complaint dismissed for "failure to state a claim upon which relief can be granted."  A court confronted with a Rule 12(b)(6) motion must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as

- 4 -

true, and determine whether the plaintiff's factual allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). The court must not accept "legal conclusions cloaked as fact." *Haddad v. Randall S. Miller Associates, PC*, 587 F. App'x 959, 963 (6th Cir. 2014) (unpublished). Similarly, "naked assertions devoid of further factual enhancement" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain "detailed" factual allegations, but its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

## III. DISCUSSION

### A.    Plaintiff Has Standing to Sue.

Defendant's primary argument is that Plaintiff lacks both statutory standing under the VRPA and standing under Article III of the United States Constitution. In a previous case, this Court held that the VRPA confers statutory standing on a person whose information was disclosed in violation

of the VRPA, regardless of whether the person suffered actual damages.

*Halaburda v. Bauer Pub. Co., LP*, No. 12-CV-12831, 2013 WL 4012827, at

*6 (E.D. Mich. Aug. 6, 2013) (unpublished).  This Court also held that a

person whose information was disclosed in violation of the VRPA has

suffered a cognizable injury in fact and thus has Article III standing.  *Id.* at

*3-*5.[2]  Defendant argues that two recent developments have undermined

the Court's analysis in *Halaburda*.  First, Defendant points out that the

Michigan legislature recently amended the VRPA to require a plaintiff

asserting a VRPA cause of action to plead actual damages.  Although

Defendant allegedly began violating the VRPA before the amendment took

effect (July 31, 2016), Defendant argues that the amendment is retroactive

and therefore applies to the pre-amendment conduct.[3]  The second

development is the Supreme Court's recent decision in *Spokeo*, 136 S. Ct.

---

[2] *See also Owens v. Rodale, Inc.*, No. 14-CV-12688, 2015 WL 575004 (E.D. Mich. Feb. 11, 2015) (unpublished) (Roberts, J.) (holding that the VRPA does not require a showing of actual damages and that a violation of the VRPA is sufficient to create Article III standing); *Kinder v. Meredith Corp.*, No. 14-CV-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) (unpublished) (Ludington, J.) (same); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013) (Rosen, J.) (same).

[3] Plaintiff's complaint alleges that Defendant continues to violate VRPA.  The parties do not make this distinction in their arguments, but regardless of whether the VRPA amendment is retroactive, it appears that it would apply to Plaintiff's claim to the extent that the claim is based on Defendant's alleged *post-amendment* conduct.

1540.  Defendant contends that under the standard set forth in *Spokeo*, the type of VRPA violation alleged by Plaintiff is now insufficient to constitute an injury in fact.  As explained below, the Court rejects both arguments.

### 1.    The VRPA Amendment Is Not Retroactive and Therefore Does Not Deprive Plaintiff of Statutory Standing.

When this Court decided *Halaburda*, the VRPA allowed a customer whose VRPA rights had been violated to recover "[a]ctual damages . . . or $5,000.00, whichever is greater."  1989 Mich. Pub. Act No. 206 (codified at Mich. Comp. Laws § 445.1715(2)(a) until amended by 2016 Mich. Pub. Act. No. 92).  However, the Michigan legislature recently enacted Senate Bill 490.  *See* 2016 Mich. Pub. Act. No. 92.  As amended by Senate Bill 490, the VRPA no longer contains the $5,000 statutory damages provision.  *See* Mich. Comp. Laws § 445.1715(2)(a).  Moreover, the VRPA now *only* allows "customers . . . who [have] suffer[ed] actual damages" to bring a civil action.  *Id.* § 445.1715(2).  Senate Bill 490 became effective on July 31, 2016.  *See* 2016 Mich. Pub. Act No. 92.  The Court must decide whether Senate Bill 490 applies retroactively, so as to preclude Plaintiff from proceeding with her suit against Defendant without alleging actual

damages.[4]  Other district courts have already held that Senate Bill 490 is

not retroactive.  *Boelter v. Hearst Commc'ns, Inc.*, No. 15 CIV. 3934 (AT),

2016 WL 3369541, at *4-*6 (S.D.N.Y. June 17, 2016); *Boelter v. Advance*

*Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-5671, 2016 WL

5478468, at *12 (S.D.N.Y. Sept. 28, 2016); *Moeller, et al. v. American*

*Media, Inc. et al.*, No. 16-cv-11367, 2017 WL 416430 (E.D. Mich. Jan. 27,

2017).[5]

   Whether Senate Bill 490 applies retroactively depends on Michigan

law—and, in particular, on Michigan principles of statutory interpretation.

*See Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706

F.3d 733, 739 (6th Cir. 2013).  Under Michigan law, a statute is presumed

to operate prospectively, but this presumption can be rebutted by a "clear[]

manifest[ation]" of "contrary intent."  *Frank W. Lynch & Co. v. Flex Techs.,*

*Inc.*, 463 Mich. 578, 583, 624 N.W.2d 180 (2001) (quoting *Franks v. White*

---

[4] Plaintiff claims in her response that she *did* adequately plead actual damages in her complaint.  (Pl.'s Resp. Def.'s Mot. Dismiss, Doc. 14, at 16 n.3).  The Court does not need to address this argument, given its resolution of the retroactivity issue.

[5] Plaintiff filed a notice of supplemental authority (Doc. 15) that cites a recent Michigan Supreme Court decision.  *See In re Certified Question from the United States Court of Appeals for the Ninth Circuit*, No. 151104, 2016 WL 3619346 (Mich. July 6, 2016).  Although the opinion references the recent amendment to the VRPA, the opinion provides no guidance on whether the amendment is retroactive.

*Pine Copper Div.*, 422 Mich. 636, 671, 375 N.W.2d 715 (1985)) (internal

quotation marks omitted); *see also Kia Motors*, 706 F.3d at 739;

*LaFontaine Saline, Inc. v. Chrysler Grp., LLC*, 496 Mich. 26, 38, 852

N.W.2d 78 (2014) ("We have . . . required that the Legislature make its

intentions clear when it seeks to pass a law with retroactive effect."); *cf.*

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)

("Retroactivity is not favored in the law.").

  Four principles govern the inquiry into the legislative intent.  The first

principle is that a court should give effect to "specific language in [a] new

[statute] which states that it should be given retrospective or prospective

application."  *In re Certified Questions from the United States Court of*

*Appeals for the Sixth Circuit*, 416 Mich. 558, 570, 331 N.W.2d 456 (1982);

*accord LaFontaine*, 496 Mich. at 38.  Second, a statute does not "operat[e]

retroactively merely because it relates to an antecedent event."

*LaFontaine*, 496 Mich. at 39.  Third, "retrospective application of a law is

improper where the law 'takes away or impairs vested rights acquired

under existing laws.'" *Certified Questions*, 416 Mich. at 572 (quoting

*Hughes v. Judges' Ret. Bd.*, 407 Mich. 75, 85, 282 N.W.2d 160 (1979));

*see also LaFontaine*, 496 Mich. at 39.  And fourth, "a remedial or

- 9 -

procedural act not affecting vested rights may be given retroactive effect."
*LaFontaine*, 496 Mich. at 39; *see also Certified Questions*, 416 Mich. at
572.

