## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CAROLYN PERLIN, individually and on behalf of all others similarly situated, | Case No. 16-cv-10635 |
| Plaintiff, | Hon. George Caram Steeh |
| v. | |
| TIME INC., a Delaware Corporation, | |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Respectfully submitted by:**

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn J. Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596-1111
Fax: (248) 671-0335

*Proposed Class Counsel*

## STATEMENT OF ISSUES PRESENTED

1.      Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes?

**Plaintiff's Answer: Yes.**

2.      Should Plaintiff's Counsel be appointed as Class Counsel?

**Plaintiff's Answer: Yes.**

3.      Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed settlement class?

**Plaintiff's Answer: Yes.**

4.      Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiff's Answer: Yes.**

# CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711–15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455 (2013)

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007)

*Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001)

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013)

*Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007)

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................. 1

II.     BACKGROUND ................................................................. 4

        A.      Michigan's Video Rental Privacy Act ................................. 4

        B.      The Coulter-Owens Matter ........................................... 5

        C.      Plaintiff's Allegations ............................................ 6

        D.      The Litigation History and Settlement Discussions ................. 7

III.    TERMS OF THE SETTLEMENT ..................................................... 9

        A.      Class Definition ................................................... 9

        B.      Monetary Relief .................................................... 9

        C.      Prospective Relief ................................................ 10

        D.      Release ........................................................... 10

        E.      Notice and Administration Expenses ................................ 10

        F.      Incentive Award ................................................... 10

        G.      Attorneys' Fees and Expenses ...................................... 11

IV.     THE PROPOSED CLASS IS APPROPRIATE FOR
        CERTIFICATION FOR SETTLEMENT PURPOSES .................................... 11

        A.      The Numerosity Requirement Is Satisfied ........................... 12

        B.      The Commonality Requirement Is Satisfied .......................... 13

        C.      The Typicality Requirement Is Satisfied ........................... 16

        D.      The Adequacy Requirement Is Satisfied ............................. 18

E.      **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)** ...................................................... 21

     1.   *Common Questions of Law and Fact Predominate* ...................... 21

     2.   *A Class Action Is a Superior Method for Adjudicating This Action* ................................................................................. 23

**V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** ........................................................................ 25

**VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL** ...................................................... 26

**VII.    THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE** ............................................................................. 33

**VIII. CONCLUSION** ...................................................................................... 34

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ...............................................................*passim*

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
568 U.S. 455 (2013) .................................................. 11, 23

*BMW of N. Am., Inc. v. Gore,*
517 U.S. 559 (1996) ................................................... 30

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,*
523 U.S. 424 (2001) ................................................... 30

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ................................................... 33

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ........................................ 13, 15, 21

## United States Appellate Court Cases

*Beattie v. CenturyTel, Inc.,*
511 F.3d 554 (6th Cir. 2007) ....................................... 19

*Daffin v. Ford Motor Co.,*
458 F.3d 549 (6th Cir. 2006) ....................................... 13

*In re Am. Med. Sys., Inc.,*
75 F.3d 1069 (6th Cir. 1996) ................................... 12, 16

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
722 F.3d 838 (6th Cir. 2013) ............................. 12, 14, 23

*Lane v. Facebook, Inc.,*
696 F.3d 811 (9th Cir. 2012) ................................... 3, 32

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003) ........................................................ 30

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ........................................ 22, 23, 24

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ...................................................... 18

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ...................................................... 26

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ...................................................... 18

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2010) ........................................ 22, 23, 25

**United States District Court Cases**

*Calloway v. Caraco Pharm. Labs., Ltd.*,
    287 F.R.D. 402 (E.D. Mich. 2012) ............................................ 24

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) ...................................... 22, 24

*Coulter-Owens v. Time Inc.*,
    No. 2:12-cv-14390-GCS-MKM (E.D. Mich.) ..................................... *passim*

*Coulter-Owens v. Time Inc.*,
    308 F.R.D 524 (E.D. Mich. 2015) ...................................... *passim*

*Coulter-Owens v. Rodale, Inc.*,
    1:14-cv-12688-RHC-RSW (E.D. Mich.) .................................. 2, 12

*Curry v. SBC Comms, Inc.*,
    250 F.R.D 301 (E.D. Mich. 2008) .............................................. 13

*Date v. Sony Elecs., Inc.*,
    No. 07-cv-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013).............. 18

*Davidson v. Henkel Corp.*,
    302 F.R.D. 427 (E.D. Mich. 2014) ............................................................ 13

*In re Facebook Privacy Litig.*,
    No. 10-cv-02389 (N.D. Cal. 2010) .......................................................... 20

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ................................................. 3, 32

*Gilkey v. Cent. Clearing Co.*,
    202 F.R.D. 515 (E.D. Mich. 2001) ............................................................ 17

*Halaburda v. Bauer Publ'g Co, LP*,
    2:12-cv-12831 (E.D. Mich.) ........................................................... 2, 12, 20

*Harris v. comScore, Inc.*,
    292 F.R.D. 579 (N.D. Ill. 2013) ............................................................... 20

*In re Google Buzz Privacy Litig.*,
    No. 10-cv-00627, 2011 WL 7460099 (N.D. Cal. Jun. 2, 2011) ............... 3, 32