Only the first, third, and fourth principles are applicable to the instant
case. *See Certified Questions*, 416 Mich. at 571 ("Second rule cases relate
to measuring the amount of entitlement provided by a subsequent statute in
part by services rendered pursuant to a prior statute . . . ."). Moreover, the
third and fourth principles are really two sides of the same coin, and
therefore the Court will analyze them together. *See id.* at 575 ("[R]ule four
[is] the corollary to the general proscription found in rule three.").

### a.   Language of the Amending Act

The first factor that the Court must consider is whether the language
of Senate Bill 490 indicates that it is to have retroactive effect. Senate Bill
490 does not contain any express language indicating that it is to be
applied retroactively. Thus, the first factor weighs against retroactive
application. *See Kia Motors*, 706 F.3d at 739 ("[T]he Michigan Legislature
'knows how to make clear its intention that a statute apply retroactively,' so
the absence of express retroactive language is a strong indication that the
Legislature did not intend a statute to apply retroactively." (quoting *Brewer*

*v. A.D. Transp. Exp., Inc.*, 486 Mich. 50, 56, 782 N.W.2d 475 (2010)));

*LaFontaine*, 496 Mich. at 39-40.  This conclusion is confirmed by the fact

that Senate Bill 490 contains a provision stating that Senate Bill 490 would

take effect ninety days after enactment.  *See* 2016 Mich. Pub. Act. No. 92,

enacting § 1 ("This amendatory act takes effect 90 days after the date it is

enacted into law.").[6]  As the Michigan Supreme Court has explained,

"providing a specific, future effective date and omitting any reference to

retroactivity supports a conclusion that a statute should be applied

prospectively only."  *Johnson v. Pastoriza*, 491 Mich. 417, 432, 818 N.W.2d

279 (2012) (quoting *Brewer v. A.D. Transp. Exp., Inc.*, 486 Mich. 50, 56,

783 N.W.2d 475 (2010)) (internal quotation marks omitted).

---

[6] As Defendant notes, Senate Bill 490 also contained contradictory language "order[ing] [Senate Bill 490] to take immediate effect."  2016 Mich. Pub. Act. No. 92, enacting § 2. Although neither party has offered argument on this provision, it appears to be the standard, boilerplate enacting language.  Accordingly, the ninety-day language is a more accurate indicator of the legislative intent.

Defendant disagrees with the Court's conclusion that there is no retroactivity language in Senate Bill 490.[7]  Defendant points to the enacting language of Senate Bill 490, which states that the amendment "is curative and intended to clarify . . . that a civil action for a violation of [the VRPA] may only be brought by a customer who has suffered actual damages as a result of the violation."  2016 Mich. Pub. Act. No. 92, enacting § 1. According to Defendant, Senate Bill 490 "was passed amid controversy in the courts regarding whether the VRPA requires actual injury."  (Def.'s Mot. Dismiss at 13).  Defendant explains that "[f]or 25 years [after its enactment], the VRPA sat dormant, with no one ever charged with a misdemeanor . . . or sued civilly.  That changed in 2012 when attorneys started brandishing it against magazine publishers."  (*Id.* at 18).  Many of the plaintiffs in these VRPA actions had not suffered actual damages, and federal courts were allowing their suits to proceed under the statutory-damages provision of the VRPA.  According to Defendant, the Michigan

---

[7] In its reply brief, Defendant also argues that a court can apply a statute retroactively even if the statute lacks retroactivity language.  (Def.'s Reply at 14-15).  Defendant is correct that the first retroactivity factor is not dispositive.  *See, e.g.*, *Kia Motors Am.*, 706 F.3d at 740; *Seaton v. Wayne Cty. Prosecutor*, 233 Mich. App. 313, 590 N.W.2d 598 (1998).  But as explained below, the third and fourth factors in the Michigan Supreme Court's four-factor test also compel the conclusion that Senate Bill 490 should be applied only prospectively.

legislature regarded this as a negative development and consequently enacted Senate Bill 490 to clarify that a person must suffer actual damages in order to sue.

As Defendant points out, Michigan courts have held that "[a]n amendment may apply retroactively where the Legislature enacts an amendment to clarify an existing statute and to resolve a controversy regarding its meaning." *Gen. Motors Corp. v. Dep't of Treasury*, 290 Mich. App. 355, 371-72, 803 N.W.2d 698 (2010) (quoting *Mortgage Elec. Registration Sys., Inc. v. Pickrell*, 271 Mich. App. 119, 126, 721 N.W.2d 276 (2006)) (internal quotation marks omitted); *see also Workman v. Detroit Auto. Inter-Ins. Exch.*, 404 Mich. 477, 521, 274 N.W.2d 373 (1979) ("When amendments are passed in the midst of controversy over a provision's meaning, the usual presumption that an amendatory act declares new law is overcome and a legislative intent to clarify rather than to change the law may be inferred."). In other words, a purported amendment may not be an amendment at all, but rather a "clarif[ication] [of] the original intent of [the] legislation." *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 360 (6th Cir. 2002).

The enacting provision cited by Defendant simply evinces the
Michigan legislature's belief that Senate Bill 490 will clarify that *future*
VRPA violations will only be actionable if they cause actual damages.  If, as
Defendant contends, the legislature had intended to clarify that *past* VRPA
violations—including those that had generated lawsuits pending at the time
of Senate Bill 490's enactment—would no longer be actionable absent
actual damages, the legislature would have explicitly said so.  As Plaintiff
points out, several cases cited by Defendant involve just this kind of
express retroactivity language.  *See, e.g.*, *Dep't of Treasury*, 290 Mich.
App. at 366-67 (amending act not only stated that it was "curative and
intended to prevent any misinterpretation," but also expressly provided that
"[t]his amendatory act is retroactive"); *Doe v. Dep't of Corr.*, 249 Mich. App.
49, 56, 641 N.W.2d 269 (2001) (amending act stated that it was "curative
and *intended to correct any misinterpretation of legislative intent* in the
[previous] court of appeals decision in [the *Doe* case]" (emphasis added));[8]
*Romein v. Gen. Motors Corp.*, 168 Mich. App. 444, 450-51, 425 N.W.2d

---

[8] Interestingly, although the *Doe* court found that the first of the four retroactivity
principles indicated that the amendment should be applied retroactively, the court found
that the other principles cut the other way.  249 Mich. App. at 61-63.  Thus, the court
declined to apply the amendment retroactively.

174 (1988) (amending act specifically identified a Michigan Supreme Court decision that was "erroneously rendered," explained that the act was intended to be "remedial and curative," and expressly provided that it would apply retroactively); *In re Oswalt*, 318 B.R. 817, 822 (W.D. Mich. 2004), *aff'd*, 444 F.3d 524 (6th Cir. 2006) (legislative history of the amending act contained language stating that the act would "reinstate[] the financing practices that existed in Michigan before" [a certain Sixth Circuit opinion interpreting the pre-amendment statute]" (internal quotation marks and citation omitted) (emphasis removed)); *see also Boelter*, 2016 WL 3369541, at *4 ("The phrases 'curative' and 'intended to clarify' do not, as Defendant argues, unequivocally indicate that the amendments apply to pre-existing disputes. Absent additional qualifying language, it is just as likely that the terms denote the amendment's purpose for consideration in future applications of the law.").