*In re Netflix Privacy Litig.*,
    5:11-cv-00379 (N.D. Cal.) ................................................................ 3, 15, 32

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ....... 26, 27

*Int'l Union v. Ford Motor Co.*,
    No. 05-cv-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ......... 18, 27

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ............................................................ 28

*Kinder v. Meredith Corp.*,
    1:14-cv-11284 (E.D. Mich.) .............................................................. *passim*

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ..................................................... 31

*Little Caesar Enters., Inc. v. Smith*,
    172 F.R.D. 236 (E.D. Mich. 1997) .............................................................. 18

*Machesney v. Lar-Bev of Howell, Inc.*,
    292 F.R.D. 412 (E.D. Mich. 2013) ........................................................ 21, 22

*Merenda v. VHS of Mich., Inc.*,
    296 F.R.D. 528 (E.D. Mich. 2013) ........................................................ 14, 21

*Moeller v. Am. Media, Inc.*,
    No. 5:16-cv-11367-JEL-EAS (E.D. Mich.) ................................................. 12

*Olden v. LaFarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007) ..................................................... 31

*Parker v. Time Warner Entm't Co.*,
    239 F.R.D. 318 (E.D.N.Y. 2007) .............................................................. 16

*Reese v. CNH Am., LLC*,
    227 F.R.D. 483 (E.D. Mich. 2005) ............................................................ 16

*Sheick v. Auto. Component Carrier, LLC*,
    No. 09-cv-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ......... 27, 28

*Supnick v. Amazon.com, Inc.*,
    No. 00-cv-0221P, 2000 WL 1603820 (W.D. Wash. May 18, 2000) ........... 16

*UAW v. Gen. Motors Corp.*,
    No. 05-cv-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ......... 29

**Statutory Provisions**

28 U.S.C. § 1715 .......................................................................................... 34

M.C.L. § 445 ......................................................................................... 4, 5, 16

Fed. R. Civ. P 12 ......................................................................................... 27

Fed. R. Civ. P 23 ................................................................................. *passim*

ix

**Other Authorities**

Conte & Newberg,
    4 *Newberg on Class Actions*, § 11.25 (4th Ed. 2002) ............................ 26, 33

Daniel R. LeCours, Note,
    *Steering Clear of the "Road to Nowhere": Why the BMW*
    *Guideposts Should Not be Used to Review Statutory*
    *Penalty Awards,* 63 Rutgers L. Rev. 327 (2010) ........................................ 30

Hon. William B. Murphy & John Vanden Hombergh,
    Michigan Non-Standard Jury Instr. Civil § 32:10 (2014) ........................... 15

*Manual for Complex Litig.* § 21.632 (4th ed. 2004) .............................................. 26

## I.   INTRODUCTION

In this putative class action, Plaintiff Carolyn Perlin ("Plaintiff") alleges that Defendant Time Inc. ("Defendant" or "Time") violated the Michigan Preservation of Personal Privacy Act—which is popularly referred to as the Video Rental Privacy Act ("VRPA")—by systematically disclosing its customers' magazine subscription histories and personal reading habits to third-party companies without notice or consent. After more than a year of hard-fought litigation—not to mention the two-plus years spent litigating the *Coulter-Owens v. Time* matter, involving nearly identical facts and claims—the Parties have reached a Class Action Settlement Agreement that, if approved, will resolve Plaintiff's and the putative class's VRPA claims against Defendant.[1] As discussed herein, the Settlement— which was reached only after extensive class and merits discovery and numerous rounds of arm's-length negotiations—is an excellent result for the proposed Settlement Class.[2]

Under the terms of the Settlement, Time has agreed to establish a $7.4 million non-reversionary Settlement Fund, which will be used to pay all approved claims by class members, notice and administration expenses, an incentive award

---

[1]    The proposed Settlement Agreement ("Agreement") is attached hereto as Exhibit 1.

[2]    Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Settlement Agreement.

to Plaintiff, and attorneys' fees to proposed Class Counsel as awarded by the

Court. In terms of the monetary relief to class members, those who submit a short

and simple one-page claim form will receive a *pro rata* cash award, estimated to be

$25–50.[3] And, just as important, the proposed Settlement also provides meaningful

prospective relief by prohibiting Defendant from knowingly disclosing its

Michigan customers' protected information to any third-party companies,

including Acxiom Corporation and Wiland Direct, for a period of two years unless

it first obtains customers' express written consent.

Ultimately, while the strength of the Settlement should be apparent on its

face, the Court need not evaluate the Settlement in a vacuum, since it follows the

example set by those that came before it. In the first ever VRPA settlement,

*Halaburda v. Bauer Publ'g Co, LP*, 2:12-cv-12831, dkt. 68 (E.D. Mich. January 6,

2015) (Steeh, J.), this Court granted final approval to a settlement (with the same

structure but on behalf of a much smaller class) that created a $775,000 cash fund,

with claiming class members receiving approximately $75 each. In *Coulter-Owens*

*v. Rodale, Inc.*, 1:14-cv-12688-RHC-RS, dkt. 54 (E.D. Mich. Sept. 29, 2016), the

court granted final approval to a structurally-identical settlement, which (also on

behalf of a smaller class) created a $4.5 million cash fund that paid out

---

[3]      This estimation is based upon a participation rate of 10–20%, which is typical in VRPA class action settlements.

approximately $44 to each claiming class members. And, in *Kinder v. Meredith Corp.*, 1:14-cv-11284, dkt. 72 (E.D. Mich. Oct. 5, 2015), the parties reached a settlement creating a $7.5 million cash fund, which (on behalf of a *larger* class this time) resulted in claiming class members receiving about $32 for their claims. Here, the Settlement Class Members will receive an estimated $25–50, which closely follows the established market rate for VRPA settlements in this District. Further, in all three cases, the prospective relief was very similar to the relief secured here.