Defendant cites *Allstate Ins. Co. v. Faulhaber*, 157 Mich. App. 164, 403 N.W.2d 527 (1987), and *People v. Sheeks*, 244 Mich. App. 584, 625 N.W.2d 798 (2001), as examples of cases in which a clarifying act was given retroactive effect.  These cases are both distinguishable.  In *Allstate*, the Michigan Court of Appeals applied a statute-of-limitations provision

retroactively.  157 Mich. App. 164.  The trial court, before the amendment, had been presented with several conflicting statute-of-limitations provisions and had applied the shorter statute of limitations, dismissing the action as time-barred.  *Id.* at 163-64.  The Michigan Court of Appeals, reversing, applied the newly enacted statute of limitations and allowed the plaintiff to proceed with its suit.  *Id.* at 168.  The court explained that "prior to the enactment of this statutory amendment there *was no clear statute of limitations* governing" the action.  *Id.* at 166 (emphasis added).  The instant case is distinguishable from *Allstate* because the VRPA was quite clear prior to the amendment.  The VRPA clearly provided for statutory damages. *See Halaburda*, 2013 WL 4012827, at *6.  Thus, the amendment cannot be seen as merely a clarification.  Moreover, the new statute-of-limitations provision in *Allstate* was, at most, a procedural change in the law; as the Court will explain in the following section, Senate Bill 490's amendments are substantive, not procedural.

In *Sheeks*, a defendant was convicted of violating a vehicle-width restriction when he drove his oversize farming equipment on a state highway.  244 Mich. App. 584.  The trial court ruled that the defendant's equipment did not fall within a statutory exception for farming equipment

"required for normal farming operations."  *Id.* at 587-88.  Subsequent to the defendant's conduct, the legislature amended the statutory exception, replacing the "required for normal farming operations" language with "required, designed, and intended for farming operations."  *Id.* at 589.  The Michigan Court of Appeals retroactively applied the amended statute, noting that in the earlier version of the statute, the term "normal" was not defined.  *Id.* at 590.  The court also noted that the legislative record showed that the purpose of the amendment was to clarify the meaning of the statute.  *Id.* at 590-91.  *Sheeks* is distinguishable from the instant case because the amendment in that case can reasonably be viewed as clarifying a prior legislative intent that the farming-equipment exception should apply to a wide, rather than a narrow, range of farming equipment.  In contrast, Senate Bill 490 completely excises the VRPA's statutory cause of action.  In no way can this reasonably be construed as a clarification rather than a substantive change in the law.  *See Dep't of Treasury*, 290 Mich. App. at 372 ("An amendment that affects substantive rights generally will not [be considered 'curative legislation merely bringing clarity to existing law'].").

- 17 -

Defendant also relies on the fact that the section of Senate Bill 490 amending VRPA's statutory-damages provision lacks language stating that it is to be given prospective effect.  Defendant contrasts this section with another section of Senate Bill 490, which amended the VRPA to allow certain disclosures "incident to the ordinary course of business."  Mich. Comp. Laws § 445.1713(d).  This latter section "only applies to a record or information that is created or obtained after the effective date of the amendatory act."  *Id.*  Defendant argues that "[i]f the legislature had not intended that [Senate Bill] 490's clarification regarding actual damages be applied retroactively, it would not have expressly limited the ordinary course of business exception to prospective application."  (Def.'s Mot. Dismiss at 25).  Defendant's argument fails.  It is well established that "words and phrases used in an act should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole." *People v. Couzens*, 480 Mich. 240, 249, 747 N.W.2d 849 (2008); *see also Dean v. Byerley*, 354 F.3d 540, 547 (6th Cir. 2004) ("When construing a statute, we must look at the whole law and effectuate the legislature's intent.").  In particular, "when language is included in one section of a statute but omitted from another section, it is presumed that the drafters

- 18 -

acted intentionally and purposely in their inclusion or exclusion." *People v. Peltola*, 489 Mich. 174, 185, 803 N.W.2d 140 (2011); *accord Sanders v. Allison Engine Co.*, 703 F.3d 930, 936 (6th Cir. 2012).  Applying these uncontroversial principles of statutory construction, the Court can with some confidence conclude that the after-acquired-information proviso in the ordinary-course-of-business exception does not also apply to the actual-damages requirement.  But this does *not* mean that the actual-damages requirement is to be given *retroactive* effect.  Rather, it simply means that a plaintiff alleging a post-amendment VRPA violation will have to satisfy the actual-damages requirement, even if the defendant acquired the relevant records or information prior to the effective date of Senate Bill 490.  *See Boelter*, 2016 WL 3369541, at *5.

In fact, Defendant's whole-act argument actually cuts *against* Defendant's position that Senate Bill 490 should be given retroactive effect. As noted above, the Michigan legislature expressly labeled Senate Bill 490 as a "curative" and "clarif[ying]" act.  Since at least one section of Senate Bill 490—the section creating the ordinary-course-of-business exception— is prospective, it appears that the Michigan legislature did not believe that

the clarifying or curative nature of Senate Bill 490 was inconsistent with prospective application.

In sum, Senate Bill 490 lacks an express statement of retroactivity. Although the legislature did characterize Senate Bill 490 as "curative and intended to clarify," such language does not, on its own, manifest an intent that the act should be applied retroactively. The whole-act canon likewise fails to show by negative implication that Senate Bill 490 should be applied retroactively.[9]

---

[9] Defendant also relies on the legislative history of Senate Bill 490. First, Defendant cites a floor statement by Senator Rebekah Warren, who opposed Senate Bill 490. 2016 Mich. S. Journal 473 (No. 33, Apr. 12, 2016). In her statement, Ms. Warren said, "[I]f passed, the [Senate Bill 490] will likely be interpreted as retroactive, meaning that all of these companies [that violated the VRPA] will get the get-out-of-jail-free card that they are asking for." *Id.* Several other state senators concurred in Ms. Warren's statement. Second, Defendant points to testimony by Plaintiff's counsel, Ari Scharg, at a legislative hearing concerning Senate Bill 490. *Hearing on S.B. 490 Before the Mich. H.R. Comm. on Commerce & Trade* (Feb. 9, 2016) (testimony of Ari J. Scharg). In his testimony, Mr. Scharg claimed that "the out-of-state magazine publishing companies behind this Bill . . . want you to wipe away all liability for their past and continuing misconduct by giving SB 490 retroactive effect." *Id.* at 10.

    Neither Ms. Warren's statement nor Mr. Scharg's testimony is helpful in resolving whether the Michigan legislature intended Senate Bill 490 to apply retroactively. Perhaps the legislators who voted in favor of Senate Bill 490 disagreed with Ms. Warren's and Mr. Scharg's assessments that courts would view the law as retroactive. Or perhaps they voted in favor of Senate Bill 490 despite—or because of—their belief that the law would be retroactive. The Court has no way of knowing. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."); *see also Boelter*, 2016 WL 3369541, at *5; *Frank W. Lynch*, 463 Mich. at 588 n.7 ("[R]esort to 'legislative history' in the search for legislative intent is a perilous venture.").