Looking beyond the VRPA to privacy cases more generally, the instant Settlement also meets or exceeds privacy settlements reached in litigation involving similar statutes that have been approved throughout the country. *See, e.g.*, *Lane v. Facebook, Inc*., 696 F.3d 811, 820–22 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims, and directing $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig*., No. 5:11-cv-00379, dkt. 256 (N.D. Cal. Mar. 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig*., No. 10-cv-00627, 2011 WL 7460099, at *3 (N.D. Cal. Jun. 2, 2011) (approving $8.5 million *cy pres* settlement); *Fraley v. Facebook, Inc*., 966 F. Supp. 2d 939 (N.D. Cal. 2013) (approving privacy settlement providing claimants with a cash payment of $15). While the paradigm in privacy

3

settlements is shifting away from *cy pres* deals to cash to class members, there is little question the instant settlement affords relief to the class well beyond that which is typically secured in the privacy settlement context.

Given the significant relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement falls well within the range of possible approval. Accordingly, Plaintiff respectfully requests that the Court grant her motion for preliminary approval in its entirety and direct that notice be disseminated to the proposed Settlement Class and a final fairness hearing be set.

## II.   BACKGROUND

### A.   Michigan's Video Rental Privacy Act

A brief summary of the VRPA will give context to the proposed Settlement. The Michigan legislature passed the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." M.C.L. § 445.1712. As such, the VRPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

*Id.*

4

To enforce the statute, the VRPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

### B.   The Coulter-Owens Matter

Before this matter was initiated, proposed Class Counsel litigated a related class action against Defendant captioned *Coulter-Owens v. Time Inc.*, Case No. 2:12-cv-14390-GCS-MKM (E.D. Mich.) (the "Coulter-Owens matter"), which similarly alleged that Time violated the VRPA, but was brought by a different class representative and on behalf of a different class of subscribers. As the Court is well aware since it presided over the case, the Coulter-Owens matter was extensively litigated for over two years, which consisted of, among other things, extensive discovery, including multiple depositions, dispositive motion practice, including two rounds of briefing on motions to dismiss, adversarial class certification, and cross motions for summary judgment, and an appeal to the Sixth Circuit. Ultimately, the Court granted, and the Sixth Circuit affirmed, Time's motion for summary judgment, holding that class members who purchased their magazine subscriptions from third-party agents did not purchase from Time "at retail," as required under the VRPA.

C.      **Plaintiff's Allegations**

Based on the Sixth Circuit's opinion, Plaintiff Carolyn Perlin brought this

follow on putative class action against Time on behalf of Michigan consumers who

purchased magazine subscriptions "at retail" directly from Time Inc.[4] (*See*

Plaintiff's Class Action Complaint, dkt. 1 ("Compl.").) In her complaint, Plaintiff

alleges that despite the substantial revenue its magazine subscriptions generate,

Defendant has a business division dedicated to selling information related to its

customers' magazine subscription histories and personal reading habits. (*Id.* ¶¶ 2,

22, 24–26, 51–53, 60.) To increase the value of such information, Plaintiff alleges

that Defendant first trades its customers' protected reading information with

certain third parties—including data mining companies like Acxiom—in exchange

for other demographic and lifestyle data that such companies have already gathered

(or "mined") on each subscriber. (*Id.* ¶¶ 2, 19, 22, 26, 34–35.) Defendant thereafter

"enhances" its own customer profiles with this additional data (e.g., their income

levels, religion, ages, race, political affiliations, travel habits, medical conditions,

---

[4]      In slight contrast to the class definition in the Complaint, which includes all
direct subscribers in Michigan regardless of their manner of subscription, the
proposed Settlement Class excludes the small minority of direct subscribers who
purchased a subscription online through a Time website. This is because discovery
revealed that Time sufficiently presented its privacy policy to online subscribers—
thus obtaining their consent to collect and disclose their information—but did not
do so for offline subscribers, including Plaintiff who subscribed via postcard.

etc.), and then sells the enhanced information to other unrelated third parties, including database cooperatives, for a profit. (*Id*. ¶¶ 2, 19, 26, 37, 60.)

Plaintiff further alleges that Defendant's offline subscribers (i.e., those who subscribe via postcard or over the phone) never provide consent to disclose information to third parties related to their magazine subscriptions. (*Id*. ¶¶ 3, 27, 33–38, 56, 57.) This is because—during the offline subscription process—subscribers are never presented with or required to consent to any terms or policies informing them of Defendant's disclosure practices. (*Id*.) Likewise, even after subscribing, Defendant fails to notify customers that it will disclose any information to third parties, let alone their protected reading information. (*Id*. ¶¶ 3, 27, 32–35, 56.) Nonetheless, Defendant is in the business of disclosing all of its subscribers' protected reading information to various third parties, without first obtaining its offline subscribers' consent. (*Id*. ¶¶ 2, 3, 26.)