     **b.**     **Whether Retroactive Application of the Amending Act Would Take Away or Impair Vested Rights**

The next two factors that the Court must consider are (1) whether retroactive application of Senate Bill 490 would take away or impair vested rights and (2) whether Senate Bill 490 is a remedial or procedural act not affecting vested rights. As remarked above, these two factors essentially come to the same thing: *Either* an act is remedial or procedural *or* the act affects vested rights. Thus, the general rule is that if retroactive application of an act would take away or impair a vested right, the act is not remedial or procedural and should not be given retroactive effect. *See Seaton v. Wayne Cty. Prosecutor*, 233 Mich. App. 313, 317-18, 590 N.W.2d 598 (1998); *Duffy v. Grange Ins. Co.*, No. 290198, 2010 WL 3655979, at *2 (Mich. Ct. App. Sept. 21, 2010) (unpublished) ("[A] statute that affects substantive rights is not remedial.").

In Michigan case law, the term "remedial statute" has two distinct, but related, meanings. Under one definition of the term, a remedial statute is a statute that is "designed to correct an existing oversight in the law, redress an existing grievance, introduce regulations conducive to the public good, or . . . reform or extend existing rights." *Duffy*, 2010 WL 3655979, at *2;

*see also Rookledge v. Garwood*, 340 Mich. 444, 453, 65 N.W.2d 785 (1954); *Allstate*, 157 Mich. App. at 167.  Under the other definition, a remedial statute is a statute that is related to "the means employed to enforce a right or redress an injury." *Rookledge*, 340 Mich. at 453 (quoting 50 Am. Jur. Contracts § 15) (internal quotation marks omitted); *see also Dale Baker Oldsmobile, Inc. v. Fiat Motors of N. Am., Inc.*, 794 F.2d 213, 220 (6th Cir. 1986) (explaining that remedial statutes are those that "determine the manner of effecting a remedy").  Furthermore, although Michigan courts have said that statutes that are "remedial" *or* "procedural" should be applied retroactively, a procedural statute is "essentially . . . the same thing [as a remedial statute]—[it is a] law[] that [is] procedural in nature and do[es] not create or destroy substantive rights." *Kia Motors*, 706 F.3d at 739; *see also Allstate*, 157 Mich. App. at 167.

A vested right is "an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice." *City of Detroit v. Walker*, 445 Mich. 682, 699, 520 N.W.2d 135 (1994).  "A right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws . . . ." *GMAC LLC v. Treasury*

- 22 -

*Dep't*, 286 Mich. App. 365, 377, 781 N.W.2d 310 (2009) (quoting *Cusick v. Feldpausch*, 259 Mich. 349, 352, 243 N.W. 226 (1932)) (internal quotation marks omitted).  Of particular relevance to the instant case, a cause of action becomes a vested right "once [it] accrues,—i.e., [once] all the facts become operative and are known."  *Certified Questions*, 416 Mich. at 574.

If the Court were to apply Senate Bill 490 retroactively, Plaintiff would be deprived of her right to sue for statutory damages under the VRPA and her right to sue without making a showing of actual damages.  Both of these rights accrued—and thus vested—at the time Defendant committed its alleged VRPA violations.  Thus, there is no question that retroactive application of Senate Bill 490 would impair Plaintiff's vested rights.  Moreover, it is clear that Senate Bill 490 is not merely procedural or remedial.  Senate Bill 490 completely excised the VRPA's statutory-damages provision.  This was essentially a deletion of an entire cause of action.  This was a substantive—not a procedural or remedial—change in the law.  *See Boelter*, 2016 WL 3369541, at *6.

None of the cases cited by Defendant indicate otherwise.  In *Duffy*, the plaintiff claimed benefits under Michigan's no-fault insurance law for an accident involving an off-road vehicle.  2010 WL 3655979, at *1.  After the

2:16-cv-10635-GCS-MKM   Doc # 27   Filed 02/15/17   Pg 24 of 49   Pg ID 502

plaintiff's accident, the Michigan legislature amended the no-fault law to exclude off-road vehicles from the law's protections.  *Id.*  The Michigan Court of Appeals refused to apply the amendment retroactively, explaining that "[b]ecause all of the facts in plaintiff's case were known and operative [at the time of her accident], her cause of action accrued, and she had a vested right."  *Id.* at *3.  Like *Duffy*, Plaintiff's cause of action here is dependent on a statute which  the legislature amended after Plaintiff's cause of action accrued.  As in *Duffy*, Plaintiff has a vested right in her cause of action, and that right would be completely extinguished if the Court were to give retroactive effect to the amendment.

In *Certified Questions*, the Michigan Supreme Court gave retroactive effect to a new comparative-negligence law.  416 Mich. at 578.  This law, when applied by the trial court, resulted in the plaintiff's recovery being reduced by ninety-five percent.  *Id.* at 562.  The Michigan Supreme Court found that the amendment did not destroy a vested right because although "the total damages which plaintiff could have received were significantly reduced . . . , plaintiff's cause of action was not legally barred or taken away."  *Id.* at 577.  The instant case is distinguishable because retroactive application of Senate Bill 490 would not just limit Plaintiff's recovery—

- 24 -

rather, it would completely destroy her cause of action (except to the extent that she can prove actual damages).

In *Fosterling v. Lahti*, the Michigan Supreme Court retroactively applied an amendment to Michigan's workers' compensation law. 357 Mich. 578. The amendment eliminated a restriction in the law that had previously limited the medical benefits that the plaintiff could recover. *Id.* at 581. The court explained that the workers' compensation law "was originally adopted to give employers protection against common-law actions and to place upon industry, where it properly belongs, . . . the expense of the hospital and medical bills of the injured employee." *Id.* at 585. The court noted that under the common law, the plaintiff would have had the right to recover the medical benefits requested, and the court concluded that the amendment simply "restored" this remedy. *Id.* at 589. Moreover, the court held that the amendment did not affect any vested rights because it "did not afford the employee a new cause of action, but merely expanded the remedies then in effect." *Id.* at 587. *Lahti* is distinguishable because the amendment in that case did nothing more than somewhat reduce the protections afforded to the employer by the workers' compensation act, still leaving the employer in a better position that it would

- 25 -

have been had it been subject to tort liability.  Retroactive application of Senate Bill 490, by contrast, would completely eliminate Plaintiff's right to sue for statutory damages, leaving her without a remedy unless she can prove actual damages.