### D.   The Litigation History and Settlement Discussions

Plaintiff filed this class action lawsuit on February 19, 2016 in the United States District Court for the Eastern District of Michigan. (Dkt. 1.) Thereafter, on May 6, 2016, Defendant moved to dismiss Plaintiff's claims under Rules 12(b)(1) and (b)(6), arguing that Plaintiff Perlin lacked Article III standing and failed to state a claim upon which relief could be granted. (Dkt. 10.) Plaintiff filed her opposition brief on June 27, 2016 (dkt. 14), and Defendant filed its reply brief on

July 11, 2016. (Dkt. 16.) After full briefing, on February 15, 2017, the Court
entered an Order denying Defendant's motion to dismiss in full. (Dkt. 27.)
Defendant thereafter answered Plaintiff's Complaint on March 1, 2017 by denying
the allegations and raising seventeen (17) affirmative defenses. (Dkt. 29.) The
Parties then exchanged initial disclosures and served written discovery on each
other and eight third parties. (Declaration of Ari J. Scharg in Support of Plaintiff's
Motion for Preliminary Approval of Class Action Settlement ("Scharg Decl.") ¶ 5.)

Over the next five months, the Parties engaged in substantial class- and
merits-related discovery, which included the production and review of thousands
of documents, numerous meet-and-confer conferences, and the scheduling of
depositions for both Plaintiff Perlin and a corporate representative from Time. (*Id.*
¶ 6.) Before taking the scheduled depositions, however, the Parties engaged in
settlement discussions in an effort to resolve the case without the expense of
further litigation, which would necessarily include adversarial class certification
and summary judgment briefing. (*Id.* ¶ 7.) After multiple rounds of arm's-length
negotiations between counsel experienced in valuing and negotiating VRPA class
settlements,[5] the Parties ultimately reached an agreement on the principal terms of
the Settlement, which is now before the Court. (*Id.* ¶ 8.)

---

[5]    Not only has Class Counsel brought and settled the vast majority of VRPA
cases, defense counsel too, has experience defending and settling them. *See, e.g.,*

8

## III. TERMS OF THE SETTLEMENT

### A. Class Definition

The "Settlement Class" is defined as:

All persons with Michigan street addresses who purchased a subscription to a Time Publication directly from Time, but in a manner other than through a Time website, between February 19, 2013 and February 19, 2016. [6]

(Agreement ¶ 1.30.)

### B. Monetary Relief

Defendant shall establish a $7.4 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion after payment of notice and administrative expenses, attorneys' fees, and an incentive award to the Class Representative. (*Id.* ¶¶ 1.32, 2.1.) No portion of the Settlement Fund will revert back to Defendant. (*Id.* ¶ 2.1.)

---

*Kinder*, 1:14-cv-11284, dkt. 72. This Settlement follows the model of those settlements and yields a payment in line with the others per class member.

[6] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the Settlement Class; (4) Online Purchasers; and (5) the legal representatives, successors or assigns of any such excluded persons. (Agreement ¶ 1.30.)

### C. Prospective Relief

For a period of two years following the Effective Date of the Settlement Agreement, Defendant agrees not to knowingly disclose any of its Michigan subscribers' Personal Reading Information to any third-party companies without first obtaining express written consent. (*Id.* ¶ 2.2.)

### D. Release

In exchange for the relief described above, Defendant and each of its related and affiliated entities (the "Released Parties" defined in ¶ 1.26 of the Settlement Agreement) will receive a full release of all claims arising out of or related to Defendant's disclosure of the Settlement Class Members' magazine subscription information. (*See id.* ¶¶ 1.25–1.27 for full release language.)

### E. Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. (*Id.* ¶¶ 1.28, 1.32.)

### F. Incentive Award

In recognition of her efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff Carolyn Perlin may receive, subject to Court approval, an incentive award of $5,000 from the Settlement Fund, as appropriate compensation

for her time and effort serving as class representative and party to the Action. Defendant will not oppose any request limited to this amount. (*Id.* ¶ 8.3.)

### G. Attorneys' Fees and Expenses

Defendant has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court. (*Id.* ¶¶ 1.32, 8.1.) Class Counsel have agreed to petition the Court for no more than forty percent (40%) of the Settlement Fund. (*Id.* ¶ 8.1.)