*Rookledge* also involved an amendment to Michigan's workers' compensation law.  340 Mich. 444.  The plaintiff was injured in an automobile accident while on the job.  *Id.* at 448-49.  At the time of the accident, the workers' compensation law afforded two mutually exclusive options to the plaintiff: He had the option of either seeking recovery from his employer under the workers' compensation law or suing the tortfeasor responsible for the accident.  *Id.*  The plaintiff chose to recover under the workers' compensation law.  *Id.*  The law was later amended to allow the plaintiff to recover from the tortfeasor notwithstanding his choice to seek compensation under the workers' compensation law.  *Id.* at 450. Subsequently, the plaintiff sued the tortfeasor.  *Id.* at 449.  The court applied the amendment retroactively and declined to dismiss the suit against the tortfeasor defendant, explaining that the "defendant . . . did not have a vested right in the statutory defense accorded him under the prior provision of the Workmen's Compensation Act.  His right then . . . 'sprang

from the kindness and grace of the legislature.  And it is the general rule

that that which the legislature gives, it may take away.'"[10] *Id.* at 457

(quoting *Wylie v. City Comm'n of Grand Rapids*, 293 Mich. 571, 588, 292

N.W. 668 (1940)).  *Rookledge* is distinguishable from the instant case

because the tortfeasor defendant did not have a right, pre-amendment, to

avoid liability.  Rather, any protection that the defendant received from the

pre-amendment workers' compensation law depended completely on a

*choice* by the *plaintiff*.  In the instant case, by contrast, Plaintiff had an

actual right, before Senate Bill 490, to sue for statutory damages—this right

did not depend on the actions or decisions of any other party (except, of

course, for Defendant's alleged violations of the VRPA that comprise the

---

[10] *Lahti* contains similarly broad language: "It is the general rule that that which the
legislature gives it may take away.  A statutory defense, or a statutory right, though a
valuable right, is not a vested right, and the holder thereof may be deprived of it." *Lahti*,
357 Mich. at 588-89; *see also Romein*, 168 Mich. App. at 455.  It does not appear that
this broad language in *Lahti* and *Rookledge* represents current doctrine (at least outside
the workers' compensation context).  *See White v. Gen. Motors Corp.*, 431 Mich. 387,
397, 429 N.W.2d 576 (1988) (casting doubt on Michigan cases, including *Lahti*, that
have used "the broad meaning of 'remedial' to apply arguably substantive amendments
to the [workers' compensation act] retrospectively"); *see also Kia Motors Am., Inc. v.
Glassman Oldsmobile Saab Hyundai, Inc.*, No. 11-CV-12090, 2012 WL 175489, at *5
(E.D. Mich. Jan. 23, 2012) (unpublished), *aff'd*, 706 F.3d 733 (6th Cir. 2013) ("[M]ore
recent cases from the Michigan Supreme Court cast doubt on *Lahti*'s broad language.");
*but see, e.g.*, *Cona v. Avondale Sch. Dist.*, 303 Mich. App. 123, 138, 842 N.W.2d 277
(2013) (reiterating—albeit in a different and completely distinguishable context—the
"general rule that that which the legislature gives, it may take away").

subject matter of the suit).  Retroactive application of Senate Bill 490 would eliminate that right.

In *GMAC*, the Michigan Court of Appeals retroactively applied an amendment to the Michigan tax code that clarified that certain entities were not entitled to claim a "bad debt deduction."  286 Mich. App. 365.  The amending act expressly stated that the amendment was "curative and shall be retroactively applied, expressing the original intent of the [L]egislature." *Id.* at 369 (citation and internal quotation marks omitted) (alteration in original).  Given this express language, *GMAC* is clearly distinguishable from the instant case, for the reasons set forth in the immediately preceding section.  However, the *GMAC* court also went on to say that the amendment did not affect the plaintiffs' vested rights, because "a vested right cannot be premised on an expectation that general laws will continue and certainly cannot be premised on the continuation of tax law." *Id.* at 378.  This reasoning is somewhat hard to follow since the amendment in *GMAC* was not purely prospective.  The elimination of a previously acquired tax deduction certainly would appear to affect a taxpayer's vested, substantive rights.  It appears that the court's analysis of the first retroactivity factor (the presence or lack of retroactivity language in the

statute) bled over into the court's analysis of the third and fourth retroactivity factors. Alternatively, it could be that the *GMAC* holding carves out an exception for changes to tax law, labeling all such changes as *per se* procedural or remedial. Either way, *GMAC* is distinguishable: the first retroactivity factor in the instant case weighs against retroactive application, and the instant case does not involve tax law.

Defendant also cites a couple of cases involving purely procedural changes to the law. *See Walker*, 445 Mich. at 704 (holding that an amendment allowing local governments to collect taxes by filing *in personam* actions simply "implemented an additional enforcement mechanism" and did not change the defendant's tax liability or otherwise affect the defendant's vested rights); *Seaton*, 233 Mich. App. at 323 (holding that an amendment to Michigan's Freedom of Information Act (FOIA) precluding prison inmates from making FOIA requests was merely procedural because, notwithstanding the amendment, "prisoner[s] [still] ha[ve] a substantive constitutional right to obtain [government] records"). As stated several times above, Senate Bill 490 makes a substantive change to the VRPA, and this change is clearly distinguishable from these procedural changes.

- 29 -

Finally, Defendant cites cases in which the court held that a *prospective* modification of a statute did not affect vested rights. *See Att'y Gen. v. Flint City Council*, 269 Mich. App. 209, 215-16, 713 N.W.2d 782 (2005); *Van Buren Twp. v. Garter Belt Inc.*, 258 Mich. App. 594, 632-33, 673 N.W.2d 111 (2003). These cases have no relevance to the retroactivity issue in the instant case.

In conclusion, the third and fourth retroactivity principles weigh against retroactive application of Senate Bill 490. Senate Bill 490 is not purely procedural or remedial, and retroactive application would impair or destroy Plaintiff's vested right to sue for statutory damages without making a showing of actual damages. Based on the first, third, and fourth retroactivity principles, the Court concludes that Senate Bill 490 is not retroactive. Therefore, the Court's statutory-standing holding in *Halaburda*, 2013 WL 4012827, at *6, is applicable to the instant case. Plaintiff has statutory standing.

### 2.   Plaintiff Has Article III Standing Under *Spokeo*.

Defendant's next argument is that Plaintiff's complaint fails to establish an injury in fact under the Supreme Court's recent decision in

- 30 -

*Spokeo*, 136 S. Ct. 1540.  For the reasons explained below, the Court rejects this argument.

### a.   Article III Standing Doctrine

The standing requirement is a bedrock constitutional doctrine that "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547.  It is the "threshold question in every federal case." *Miller v. City of Cincinnati*, 622 F.3d 524, 531 (6th Cir. 2010) (internal quotation marks and citation omitted).  A plaintiff bears the burden of demonstrating that he or she has standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To discharge this burden, a plaintiff must establish three elements; an injury in fact, "a causal connection between the injury and the conduct complained of," and that the injury will be redressed if the court grants the requested relief. *Id.*  Defendant only challenges the existence of an injury in fact, "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)) (alteration in original).

An injury in fact is an "invasion of a legally-protected interest." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015).  In

order for a plaintiff to show an injury in fact, the plaintiff must establish that he or she has suffered an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation and internal quotation marks omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. "'Concrete' is not, however, necessarily synonymous with 'tangible.' . . . [I]ntangible injuries can . . . be concrete." *Id.* at 1549.