## IV. THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re*

11

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

Notably, in a detailed opinion performing the "rigorous analysis" required by Rule 23, this Court certified a class of purchasers of magazines published by Defendant Time alleging the *exact same* conduct at issue here—the systematic disclosure of statutorily protected information to third-party companies Acxiom and Wiland. *Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015). Likewise, similar classes of magazine purchasers were certified for settlement purposes in the *Moeller, Rodale*, *Meredith*, and *Bauer* actions, all of which were approved in this District. *Moeller v. Am. Media, Inc.*, No. 5:16-cv-11367-JEL-EAS, dkt. 34 (E.D. Mich. Jun. 8, 2017); *Rodale, Inc.*, No. 1:14-cv-12688-RHC-RSW, dkt. 44 (E.D. Mich. May 3, 2016); *Kinder*, No. 14-cv-11284, 2016 WL 454441 (E.D. Mich. Feb. 5, 2016); *Halaburda*, No. 2:12-cv-12831-GCS-RSW, dkt. 63 (E.D. Mich. Sept. 26, 2014) (Steeh, J.). Like the classes in those cases, the proposed Settlement Class here should be certified.

## A.    The Numerosity Requirement Is Satisfied

The numerosity requirement is met when joining such a large number of plaintiffs in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although there is no fixed

numerical threshold for determining impracticability of joinder, a "substantial" amount of members will usually suffice. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Only a reasonable estimate or some evidence of the number of members in the purported class is required. *Id.*; *see also Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436–37 (E.D. Mich. 2014) (certifying a class of 49 plaintiffs); *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) (noting that 40 class members is sufficient to satisfy the numerosity requirement).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Defendant's records, the proposed Settlement Class is comprised of approximately 719,000 Michigan residents who purchased a Time magazine subscription, in a manner other than through a Time website, between February 19, 2013 and February 19, 2016. (Scharg Decl. ¶ 9.) There is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

## B.    The Commonality Requirement Is Satisfied

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The threshold for demonstrating the commonality

requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 852–53.

Here, the common contention on which the claims of all class members depend is that Defendant disclosed each of its customers' protected information to third party data miners and database cooperatives, like Acxiom and Wiland, in violation of the VRPA. Determination of the truth or falsity of this contention will resolve an issue—the key issue in the case—central to each class member's claims at once.

Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a VRPA claim, including: (1) whether Defendant is "engaged in the business of selling at retail . . . written materials," (2) whether Defendant disclosed "information concerning the purchase . . . of those materials by a customer" to third parties, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Defendant obtained written permission prior to the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Defendant adequately informed its subscribers that they could remove their names at any time from the disclosed subscriber lists.

14

M.C.L. § 445.1712; *see also* Hon. William B. Murphy & John Vanden Hombergh, Michigan Non-Standard Jury Instr. Civil § 32:10 (2014). As such, it is a common question whether Plaintiff and the members of the proposed Settlement Class all suffered the same injuries that entitle them to damages as a result of Defendant's alleged uniform conduct. *See, e.g., Dukes*, 564 U.S. at 349–50. Each of these legal questions can be determined on a class-wide basis using the same evidence regarding Defendant's practices. *See Coulter-Owens*, 308 F.R.D. at 533 (finding that the litigation, which involved Time's conduct at issue here, was "driven by issues that are common to the entire putative class.") (Steeh, J.).

Numerous federal courts, including this Court, have similarly held that cases like this one—in which defendants are accused of uniformly disclosing information protected by a privacy statute—raise common issues of fact or law. *See, e.g., Coulter-Owens*, 308 F.R.D. at 532–534 (Steeh, J.); *Kinder*, No. 1:14-cv-11284, 2016 WL 454441, at *1 (finding that "the course of Meredith's conduct with customer purchasing information and the applicability of [the] VRPA to that conduct" raises common questions of law and fact); *In re Netflix Privacy Litig.*, 2012 WL 2598819, at *3 (N.D. Cal. July 5, 2012) ("There are questions of law or fact common to class members because all claims for relief arise from [defendant's] stated policy for and a uniform practice of retaining and disclosing [statutorily-protected information]—affecting all those individuals in the same

15

way.") (internal citation omitted); *Parker v. Time Warner Entm't Co.*, 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question— whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice"); *Supnick v. Amazon.com, Inc.*, No. 00-cv-0221P, 2000 WL 1603820, at *1 (W.D. Wash. May 18, 2000) (finding commonality established where the defendants engaged in common course of conduct toward every member of the proposed class: disclosing their personal information without consent).

Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

## C.      The Typicality Requirement Is Satisfied

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). Typicality may be

presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Here, Plaintiff alleges that Defendant's disclosure of her subscription information is not a one-off situation unique to her, but rather, part of Defendant's business of disclosing its customers' subscription information to third parties without consent. (Compl. ¶¶ 3, 27, 32–35, 56, 57.) No matter the person—whether it be Plaintiff or other members of the putative class—the disclosures are made in the exact same manner and for the exact same purpose. And, because Plaintiff alleges that such conduct violates the VRPA, which provides identical statutory damages to all members of the Settlement Class, her claims are undoubtedly typical of the other putative class members because everyone was subjected to the same alleged unlawful conduct (i.e., Defendant's allegedly unlawful disclosures). Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied. *See, e.g., Coulter-Owens*, 308 F.R.D. at 534–35 (finding typicality met where "plaintiff and the proposed class purchased . . . magazines . . .  in the same manner, . . . and defendant allegedly disclosed each plaintiff's 'record or information

concerning the purchase' to Acxiom or Wiland.") (Steeh, J.); *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "the class representatives' claims [arose] from the same events, legal documents, and consequences and legal theories affecting all [class members]").