### b.  The Injury-in-Fact Analyses in *Halaburda* and *Beaudry*

In *Halaburda*, this Court held that a statutory violation of the VRPA was sufficient to underwrite Article III standing. 2013 WL 4012827, at *3-*6. The Court expressed "some hesitation [that a statutory violation of the VRPA] meet[s] the definition of an injury in fact." *Id.* at *4. But the Court concluded that *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702 (6th Cir. 2009), in which the Sixth Circuit found that a statutory violation constituted an injury in fact, was factually indistinguishable and thus governed the case.

The plaintiff in *Beaudry* alleged that the defendants committed a willful violation of the Fair Credit Reporting Act ("FCRA"). 579 F.3d at 703-

04.  The plaintiff claimed that "the defendants failed to account for a . . .

change in the numbering used by the [state] driver's license system,

leading their systems to reflect incorrectly that many . . . consumers,

including [the plaintiff], were first-time check-writers."  *Id.* at 703.  The

plaintiff did not assert that any of her checks were rejected or that she

experienced any harm other than the FCRA violation itself.  *Id.* at 705.

Nonetheless, the court held that FCRA's statutory-damages provision

provided plaintiff with Article III standing.  *Id.* at 707.  The court explained

that "Congress 'has the power to create new legal rights, [including] right[s]

of action whose only injury-in-fact involves the violation of that statutory

right.'"  *Id.* (quoting *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009))

(alterations in original).  The court further explained that there were only

two limitations on Congress's power, neither of which applied in *Beaudry*:

> First, [the plaintiff] must be "among the injured," in the sense
> that she alleges the defendants violated her statutory rights. [*In
> re Carter*, 553 F.3d 979, 988 (6th Cir. 2009)]; *see Sierra Club v.
> Morton*, 405 U.S. 727, 734-35, 92 S.Ct. 1361, 31 L.Ed.2d 636
> (1972).  Yet that limit poses no obstacle here: [the plaintiff]
> alleged that she was one of the consumers about whom the
> defendants were generating credit reports based on inaccurate
> information due to their failure to accommodate the new . . .
> driver's license numbering system.  She thus has alleged that
> the defendants' failure to follow "reasonable procedures to
> assure maximum possible accuracy" of credit reporting

information occurred "with respect to" her, as the statute requires. 15 U.S.C. §§ 1681e(b), 1681n(a). Second, although a right created by Congress "need not be economic in nature, it still must cause individual, rather than collective, harm." *Carter*, 553 F.3d at 989. [FCRA's] statutory damages [provision] clears this hurdle as well: It does not "authorize suits by members of the public at large," *id.*; it creates an individual right not to have unlawful practices occur "with respect to" one's own credit information, 15 U.S.C. § 1681n. This nexus between the individual plaintiff and the legal violation thus suffices to sustain this statutorily created right.

*Beaudry*, 579 F.3d at 707.

This Court believed that *Halaburda* "f[ell] in line with *Beaudry* . . . . [The VRPA] was created by a state legislature to protect individual consumers from certain disclosures of their personal information." 2013 WL 4012827*,* at *6. Indeed, each VRPA violation involves the disclosure of a particular person's information. Thus, like the FCRA plaintiff in *Beaudry*, a plaintiff claiming that a defendant disclosed his or her information in violation of the VRPA necessarily alleges that he or she is "among the injured."

### c.   The *Spokeo* Case

Like *Beaudry*, *Spokeo* is a FCRA case. 136 S. Ct. 1540. The defendant operated a "people search engine." *Id.* at 1544. The plaintiff alleged that there were inaccuracies in "some of the information" about the

- 34 -

plaintiff that the defendant "gathered and then disseminated" through the
search engine. *Id.* Among other things, the search engine falsely indicated
that the plaintiff was married with children, that the plaintiff was middle-
aged, and that the plaintiff "ha[d] a job, [was] relatively affluent, and [held] a
graduate degree." *Id.* at 1546. The plaintiff claimed that the defendant had
violated FCRA by, *inter alia*, failing to "'follow reasonable procedures to
assure maximum possible accuracy of' consumer reports." *Id.* at 1545
(quoting 15 U.S.C. § 1681e(b)). The Ninth Circuit found that the plaintiff
had established an injury in fact:

> [The Ninth Circuit] began by stating that "the violation of a
> statutory right is usually a sufficient injury in fact to confer
> standing." [*Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir.
> 2014)]. The [Ninth Circuit] recognized that "the Constitution
> limits the power of Congress to confer standing." *Id.*, at 413.
> But the court held that those limits were honored in this case
> because [the plaintiff] alleged that "[the defendant] violated *his*
> statutory rights, not just the statutory rights of other people,"
> and because his "personal interests in the handling of his credit
> information are individualized rather than collective." *Ibid.*
> (emphasis in original).

*Spokeo*, 136 S. Ct. at 1546. The Supreme Court determined that the Ninth
Circuit had conflated the concreteness and particularity elements of the
injury-in-fact requirement. *See id.* at 1545 ("The Ninth Circuit's analysis
focused on the second characteristic (particularity), but it overlooked the

- 35 -

first (concreteness).").  Thus, the Court reversed and remanded for further

consideration of the concreteness element.  *See id.*

For the benefit of the Ninth Circuit on remand, the Supreme Court's

opinion elucidated the concreteness component of the injury-in-fact

requirement.  The Court explained that a concrete injury must be "*de facto*"

but that it does not necessarily have to be "tangible."  *Spokeo*, 136 S. Ct. at

1548-49.  Of particular relevance to the instant case, a violation of a statute

"can be sufficient in some circumstances to constitute injury in fact. . . .  [A]

plaintiff in such a case need not allege any *additional* harm beyond the one

Congress has identified."  *Spokeo*, 136 S. Ct. at 1549; *see also Imhoff Inv.,*

*L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) ("Congress may

. . . 'enact statutes creating legal rights, the invasion of which creates

standing, even though no injury would exist without the statute.'" (quoting

*Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973))).  But "a bare

procedural violation [of a statute], divorced from any concrete harm," does

not constitute an injury in fact.  *Spokeo*, 136 S. Ct. at 1549; *see also Sierra*

*Club v. Morton*, 405 U.S. 727, 738 (1972) (Statutory "broadening [of] the

categories of injury that may be alleged in support of standing is a different

- 36 -

matter from abandoning the requirement that the party seeking review must himself have suffered an injury.").