### D.   The Adequacy Requirement Is Satisfied

The final Rule 23(a) prerequisite requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)); *accord Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type

of relief as the other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 625–26).

In this case, Plaintiff—like each and every one of the Settlement Class Members—is a Michigan customer that purchased a magazine subscription from Defendant and then allegedly had her subscription information disclosed to third parties without consent. (Compl. ¶¶ 30, 32–35.) Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the VRPA, and ensuring that such allegedly unauthorized disclosures do not continue in the future. As such, Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class and her pursuit of this litigation should be clear evidence of that.

Likewise, proposed Class Counsel—Ari J. Scharg, Eve-Lynn J. Rapp, and Benjamin S. Thomassen of Edelson PC—have extensive experience litigating class actions of similar size, scope, and complexity to the instant action. (Scharg Decl. ¶ 10.) They regularly engage in major complex litigation involving consumer privacy, including recent VRPA cases, have the resources necessary to conduct litigation of this nature, and have been appointed lead class counsel by this Court and numerous others throughout the country. *See* Firm Resume of Edelson PC, attached hereto as Exhibit 2-A; *see also Coulter-Owens,* 308 F.R.D. at 535–36 (achieving adversarial class certification with the Court noting that Edelson PC "is

19

qualified to serve as class counsel especially given counsel's prior experience in handling a class action lawsuit dealing with the same claims before this court.") (Steeh, J.); *Halaburda*, No. 2:12-cv-12831, dkt. 63 (E.D. Mich. Sept. 26, 2014) (Steeh, J.) (appointing Edelson PC as class counsel in VRPA settlement); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581 (N.D. Ill. 2013) (achieved adversarial certification in the largest-ever privacy class action and appointed class counsel); *In re Facebook Privacy Litig.*, No. 10-cv-02389, dkt. 69 (N.D. Cal. 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue").

Further, proposed Class Counsel have devoted substantial resources to prosecuting Time for its allegedly unlawful disclosure practices, including extensively litigating the Coulter-Owens matter, as described above, investigating Plaintiff's and the Settlement Class's claims against Time, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery, engaging in extensive settlement discussions, and ultimately, negotiating the Settlement now before the Court, which brings real and substantial relief to the Class. (Scharg Decl. ¶¶ 3–9.) In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency. (*Id.*)

Accordingly, since Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *Merenda*, 296 F.R.D. at 535. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

### 1. *Common Questions of Law and Fact Predominate*

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement of Rule 23(a) in that both require the existence of common questions of law and fact—however, Rule 23(b) imposes the more stringent requirement that common issues

21

predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc.*, 292

F.R.D. 412, 423 (E.D. Mich. 2013). In other words, where commonality is satisfied

when there is a single factual or legal question common to the class, the

"predominance requirement is met if this common question is at the heart of the

litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th

Cir. 2007). Common issues are at the heart of a case when there is generalized

evidence that would prove or disprove an element of the action on a class-wide

basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001);

*see also Powers*, 501 F.3d at 619 (noting that "[c]ases alleging a single course of

wrongful conduct are particularly well-suited to class certification").

In this case, there are several common factual and legal questions that are at

the center of this action: (1) whether Defendant is "engaged in the business of

selling at retail . . . written materials," (2) whether Defendant disclosed

"information concerning the purchase . . . of those materials" to third parties, (3)

whether the disclosed records or information indicated the customers' identities,

(4) whether Defendant obtained written permission prior to the disclosures, (5)

whether all the disclosures were made "for the exclusive purpose of marketing

goods and services directly to the consumer," and if so, (6) whether Defendant

properly informed its subscribers that they could remove their names at any time

from the disclosed subscriber lists. (Compl. ¶¶ 14, 41, 60.) These questions

predominate over any issues affecting individual members (to the extent there are

any) and are subject to common proof (i.e., examination of Defendant's uniform

conduct). (*Id.*)

Because Defendant engaged in a single course of conduct with respect to all

members of the Settlement Class, their claims "will prevail or fail in unison," and

as such, predominance is met. *Whirlpool Litig.*, 722 F.3d at 859 (quoting *Amgen*

*Inc.*, 568 U.S. at 460); *see also Coulter-Owens*, 308 F.R.D. at 536 (finding

predominance satisfied on nearly identical claims and facts) (Steeh, J.).

### 2.     *A Class Action Is a Superior Method for Adjudicating This Action*

The class action device is also the superior means of adjudicating this

controversy because it "achieve[s] economies of time, effort and expense and

promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*,

521 U.S. at 615. Class actions are preferred over small, individual suits for

damages because they provide a mechanism through which individuals who, under

other circumstances, would not have the opportunity to seek redress from the

defendant through litigation, can do so. *Young v. Nationwide Mut. Ins. Co.*, 693

F.3d 532, 545 (6th Cir. 2010); *see also Amchem,* 521 U.S. at 617. Actions alleging

a standard course of wrongful conduct are particularly well-suited for class

certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at

545; *see also Powers*, 501 F.3d at 619 ("Cases alleging a single course of wrongful

conduct are particularly well-suited to class certification."). As this Court held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 536. And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether Defendant violated the VRPA are common to all Settlement Class Members. As such, a class action is a much more efficient use of judicial and party resources than multiple actions. *See In re Cardizem*, 200 F.R.D. at 351. Further, absent a class action, members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed, no other member of the proposed Settlement Class has brought any VRPA claims against Defendant, and thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012).