The Court explained that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 136 S. Ct. at 1549. Therefore, Congress's (or a state legislature's) "judgment is . . . instructive and important" in deciding whether a statutory violation is sufficient to support Article III standing. *Id.* But "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right." *Id.* The Court further explained that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*

One type of statutory violation that is insufficient to satisfy the injury-in-fact requirement is a "bare procedural violation, divorced from any concrete harm." *Spokeo*, 136 S. Ct. at 1549. The Court noted that in the context of FCRA, a defendant's failure to follow reasonable procedures to ensure accuracy or to provide the statutorily required notice to a consumer "may result in no harm." *Id.* at 1550. A procedural violation may not even

result in the disclosure of inaccurate information.  *Id.*  And "not all

inaccuracies cause harm or present any material risk of harm. . . . [For

example, i]t is difficult to imagine how the dissemination of an incorrect zip

code, without more, could work any concrete harm."  *Id.*

### d. Whether, Post-*Spokeo*, VRPA's Statutory Cause of Action Is Still Sufficient to Support Article III Standing

The Sixth Circuit's analysis in *Beaudry* is very similar to the Ninth

Circuit's analysis in *Spokeo*, which the Supreme Court criticized for

conflating the concreteness and particularity requirements.  Thus, *Spokeo*

casts some doubt on the holding of *Beaudry* and this Court's reliance on

*Beaudry* in *Halaburda*.  Nonetheless, the Court concludes that under the

principles set forth by the Supreme Court in *Spokeo*, a violation of the

VRPA is sufficient to satisfy the injury-in-fact requirement.

First, the Court heeds the Supreme Court's admonition in *Spokeo*

to give due consideration to the legislature's judgment in enacting the

VRPA's civil cause of action.  The VRPA's plain language and legislative

history demonstrate that it "was created by [the Michigan] legislature to

protect individual consumers from certain disclosures of their personal

information."  *Halaburda*, 2013 WL 4012827, at *6.  Indeed, the VRPA's

long title is: "An act to preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials, and to provide penalties and remedies for violation of this act." 1988 Mich. Pub. Act No. 378; *see also* Richards, *supra*, at 693-97 (explaining the motivation for the federal Video Privacy Protection Act and related state laws, including the VRPA). When the Michigan legislature enacted the VRPA, the legislature created a new right to privacy. A violation of this right results in real, concrete harm, even if the harm is not tangible. *See Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (applying the Supreme Court's holding in *Spokeo* and holding that "through the [federal Fair Debt Collection Practices Act], Congress has created a new right—the right to receive [certain] required disclosures in communications governed by the [Act]—and a new injury—not receiving such disclosures"); *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441, 2016 WL 3513782, at *7 (3d Cir. June 27, 2016) (holding that disclosure of information in violation of the federal Video Privacy Protection Act resulted in a concrete harm "in the sense that it involve[d] a clear *de facto* injury, i.e., the unlawful disclosure of legally protected information").

Second, the type of statutory violation alleged in the instant case is not a "bare procedural violation," *Spokeo*, 136 S. Ct. at 1549, but rather a violation of the VRPA's substantive core.  The central provision of the VRPA states that a person "*shall not knowingly disclose* . . . a record or information that personally identifies the customer as having purchased, leased, rented, or borrowed [various written and audiovisual] materials." Mich. Comp. Laws § 445.1712(1) (emphasis added).  Defendant is accused of violating this injunction.  Such a violation can hardly be deemed merely procedural. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (rejecting the defendant's standing argument that the plaintiff had suffered no harm from its "technical" violation of the federal Video Privacy Protection Act because "'technical' violations of the statute (i.e., impermissible disclosures of one's sensitive, personal information) are precisely what Congress sought to illegalize by enacting the VPPA").

Third, the Court notes that the right guaranteed by the VRPA is similar in kind to other privacy rights that were gradually recognized by American courts over the course of the last century, following the publication of Samuel Warren and Louis Brandeis's landmark article *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890).  *See generally* Neil M.

Richards & Daniel J. Solove, *Privacy's Other Path: Recovering the Law of Confidentiality*, 96 Geo. L.J. 123 (2007); William L. Prosser, *Privacy*, 48 Cal. L. Rev. 383 (1960).  Moreover, as Plaintiff points out, precursors to American privacy law can be found in nineteenth century English law.  *See, e.g.*, *Prince Albert v. Strange*, (1849) 41 Eng. Rep. 1171, 1178 (Ch.) (enjoining the defendant from disseminating the plaintiff's etchings that the defendant obtained through a "breach of trust, confidence, or contract"); *but see* Richards & Solove, *supra*, at  130 ("*Prince Albert* was a famous confidentiality and literary property case that Warren and Brandeis artfully (and perhaps disingenuously) recharacterized as a privacy case.").  The history of American and English courts recognizing causes of action similar to the cause of action asserted in the instant case is "relevant to the constitutional standing inquiry since . . . Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amendable to, and resolved by, the judicial process.'" *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 774 (2000) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)).  This factor is not dispositive, however, because privacy law is a *relatively* recent development (it did not exist, for example,

- 41 -

at the time of the Nation's founding), and because the resemblance between the VRPA cause of action and earlier privacy based causes of action is only partial.

Defendant relies primarily on a number of district court cases, which are not binding on this Court, and, to the extent that they are persuasive, are distinguishable.  In *Gubala v. Time Warner Cable Inc.*, for example, the plaintiff alleged that the defendant cable-services provider retained his personal information after the plaintiff terminated his cable services.  No. 15-CV-1078, 2016 WL 3390415, at *1 (E.D. Wis. June 17, 2016).  The defendant's conduct allegedly violated the federal Cable Communications Policy Act, which requires cable operators to destroy such information "[i]f the information is no longer necessary for the purpose for which it was collected."  47 U.S.C. § 551(e).  The court held that this procedural violation did not result in a harm that was sufficiently concrete to constitute an injury in fact.  2016 WL 3390415, at *4. The *Gubala* court may have been right that a party's mere *retention* of private information results in such insubstantial harm that Congress or a state legislature cannot pass a statute that would elevate it to the level of an injury in fact.  But the instant case involves a *disclosure* of private information and thus is

- 42 -

distinguishable.  Even the *Gubala* court recognized this.  *See id.* at \*4

("[T]here are no allegations . . . showing that the plaintiff has suffered a

*concrete* injury as a result of the defendant's retaining his personally

identifiable information. . . . He does not allege that the defendant has

disclosed his information to a third party.").  Defendant's other cases are

similarly distinguishable.  *See Sartin v. EKF Diagnostics, Inc.*, No. 16-1816,

2016 WL 3598297 (E.D. La. July 5, 2016) (holding that the plaintiff suffered

no concrete harm from being sent "unsolicited fax advertisements"); *Smith*

*v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June

8, 2016) (holding that the plaintiffs suffered no concrete harm when, in the

process of submitting to a background check for defendant, they were

provided with "disclosure and authorization [forms] which improperly

included extraneous information such as a liability release, in violation of

the FCRA"); *Wall v. Rental*, No. 15-13254, 2016 WL 3418539 (E.D. Mich.

June 22, 2016) (holding that tenants did not suffer a concrete harm when

their landlords stored their security deposits at a different bank than the one

indicated in the lease agreement); *Khan v. Children's Nat'l Health Sys.*, No.

CV TDC-15-2125, 2016 WL 2946165, at \*5 (D. Md. May 19, 2016) (holding

that patients did not suffer a concrete harm from a breach of a hospital's

computer system where "there [was] no indication that the patients'
personal data was actually viewed, accessed, or copied, or was even the
target of the [breach]").