In addition, many members of the proposed Settlement Class may not even be aware that Defendant is disclosing their protected information to third parties. Where consumers are unlikely to discover (and vindicate) injuries absent

certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545–46.

In the end, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## V.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claims, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. (*See* Scharg Decl. ¶ 10; *see also* Exhibit 2-A.) And as a result of their zealous advocacy in this case, proposed Class Counsel have secured a settlement that provides substantial monetary relief, as well as the prospective relief necessary to protect the Settlement Class Members' privacy going forward. Thus, the Court

should appoint Ari J. Scharg, Eve-Lynn J. Rapp, and Benjamin S. Thomassen of

Edelson PC as Class Counsel.

## VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-

established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*,

§ 11.25, at 38–39 (4th Ed. 2002). The first step is a "preliminary, pre-notification

hearing to determine whether the proposed settlement is within the range of

possible approval." *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010

WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Manual for Complex

Litigation characterizes the preliminary approval stage as an "initial evaluation" of

the fairness of the proposed settlement made by a court on the basis of written

submissions and informal presentations from the settling parties. *Manual for

Complex Litig.* § 21.632 (4th ed. 2004).

While the Sixth Circuit has expressed a strong judicial policy favoring the

voluntary conciliation and settlement of complex class action litigation, *UAW v.

General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), it has not specified a

particular standard for granting preliminary settlement approval. Nevertheless,

courts in this district generally look to two factors in making this determination.

That is, preliminary approval should be given where the proposed settlement (1)

does not disclose grounds to doubt its fairness, and (2) falls within the range of

possible approval. *In re Packaged Ice*, 2010 WL 3070161, at *4; *Sheick v. Auto.*

*Component Carrier, LLC*, No. 09-cv-14429, 2010 WL 3070130, at *11 (E.D.

Mich. Aug. 2, 2010); *see also Ford Motor Co.,* 2006 WL 1984363, at *4 ("The

Court finds that the proposed settlement falls within the range of possible approval,

does not disclose grounds to doubt its fairness, and includes no obvious

deficiencies"). The proposed Settlement in this case—which provides both

monetary payments for the Settlement Class and strong prospective relief—easily

satisfies both factors.

First, there are no grounds upon which to doubt the Settlement's fairness.

The proposed Settlement was reached only after years of hard-fought litigation in

this case as well as in the Coulter-Owens matter. As explained in detail above,

before this case was filed, proposed Class Counsel and Defendant litigated the

Coulter-Owens matter for over two years, which included extensive written and

oral discovery, two rounds of briefing on motions to dismiss, adversarial class

certification, cross motions for summary judgment, and an appeal to the Sixth

Circuit. (Scharg Decl. ¶¶ 2–3.) After Defendant prevailed on summary judgement

in that case, Plaintiff filed this putative class action and extensively litigated this

case as well, which included dispositive Rule 12(b)(1) and 12(b)(6) motion

practice, formal and informal discovery, including substantial third party

discovery, the review of thousands of documents, and eventually, settlement

discussions and numerous rounds of arm's-length negotiations. (Scharg Decl. ¶¶ 4–8.) It was only after these hard-fought negotiations that the Parties were able to agree on the principal terms of a class-wide settlement. (*Id.* ¶ 8.) As such, the Parties—each represented by counsel with significant experience in litigating VRPA class actions—had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and that is borne out in the ultimate recovery, resulting in a payment to each class member that is in line with the payments made in previous VRPA settlements that have all received final approval. (*Id.* ¶ 9.) Thus, there are certainly no grounds from which to doubt the fairness of the Settlement. *See Sheick*, 2010 WL 3070130, at *13 ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy[.]"); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597–98 (E.D. Mich. 2006) (finding that courts presume an absence of fraud or collusion absent evidence to the contrary).

Second, the strength of Plaintiff's case compared to the settlement demonstrates that the proposed Settlement is fair, reasonable, and adequate, and well within the range of possible approval. Here, while Plaintiff and proposed Class Counsel are confident in Plaintiff's claims, they are cognizant of the risks that would accompany further litigation. (Scharg Decl. ¶¶ 12–15.) Indeed,

Defendant has made clear that absent a settlement, they would continue their vigorous defense of this case. (*Id.* ¶ 13.) And of course, without a settlement, there would be the uncertainty and expense of trial, and the risks and delay of inevitable appeals. *See UAW v. Gen. Motors Corp.*, No. 05-cv-73991-DT, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement.").

More specifically, Plaintiff is aware that Defendant would continue to assert a number of defenses on the merits, including that the VRPA neither prohibits the disclosure of the magazine subscription information at issue (because the recipients of the disclosures, like Acxiom for example, are their agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute. (Scharg. Decl. ¶ 13.) Defendant will also continue to challenge the constitutionality of the VRPA, as well as its applicability to magazines in particular and the magazine publishing industry in general. (*Id.*) And, in light of the Supreme Court's recent decision in *Spokeo v. Robins*, the issue of Article III standing will continue to loom over this case, which poses risks to the continued maintenance of this case as a class action. (*Id.* ¶ 14.) Looking beyond trial, Plaintiff is also keenly aware of the fact that Defendant could appeal the merits of any adverse decision, and that in light of the massive aggregate statutory damages in play it would attempt to argue—in both

the trial and appellate courts—for a reduction of damages based on due process concerns.[7] (*Id.* ¶ 15); *see, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Moreover, since 2016, there have been multiple bills introduced by industry groups seeking to weaken the protections and remedies available under the VRPA, which, if successful, could strip the Class of any statutory damage remedy. Indeed, on April 13, 2016, the Michigan legislature passed an amendment to the VRPA that added certain exceptions to the statute's confidentiality requirement and repealed its statutory damages provision prospectively. *See* S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016). Though the amendment only applied to claims accrued after the July 31, 2016 effective date, another bill was recently introduced on May

---

[7]     Though Plaintiff maintains that the sheer size of a class-wide statutory damages award cannot render it unconstitutional—*see* Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,* 63 Rutgers L. Rev. 327 (2010); *cf. Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,* 523 U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of punitive damages awards.") (Thomas, J. concurring) (citing *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—she acknowledges that if she obtained a judgment on the merits and was awarded statutory damages on behalf of herself and the class, the $4 billion damages award would likely be reduced.

8, 2018 that, if successful, would repeal the statutory damages provision retroactively, meaning the VRPA's $5,000 statutory damages would not be an available remedy to the Class in this case. *See* S.B. 984, 99th Leg. Reg. Sess. (Mich. 2018).

Given these concerns, Plaintiff and Class Counsel view the creation of the non-reversionary $7.4 million Settlement Fund—with its estimated $25–50 per claimant payment—as well as the required injunctive relief, to be a significant victory for the class. (Scharg Decl. ¶ 9.) This is especially true considering the "all or nothing" nature of Plaintiff's statutory claims: if she were to lose any aspect of this case, the class would get nothing. *See Leonhardt v. ArvinMeritor, Inc*., 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008) ("The parties recognize, and the Court concurs, that continued litigation would be a high stakes 'zero sum' undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions . . . are irreconcilable."); *see also Olden v. LaFarge Corp*., 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.") (internal quotation omitted).

Further, in terms of monetary relief, the Settlement's projected $25–50 per-claim payment is in line with (and in some instances exceeds) other privacy settlements involving similar statutes that have been approved in this District and throughout the country. *See, e.g., Kinder*, 1:14-cv-11284, dkt. 72 (E.D. Mich. Oct. 5, 2015) (granting final approval to a VRPA settlement that provided claimants with $32 and similar injunctive relief); *Fraley*, 966 F. Supp. 2d at 948 (approved settlement providing claimants with a cash payment of $15 in right to publicity case with potential statutory damages of $750); *Lane*, 696 F.3d at 820-22 (approving a $9.5 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, dkt. 256 (N.D. Cal. March 18, 2013) (approving $9 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (approving $8.5 million payment to *cy pres* as the sole form of monetary relief in ECPA case with potential statutory damages of $10,000). Thus, the proposed Settlement is eminently fair, reasonable, and in line with the results achieved by other statutory privacy class actions that have received final approval from courts in this District and across the country.

For these reasons, Plaintiff and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in

favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. (Scharg Decl. ¶ 16.) The Court should grant preliminary approval.

## VII.   THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, the Settlement

Administrator will send direct notice by email to all Settlement Class Members for whom a valid email address is identified in Defendant's records. (Agreement ¶ 4.1(b); *see* Exhibit 1-B.) The email will contain an electronic link to the online claim form. (*Id.*) Next, the Settlement Administrator will send direct notice by First Class U.S. Mail, along with a postcard claim form with prepaid return postage, to all the Settlement Class Members who did not receive an email. (Agreement ¶ 4.1(c); *see* Exhibit 1-C.) Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Exhibit 1-D), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online. (Agreement ¶ 4.1(d).) Finally, the Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* ¶ 4.1(e).)

In sum, the proposed methods for providing notice to the Class comports with both Rule 23 and Due Process, and thus, should be approved by the Court.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the notice to the members of the

Settlement Class, (iv) appointing Plaintiff Carolyn Perlin as Class Representative,

(v) appointing Ari J. Scharg, Eve-Lynn J. Rapp, and Benjamin S. Thomassen of

Edelson PC as Class Counsel, (vi) scheduling a Final Fairness Hearing in this

matter, and (vii) providing such other and further relief as the Court deems

reasonable and just.

                                      Respectfully submitted,

Dated: June 13, 2018                   **CAROLYN PERLIN**, individually and on behalf of a class of similarly situated individuals

By: /s/ Ari J. Scharg _____
                  One of Plaintiff's attorneys

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596.1111
Fax: (248) 671.0335

*Proposed Class Counsel*

36

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on June 13, 2018, I served

the above and foregoing ***Plaintiff's Unopposed Motion for Preliminary Approval***

***of Class Action Settlement*** on all counsel of record by filing it electronically with

the Clerk of the Court using the CM/ECF filing system.

/s/ Ari J. Scharg

37