In sum, the Court concludes that a violation of the VRPA's disclosure
prohibition results in a concrete injury.  Moreover, as noted above, it is
evident that a VRPA violation results in a harm to the *particular* customer
whose information was disclosed.  Thus, the injury-in-fact requirement is
satisfied.  Because Plaintiff's VRPA claim (Count 1) and unjust-enrichment
claim (Count 2) are both based on Defendant's VRPA violation, the
foregoing standing analysis applies to both claims.[11]

---

[11] Because the Court finds that the VRPA underwrites standing for Plaintiff's VRPA and
unjust-enrichment claims, the Court does not need to consider the parties' other
standing arguments.  The Court notes, however, that if the Michigan legislature had not
provided a cause of action in the VRPA, the disclosures alleged in this case would
probably be insufficient, in themselves, to satisfy the injury-in-fact requirement.  For
example, in *Carlsen v. Gamestop*, 112 F. Supp. 3d 855, 858 (D. Minn. 2015), the
plaintiff alleged that he suffered an injury in fact when the defendant disclosed his
personal information.  The defendant had obtained the plaintiff's personal information
when the plaintiff subscribed to the defendant's website.  *Id.*  The plaintiff claimed that
he was harmed by the disclosure because he either would not have paid as much for a
subscription or would not have subscribed at all "if he had known how his [personal
information] would be handled."  *Id.* at 861, 864.  The court rejected this argument,
explaining that the plaintiff "only allege[d] a general theory of overpayment . . . [and]
does not allege that he paid anything specific for [privacy]."  *Id.* at 862; *see also Galaria
v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 658 (S.D. Ohio 2014) (rejecting the
argument that "the loss of privacy alone" was a cognizable injury); *Low v. LinkedIn
Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011)

- 44 -

## B.     Plaintiff Has Stated a Claim for Unjust Enrichment.

Defendant argues that Count 2 of Plaintiff's complaint fails to state a

claim for unjust enrichment.  Defendant asserts two arguments.  First,

Defendant argues that the unjust-enrichment claim fails because Plaintiff

does not allege that she suffered a loss.  Second, Defendant cursorily

argues that the VRPA preempts Plaintiff's unjust-enrichment claim.  Both

arguments lack merit.

### 1.     Plaintiff Does Not Need to Show That She Suffered a Monetary Loss in Order to Make Out Her Unjust-Enrichment Claim.

Defendant's first argument is that "Plaintiff fails to state an unjust

enrichment claim because she fails to allege that she lost anything of

value."  (Def.'s Mot. Dismiss at 35).  Under Michigan law, "[u]njust

enrichment is defined as the unjust retention of money or benefits which in

justice and equity belong to another."  *Tkachik v. Mandeville*, 487 Mich. 38,

48, 790 N.W.2d 260 (2010) (quoting *McCreary v. Shields*, 333 Mich. 290,

294, 52 N.W.2d 853 (1952)) (internal quotation marks omitted).  A plaintiff

---

(unpublished) (holding that the plaintiff's allegation that his improperly disclosed
"personal information ha[d] an independent economic value" was "too abstract and
hypothetical to support Article III standing").

alleging unjust enrichment must establish two elements: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271, 280 (2003).

It is evident from these cases that "loss" is not an element of an unjust enrichment claim under Michigan law. Defendant cites *Kammer Asphalt Paving Co., Inc. v. East China Township Schools*, which states that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." 443 Mich. 176, 185 (1993) (quoting Restatement (First) of Restitution § 1 (1937)) (internal quotation marks omitted) (alteration in original). But it is not the case that a plaintiff must literally have suffered a "loss" in order for a defendant to have been enriched "at [the plaintiff's] expense."

*Allor v. DeClark, Inc.*, illustrates this point. No. 300953, 2012 WL 555779 (Mich. Ct. App. Feb. 21, 2012) (unpublished). The plaintiff in *Allor* licensed software to one company but later found out that another company was using the software. *Id.* at *1. The plaintiff sued the latter company to recover licensing fees, based on an unjust-enrichment theory. *Id.* The court held that the plaintiff had successfully proved unjust enrichment:

- 46 -

"Plaintiff presented evidence that defendant received the benefit of using [the software] for 15 months and that plaintiff suffered an inequity because defendant did not pay for that usage."  *Id.* at *2.  The plaintiff did not suffer any loss, except insofar as the plaintiff was not paid for the value of the software.  If this is a loss, then Plaintiff *has* successfully pleaded a loss. Plaintiff alleges, *inter alia*, that Defendant disclosed her personal information and profited from it, without paying Plaintiff for the value of this information.

Moreover, Plaintiff has stated a plausible basis for the two *actual* elements of an unjust-enrichment claim.  First, Plaintiff alleges that she conferred benefits on Defendant.  These benefits included the subscription fees paid by Plaintiff.  (Compl. ¶ 69).  These benefits also included the personal information provided by Plaintiff to Defendant, which Defendant allegedly monetized by selling to "data miners."  (*Id.* ¶¶ 3, 69 ).  Second, Plaintiff alleges that the Defendant violated the VRPA by disclosing the information that Defendant received in the course of Plaintiff's subscription. If true, this would appear to render Defendant's retention of the benefits conferred by Plaintiff inequitable.  (*Id.* ¶ 72).

### 2.    Plaintiff's Unjust-Enrichment Claim Is Not Preempted by the VRPA.

Defendant's final argument is that "[b]ecause any privacy interest in non-disclosure of Plaintiff's Personal Reading Information is covered by the VRPA, if Plaintiff's VRPA claim survives the Amendment, it preempts her unjust enrichment claim." (Def.'s Mot. Dismiss at 37). This argument fails.

A statutory remedy preempts a common law claim if the statute "exclude[s] the availability of alternative common-law remedies." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich.App. 187, 729 N.W.2d 898, 907 (2006). "Whether or not a statutory scheme preempts the common law on a subject is a matter of legislative intent." *Kraft v. Detroit Entm't L.L.C.*, 261 Mich.App. 534, 683 N.W.2d 200, 206 (2004) (citations omitted). A statutory remedy will supersede a common law remedy "where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions." *Id.*; *see also Hoerstman Gen. Contracting, Inc., v. Hahn*, 474 Mich. 66, 711 N.W.2d 340, 346 (2006). "Therefore, statutes only operate to exclude common law claims when they feature express language to that effect, or when they are part of a 'comprehensive' legislative scheme." *Boelter v.*

*Hearst Commc'ns, Inc.*, No. 15 CIV. 3934 (AT), 2016 WL 3369541, at \*4-\*6 (S.D.N.Y. June 17, 2016) (collecting cases and summarizing Michigan state law).  "The VRPA does not include express language limiting a plaintiff's other potential remedies and is not part of a comprehensive legislative scheme.  Therefore, it does not preclude plaintiff's unjust enrichment claim."  *Id.*

## IV. CONCLUSION

Plaintiff has both statutory standing under the VRPA and Article III standing.  And Plaintiff's unjust-enrichment count (Count 2) states a claim upon which relief may be granted.  Therefore, Defendant's motion to dismiss (Doc. 10) is DENIED.

IT IS SO ORDERED.

Dated:  February 15, 2017

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 15, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk