# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CAROLYN PERLIN, individually and on behalf of the settlement class, | Case No. 16-cv-10635 |
| Plaintiff, | Hon. George Caram Steeh |
| v. | |
| TIME INC., a Delaware Corporation, | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR AND BRIEF IN SUPPORT OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

**Respectfully submitted by:**

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn J. Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596-1111
Fax: (248) 671-0335

*Class Counsel*

## PLAINTIFF'S MOTION FOR
## <u>ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD</u>

Plaintiff Carolyn Perlin hereby moves the Court to grant her Motion for Attorneys' Fees, Expenses, and Incentive Award. Specifically, Class Counsel respectfully requests that the Court grant $2,960,000 in attorneys' fees and expenses and an incentive award of $5,000 for Plaintiff, Carolyn Perlin. In accordance with Local Rule 7.1(a), Plaintiff has ascertained that counsel for Defendant Time Inc. will not oppose the relief sought by this Motion. (*See* Parties' Class Action Settlement Agreement ¶¶ 8.1, 8.3.[1])

For the reasons discussed in the accompanying brief, the Motion should be granted.

---

[1]  A copy of the Parties' Class Action Settlement Agreement is attached hereto as Exhibit 1.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

**STATEMENT OF ISSUES PRESENTED**

1.     Whether this Court should award Class Counsel attorneys' fees and

expenses in the amount of $2,960,000—40% of the $7,400,000 non-reversionary

common fund created for the benefit of the class—to compensate them for

achieving a substantial benefit for a class of consumers under Michigan's

Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715, *et seq*?

**Plaintiff's Answer: Yes.**


2.     Whether this Court should award Plaintiff Carolyn Perlin an incentive

award of $5,000 in recognition of her zealous efforts on behalf of the class, which

demanded active involvement in this case for over two years?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST IMPORTANT AUTHORITY

**UNITED STATES SUPREME COURT CASES:**

*Boeing Co. v. Van Gemert*,
     444 U.S. 472 (1980)

*Eisen v. Carlisle & Jacquelin*,
     417 U.S. 156 (1974)

**UNITED STATES COURT OF APPEALS CASES:**

*Gascho v. Glob. Fitness Holdings, LLC*,
     No. 14-3761, 2016 WL 2802473 (6th Cir. May 13, 2016)

*Hadix v. Johnson*,
     322 F.3d 895 (6th Cir. 2003)

*In re Pampers Dry Max Litig.*,
     724 F.3d 713 (6th Cir. 2013)

*Isabel v. City of Memphis*,
     404 F.3d 404 (6th Cir. 2005)

*Ramey v. Cincinnati Enquirer, Inc.*,
     508 F.2d 1188 (6th Cir. 1974)

*Rawlings v. Prudential-Bache Props., Inc.*,
     9 F.3d 513 (6th Cir. 1993)

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
     436 F. App'x 496 (6th Cir. 2011)

**UNITED STATES DISTRICT COURT CASES:**

*Coulter-Owens v. Rodale, Inc.*,
     No. 14-cv-12688 (E.D. Mich. Sep. 29, 2016)

*Halaburda v. Bauer Publ'g Co., LP*,
     No. 12-cv-12831 (E.D. Mich. 2013)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008)

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

*Kinder v. Meredith Corp.*,
    No. 13-cv-11284 (E.D. Mich. May 18, 2016)

*Kogan v. AIMCO Fox, L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000)

*Shane Grp., Inc. v. BCBS of Mich.*,
    2015 WL 1498888 (E.D. Mich. Mar. 31, 2015)

**MISCELLANEOUS:**

Fed. R. Civ. P. 23

# TABLE OF CONTENTS

I.      **INTRODUCTION** .................................................................. 1

II.     **FACTUAL BACKGROUND AND UNDERLYING LAW** ...................... 3

      **A.**    **The *Coulter-Owens* Matter** ................................................. 3

      **B.**    **Plaintiff's Allegations Under the VRPA** ............................ 4

      **C.**    **The Litigation and Work Performed to Benefit the Class** ............ 5

      **D.**    **The Terms of the Settlement Agreement** ......................... 7

III.    **THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED** ........................................................... 8

      **A.**    **The percentage method should be used to calculate fees** ............... 9

      **B.**    **The reasonableness of the requested fees is supported by this Circuit's six-factor test** ................................................... 11

              *1.*   *Class Counsel have secured a valuable benefit for the class* ................................................ 12

              *2.*   *Society has a stake in incentivizing the pursuit of complex consumer privacy litigation* ................... 17

              *3.*   *Class Counsel took the case on a contingent basis, confronting a significant risk of nonpayment* ...................... 19

              *4.*   *The complexity of the litigation supports the requested fees* ......................................................... 21

              *5.*   *The Parties are both represented by skilled counsel* .......... 22

              *6.*   *The value of the legal services performed on an hourly basis is reasonable* ......................................................... 24

      **C.**    **The Requested Incentive Award Reflects Ms. Perlin's Active Involvement in This Action and Should Be Approved** ................ 27

**IV.    CONCLUSION** ........................................................................... 30

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................... 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................... 18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .................................................................... 24

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) .................................................................... 10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ........................................................ 6, 22, 23

## United States Appellate Court Cases

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ...................................................... 26

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996) ...................................................... 12

*Brian A. v. Hattaway*,
  83 F. App'x 692 (6th Cir. 2003) .................................................. 24

*Coulter-Owens v. Time Inc.*,
  695 F. App'x 117 (6th Cir. 2017). ............................................... 23

*Deacon v. Pandora Media, Inc.*,
  655 F. App'x 581 (9th Cir. 2016) ............................................... 23

*Gascho v. Global Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ............................................. *passim*

*Hadix v. Johnson*,
 322 F.3d 895 (6th Cir. 2003) .................................................................. 27, 28

*In re Pampers Dry Max Litig.*,
 724 F.3d 713 (6th Cir. 2013) ........................................................................ 28

*Isabel v. City of Memphis*,
 404 F.3d 404 (6th Cir. 2005) ........................................................................ 24

*Lane v. Facebook, Inc.*,
 696 F.3d 811 (9th Cir. 2012) ........................................................................ 14

*Mathias v. Accor Econ. Lodging, Inc.*,
 347 F.3d 672 (7th Cir. 2003) ........................................................................ 12

*Parker v. Time Warner Entm't Co.*,
 331 F.3d 13 (2d Cir. 2003) ........................................................................... 15

*Ramey v. Cincinnati Enquirer, Inc.*,
 508 F.2d 1188 (6th Cir. 1974) ........................................................... 11, 12, 26

*Rawlings v. Prudential-Bache Props., Inc.*,
 9 F.3d 513 (6th Cir. 1993) .............................................................................. 9

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
 825 F.3d 299 (6th Cir. 2016) ........................................................................ 29

*Soehnlen v. Fleet Owners Ins. Fund*,
 844 F.3d 576 (6th Cir. 2016) ........................................................................ 22

*Van Horn v. Nationwide Property & Cas. Ins. Co.*,
 436 F. App'x 496 (6th Cir. 2011) ............................................................. 24, 26

**United States District Court Cases**

*Appoloni v. United States*,
 218 F.R.D. 556 (W.D. Mich. 2003) ............................................................... 18

*Connectivity Sys. Inc. v. Nat'l City Bank*,
 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ................................................. 26

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ................................................................27

*Coulter-Owens v. Rodale, Inc.*,
    1:14-cv-12688-RHC-RSW (E.D. Mich.)......................................... 10, 14, 18

*Coulter-Owens v. Time Inc.*,
    No. 2:12-cv-14390-GCS-MKM (E.D. Mich.) ................................ 3

*Coulter-Owens v. Time, Inc.*,
    308 F.R.D. 524 (E.D. Mich. 2015) ............................................... 25

*Dick v. Sprint Commc'ns Co. L.P.*,
    297 F.R.D. 283 (W.D. Ky. 2014) ......................................... 12, 13

*Doe 1-2 v. Deja Vu Servs., Inc.*,
    2017 WL 2629101 (E.D. Mich. June 19, 2017) ......................... 16

*Fournier v. PFS Invs., Inc.*,
    997 F. Supp. 828 (E.D. Mich. 1998) ....................................... 9, 11

*Gross v. Symantec Corp.*,
    No. 12-cv-00154 (N.D. Cal. March 21, 2014) ........................... 25

*Halaburda v. Bauer Publ'g Co, LP*,
    2:12-cv-12831 (E.D. Mich.) .............................................. *passim*

*Harris v. comScore*,
    No. 11-cv-05807 (N.D. Ill. 2014) ............................................... 23

*Hillson v. Kelly Servs. Inc.*,
    2017 WL 3446596 (E.D. Mich. Aug. 11, 2017)......................... 10

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ......................................*passim*

*In re CMS Energy ERISA Litig.*,
    2006 WL 2109499 (E.D. Mich. June 27, 2006) ......................... 28

*In re Delphi Corp. Securities, Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ...................................................... 8, 13, 22

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990)................................................................. 16

*In re Facebook Privacy Litig.*,
    No. 10-cv-02389 (N.D. Cal. 2010) .............................................................. 23

*In re Google Buzz Privacy Litig.*,
    2011 WL 7460099 (N.D. Cal. June 2, 2011)................................................ 14

*In re Netflix Privacy Litig.*,
    No. 11-cv-00379 (N.D. Cal. Aug. 12, 2011) ............................................... 23

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................ 14

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ................................. 17, 19, 22

*In re S. Ohio Corr. Facility*,
    173 F.R.D. 205 (S.D. Ohio 1997)................................................................. 12

*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155387 (E.D. Tenn. May 17, 2013) .......................................... 16

*Kelly v. Corrigan*,
    890 F. Supp. 2d 778 (E.D. Mich. 2012) ................................................ 10, 11

*Kinder v. Meredith Corp.*,
    1:14-cv-11284 (E.D. Mich.) ........................................................... 10, 13, 28

*Kogan v. AIMCO Fox Chase L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000) ........................................................ 19, 24

*Kulesa v. PC Cleaner*,
    No. 12-cv-0725 (C.D. Cal. Aug. 26, 2014) ................................................. 25

*Lasalle Town Houses Coop Assoc. v. City of Detroit*,
    2016 WL 1223354 (E.D. Mich. Mar. 29, 2016) ........................................... 27

*Merkner v. AK Steel Corp.*,
    2011 WL 13202629 (S.D. Ohio Jan. 10, 2011) ........................................... 26

*Moeller v. Am. Media, Inc.*,
    No. 5:16-cv-11367-JEL-EAS (E.D. Mich.) ........................................... 10, 27

*Manners v. Am. Gen. Life Ins. Co.*,
    1999 WL 33581944 (M.D. Tenn. Aug. 11,1999) ........................................... 26

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ........................................... 16

*N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ........................................... 10

*Shane Grp., Inc. v. BCBS of Mich.*,
    2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ........................................... 12, 28

*Stanley v. U.S. Steel Co.*,
    2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ........................................... 8, 19

*Wise v. Popoff*,
    835 F. Supp. 977 (E.D. Mich. 1993) ........................................... 10

**Statutory Provisions and Other Authorities**

Fed. R. Civ. P. 12 ........................................... 5, 20

Fed. R. Civ. P. 23 ........................................... 3, 8

M.C.L. § 445.1711-15 ........................................... 1

S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016) ........................................... 16

S.B. 984, 99th Leg. Reg. Sess. (Mich. 2018) ........................................... 16

## I.    INTRODUCTION

The Class Action Settlement Agreement between Plaintiff Carolyn Perlin and Defendant Time, Inc. is the result of Class Counsel's prosecution of Time over the past six years for alleged violations of the Michigan Preservation of Personal Privacy Act—which is popularly referred to as the Video Rental Privacy Act, M.C.L. § 445.1711-15 ("VRPA").[2] Preliminary approval having been granted, Plaintiff now respectfully requests that the Court approve her request for attorneys' fees, expenses, and incentive award.

Class Counsel's efforts on behalf of the Settlement Class cannot be understated. The settlement in this case builds upon Class Counsel's efforts in a related case, captioned *Coulter-Owens v. Time, Inc.*, which alleged VRPA claims against Time on behalf of a class of consumers who purchased magazines through third-party resellers. Although this Court and the Sixth Circuit concluded that the class in *Coulter-Owens* could not invoke the VRPA against Time (given that they didn't purchase their magazines directly from the company), Class Counsel put the knowledge gained in that case to use here in order to secure valuable relief for a class of consumers who purchased their subscriptions directly from Time. Class Counsel and Plaintiff have engaged in almost three years of hard-fought litigation,

---

[2]    Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Settlement Agreement.

which included briefing on various dispositive issues, extensive formal discovery, including substantial third-party discovery, the exchange and analysis of thousands of documents, and numerous rounds of settlement negotiations. In the end, the road to settlement was long and hard fought and Class Counsel should be compensated for their efforts on behalf of the Class over the course of the last six years (inclusive of the *Coulter-Owens* matter).

The instant Settlement—which was preliminarily approved on July 5, 2018—represents an exceptional result for the class. Defendant has agreed to create a $7.4 million non-reversionary common fund from which Settlement Class Members who make valid claims will receive a *pro rata* cash payment. And, just as important, the Settlement also delivers the prospective relief that goes to the heart of this matter, by requiring Time to stop disclosing its Michigan customers' personal reading information to third party companies for a period of two years.

In light of this exceptional result, Plaintiff respectfully requests pursuant to Federal Rule of Civil Procedure 23(h) that the Court approve attorneys' fees and expenses of 40% of the Settlement Fund, or $2,960,000, as well as an incentive award of $5,000 for Plaintiff for her service as Class Representative. As set forth below, the requested fee and incentive award fairly compensate Plaintiff and Class Counsel for the time and effort expended in the case, and reflect the results achieved for the Settlement Class and the substantial risks that they faced

throughout the pendency of the litigation. The Court should therefore approve the requested attorneys' fees, expenses, and incentive award.

## II.     FACTUAL BACKGROUND AND UNDERLYING LAW

A brief summary of Plaintiff's allegations, the litigation performed by Class Counsel for the Settlement Class's benefit, and the terms of the settlement provide necessary context to the reasonableness of the requested fees and incentive award.

### A.     The *Coulter-Owens* Matter.

As the Court well knows by now, before this matter was initiated, Class Counsel litigated a related class action against Defendant Time in this Court captioned *Coulter-Owens v. Time Inc.*, Case No. 2:12-cv-14390-GCS-MKM (E.D. Mich.), which similarly alleged that Time violated the VRPA, but was brought by a different class representative and on behalf of a different class of magazine subscribers. As the Court also knows, the *Coulter-Owens* matter was extensively litigated for over four years, through class certification, summary judgment, and appeal. Ultimately, the Court granted, and the Sixth Circuit affirmed, Time's motion for summary judgment, holding that class members who purchased their magazine subscriptions from third-party agents did not purchase from Time "at retail," as required under the VRPA.

### B.     Plaintiff's Allegations Under the VRPA.

Based on the Court's summary judgment ruling, Plaintiff Carolyn Perlin—

represented by Class Counsel—brought this follow-on action against Time on behalf of Michigan consumers who purchased magazine subscriptions directly from Time. (*See* Plaintiff's Class Action Complaint, dkt. 1 ["Compl."].) In her complaint, Plaintiff alleges that in addition to its consumer-facing magazine subscription business, Defendant operates a division dedicated to selling information related to its customers' magazine subscription histories and personal reading habits. (*Id.* ¶¶ 2, 22, 24–26, 51–53, 60.) To increase the value of such information, Plaintiff alleges that Defendant first trades its customers' protected reading information with certain third parties—including data mining companies like Acxiom Corporation—in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. (*Id.* ¶¶ 2, 19, 22, 26, 34–35.) Defendant thereafter "enhances" its own customer profiles with this additional data (e.g., their income levels, religion, ages, race, political affiliations, travel habits, medical conditions, etc.), and then sells the enhanced information to other unrelated third parties, including database cooperatives like Wiland Direct, for a profit. (*Id.* ¶¶ 2, 19, 26, 37, 60.)

Plaintiff further alleges that Defendant's offline subscribers (i.e., those who subscribe via postcard or over the phone) never provide consent to disclose information to third parties related to their magazine subscriptions. (*Id.* ¶¶ 3, 27, 33–38, 56.) This is because, as Plaintiff alleges, those subscribers are never

4

presented with or required to consent to any terms informing them of Defendant's disclosure practices. (*Id.*) Plaintiff also alleges that even after subscribing, Time fails to notify customers that it will disclose any information to third parties, let alone their protected reading information. (*Id.* ¶¶ 3, 27, 32–35, 56.) Nonetheless, Plaintiff alleges that Time is in the business of disclosing all of its subscribers' protected reading information to various third parties, without first obtaining its offline subscribers' consent or giving them prior notice. (*Id.* ¶¶ 2, 3, 27.)

### C.    This Litigation.

Plaintiff filed this class action lawsuit on February 19, 2016, in the United States District Court for the Eastern District of Michigan. (Dkt. 1.) Shortly thereafter, Defendant moved to dismiss Plaintiff's claims under Rules 12(b)(1) and (b)(6), arguing that Plaintiff lacked Article III standing—because, according to Time, a new amendment to the VRPA requiring actual damages applied retroactively—and failed to state a claim for unjust enrichment upon which relief could be granted. (Dkt. 10.) Time then submitted supplemental briefing to the Court highlighting the Supreme Court's then-recent decision on Article III standing in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). (Dkt. 13.) Plaintiff opposed the motion on the grounds that the amended VRPA only applies prospectively to claims that, unlike Perlin's, accrued after its effective date, and that Defendant misunderstood *Spokeo*, which actually confirmed that Perlin has

5

Article III standing because Time's undisputed disclosure of her personal reading choices was an invasion of her legally protected privacy interest. (Dkt. 14.) The Court ultimately denied Defendant's motion to dismiss in its entirety. (Dkt. 27.)

Defendant thereafter answered Plaintiff's Complaint on March 1, 2017 by denying the allegations and raising seventeen affirmative defenses, including that Time does not sell magazines "at retail" and that the statutory damages sought violate Time's due process rights. (Dkt. 29.) The Parties then exchanged initial disclosures and issued written discovery on each other, and Plaintiff, through counsel, served subpoenas on eight third parties including Acxiom Corporation and Wiland Direct, two entities to whom Plaintiff believed, based on Class Counsel's previous work, Time disclosed subscriber information. (The Declaration of Ari J. Scharg in Support of Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award ["Scharg Decl."] is attached hereto as Exhibit 2, ¶ 4.)

Over the next five months, the Parties engaged in substantial class- and merits-related discovery, which included the production and review of thousands of documents, numerous meet-and-confer conferences, and the scheduling of depositions for both Plaintiff Perlin and a corporate representative from Time. (*Id.* ¶ 5.) Before taking the scheduled depositions, however, the Parties engaged in settlement discussions in an effort to resolve the case without the expense of further litigation, which would necessarily include adversarial class certification

and summary judgment briefing as in the *Coulter-Owens* matter. (*Id.* ¶ 6.) After

multiple rounds of arm's-length negotiations between counsel experienced in

valuing and negotiating VRPA class settlements, the Parties ultimately reached an

agreement on the principal terms of the Settlement. (*Id.* ¶ 7.) The Parties then

diligently prepared and executed the written Settlement Agreement, which the

Court preliminarily approved on July 5, 2018. (Dkt. 51.)

> **D.     The Terms of the Settlement Agreement.**

Class Counsel's efforts vigorously prosecuting the case against Time over

the past five-plus years for its alleged disclosure of subscriber information has

resulted in an excellent deal for the Settlement Class, delivering both immediate

cash relief and significant prospective relief to approximately 600,378 magazine

subscribers across the state of Michigan.[3] (Scharg Decl. ¶ 9.) The Settlement

creates a non-reversionary $7,400,000 Settlement Fund (Agreement ¶ 1.32), from

which Settlement Class Members will receive a *pro rata* cash payment. (*Id.*

¶ 2.1(b).) The Settlement also achieves one of the primary purposes of the lawsuit:

prohibiting Defendant from disclosing its Michigan customers' subscription

information to any third-party companies, without first obtaining their prior

---

[3]     After submitting papers for preliminary approval—which represented that
there were approximately 719,000 class members—the class list was provided to
Class Counsel, de-duped, and notice was ultimately sent to 600,378 potential class
members. (Scharg Decl. ¶ 9.)

express written consent. (*Id.* ¶ 2.2(a).)

On the basis of this relief, Plaintiff moves for an award of attorney's fees of $2,960,000 and an incentive award of $5,000. As explained in detail below, the requested attorneys' fees and incentive award are reasonable.

## III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED.

The requested fee award of $2,960,000, representing 40% of the common fund, is reasonable and merits approval. Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."[4] Fed. R. Civ. P. 23(h); *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009). Here, the preliminarily approved Class Action Settlement Agreement between the Parties provides that Class Counsel may petition the Court for an award up to 40% of the Settlement Fund. (Agreement ¶ 8.1).

In common-fund cases such as this one, courts in the Sixth Circuit apply one of two fee calculation methods—percentage-of-the-fund or lodestar—and under

---

[4]     The requested fee award also encompasses unreimbursed litigation expenses. (Agreement ¶ 8.1.) Reasonable litigation-related expenses are customarily awarded in common-fund cases and include costs such as document preparation and travel. *In re Delphi Corp. Securities, Derivative & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) (citations omitted). Thus, included in the requested fee award, Class Counsel respectfully seeks reimbursement of $3,335.49 for out-of-pocket expenses in these standard categories. (*See* Scharg Decl. ¶ 18.)

either method, the fees must "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). While the Court has discretion in deciding whether to apply the percentage-of-the-fund calculation or the lodestar method, *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016), whichever method it ultimately selects must be justified by "a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at that fee," keeping the unique circumstances of each case in mind. *Id*. (quoting *Rawlings*, 9 F.3d at 516).

### A.     The percentage method should be used to calculate fees.

Notwithstanding the Court's discretion in selecting a method for calculating fees, courts generally prefer to use the percentage-of-the-fund method in common fund cases such as this. *See, e.g., In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) ("This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend."); *Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 831-32 (E.D. Mich. 1998) ("[M]any courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees."); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993) (same); *Hillson v. Kelly Servs. Inc.*, 2017 WL 3446596, at *2 (E.D. Mich. Aug. 11, 2017) (stating that "[t]he percentage-of-recovery approach is 'easy to calculate' and

'establishes reasonable expectations on the part of plaintiffs' attorneys'").

This is so because while "[t]he lodestar method better accounts for the amount of work done . . . the percentage of the fund method more accurately reflects the results achieved." *N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016). Thus, the percentage-of-the-fund approach better incentivizes attorneys to maximize recovery for absent class members. Importantly, the percentage-of-the-fund method has been used to determine a reasonable fee award in the four other major VRPA class action settlements in this District. *Halaburda v. Bauer Publ'g Co., LP*, No. 12-cv-12831, dkt. 68 (E.D. Mich. 2015); *Kinder v. Meredith Corp.*, No. 13-cv-11284, dkt. 81 (E.D. Mich. 2016); *Coulter-Owens v. Rodale, Inc.*, No. 14-cv-12688, dkt. 54 (E.D. Mich. Sep. 29, 2016); *Moeller v. Am. Media, Inc.*, No. 5:16-cv-11367, dkt. 42 (E.D. Mich. Jun. 8, 2017).

In contrast, the lodestar approach hasn't once been used to evaluate fees in these cases. That approach is most often applied in federal fee-shifting cases, particularly civil rights actions *See, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *Kelly v. Corrigan*, 890 F. Supp. 2d 778, 787 (E.D. Mich. 2012).

Beyond better reflecting the results achieved, the percentage method is particularly well-suited for the circumstances of this case. At bottom, the Settlement Fund secured here is the result of Class Counsel's work in the *Coulter-*

*Owens* matter *and* this matter, and because their hourly work in the Coulter-Owens

matter cannot be considered in any lodestar analysis, using the percentage-of-the-

fund method will most accurately assess Class Counsel's work on behalf of the

Settlement Class. *Fournier v. PFS Investments, Inc.*, 997 F. Supp. 828, 831 (E.D.

Mich. 1998) (explaining that the lodestar method should be avoided in situations

where a common fund exists and the lodestar method will not "adequately

acknowledge . . . the result achieved").

For these reasons, the Court should not hesitate to use the percentage-of-the-

fund method in this case.

**B.     The reasonableness of the requested fees is supported by this Circuit's six-factor test.**

The Sixth Circuit has articulated six factors that should be considered when

determining the reasonableness of a requested percentage to award as attorneys'

fees: (1) the value of the benefit to the class; (2) society's stake in rewarding

attorneys who produce the settlement's benefits, to maintain an incentive to others;

(3) whether the work was performed on a contingent fee basis; (4) the complexity

of the litigation; (5) the skill and standing of counsel on both sides; and (6) the

value of the legal services performed on an hourly basis. *Ramey v. Cincinnati

Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Bowling v. Pfizer, Inc.*, 102

F.3d 777, 780 (6th Cir. 1996); *In re Cardizem*, 218 F.R.D. at 533.

A "reasonable" fee in common-fund cases typically ranges "from 20 to 50 percent." *Shane Grp., Inc. v. BCBS of Mich.*, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015); *In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds,* 24 F. App'x 520 (6th Cir. 2001) ("Typically, the percentage awarded ranges from 20 to 50 percent of the common fund created."); *see also Simpson v. Citizens Bank*, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) ("[D]istrict courts in the Sixth Circuit begin with a 'benchmark percentage' ranging between 20-50%") (citing *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986)); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003) (Posner, J.) (referring to the "usual 33-40 percent contingent fee" charged by plaintiff's lawyers). The amount awarded is calculated as a percentage "from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Gascho,* 822 F.3d at 282 (calculating the percentage, as "[a]ttorney's fees are the numerator" and "the dollar amount of the Total Benefit to the class (including the benefit to class members, attorney's fees, and [potentially] the costs of administration)" is the denominator).

In this case, each of the relevant factors supports the requested fee award, and as such, the Court should find a fee award of 40% reasonable.

### 1.  *Class Counsel have secured a valuable benefit for the class.*

The value of the benefit to the class is the most important factor in assessing

the reasonableness of fees. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299

(W.D. Ky. 2014) (citation omitted); *In re Delphi*, 248 F.R.D. at 503 (describing the

result achieved for the class as "[t]he primary factor"). Assessing the overall value

includes consideration of both tangible and intangible benefits. *See Gascho*, 822

F.3d at 282 (requiring "appropriate consideration" of "cash and noncash settlement

components" in assessing the total benefits to the class). The risk of continued

litigation can also be considered in relation to the value of the benefit to the class

under this factor. *Dick*, 297 F.R.D. at 299.

The instant Settlement is a significant result for the Class, by offering

immediate cash payments to Class Members with no monies reverting to

Defendant. (Agreement ¶¶ 1.32, 2.1(a)-(d).) Specifically, the Settlement creates a

$7.4 million Settlement Fund for the benefit of 600,378 class members who, based

on anticipated claims rates, should expect to recover approximately $50 per

person.[5] (Scharg Decl. ¶ 9.) This cash payment falls in line with—and in some

cases may ultimately exceed—the payments class members have received in

previous VRPA settlements in this District. *See, e.g., Kinder*, No. 13-cv-11284 dkt.

---

[5]     This estimation is based upon a participation rate of 10–20%, which is
typical in VRPA class action settlements and is on the high end of consumer class
action claims rates in general. *See Gascho*, 822 F.3d at 290 (crediting expert
testimony "that response rates in class actions generally range from 1 to 12
percent, with a median response rate of 5 to 8%."). As of August 27, 2018, an
astounding 60,484 Settlement Class Members, or 10.07% of the Settlement Class,
have already submitted timely Claim Forms for payment. (Scharg Decl. ¶ 10.)

81(securing a $7.5 million fund for a class of approximately 980,000 subscribers with claiming class members receiving about $32 on account of their claims); *Rodale*, No. 14-cv-12688 dkt. 54 (securing a $4.5 million fund for a class of approximately 580,000 subscribers with claimants receiving an estimated $44 *pro rata* payment); *Halaburda*, No. 12-cv-12831, dkt. 68 (securing a $775,000 fund for a class of 40,000 subscribers with claiming class members receiving an estimated $74); *Moeller*, No. 5:16-cv-11367, dkt. 42 (securing a $7.6 million fund for a class of 415,000 subscribers with claiming class members receiving an estimated $100).

And when compared to the typical privacy class action settlement, the anticipated $50 *pro rata* payments are quite remarkable, where more often than not these cases have featured enormous classes and money only going to *cy pres* and not individual class members. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) (affirming $9.5 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in class of millions), *cert. denied* 134 U.S. 8 (Nov. 4, 2013); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving $8.5 settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in a class of millions); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement providing *cy pres* payment as sole

monetary relief in case where statutory damages of $2,500 per claim were available to class of millions).

And as far as VRPA class actions, specifically, the requested 40% is consistent with percentage awards in previous cases. *See, e.g., Kinder*, No. 13-cv-11284, dkt. 81 (awarding 35% of $7.5 million common fund); *Moeller*, No. 5:16-cv-11367, dkt. 42 (awarding 35% of $7.6 million common fund).[6]

Moreover, in light of the risks associated with continued litigation, the Settlement is an outstanding result. As it did in the *Coulter-Owens* matter, Defendant would assert a number of defenses on the merits if the litigation were to continue, including that the VRPA neither prohibits the disclosure of the magazine subscription information at issue (because the recipients of the disclosures, like Acxiom for example, are its agents), nor applies to Defendant at all because it is not engaged in the business of selling magazines "at retail." (Scharg. Decl. ¶ 14.) Looking beyond summary judgment and trial, Plaintiff is also keenly aware of the fact that Defendant would appeal the merits of any adverse decision, and that in light of the massive aggregate statutory damages in play it would attempt to

---

[6]   Though admittedly higher than the 35% awarded in the two most recent VRPA cases that have settled in this District—*Kinder* and *Moeller*—Class Counsel respectfully submits that the requested percentage of 40% is nonetheless reasonable in light of the risks they faced over the course of the 6-year long litigation effort, not to mention the exceptional results achieved for the Settlement Class members.

argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns. (*Id.*); *see, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Furthermore, recent legislative efforts seeking to weaken the protections and remedies available under the VRPA pose a significant risk that Plaintiff and the Class would recover nothing even if they proved Defendant's liability. Indeed, on April 13, 2016—just two months after Plaintiff filed suit—the Michigan legislature passed an amendment to the VRPA that added certain exceptions to the statute's confidentiality requirement and repealed its statutory damages provision prospectively. *See* S.B. 490, 98th Leg. Reg. Sess. (Mich. 2016). Though the amendment only applied to claims accrued after the July 31, 2016 effective date, another bill was recently introduced on May 8, 2018, that, if successful, would repeal the statutory damages provision retroactively, meaning the VRPA's $5,000 statutory damages would not be an available remedy to the Class in this case. *See* S.B. 984, 99th Leg. Reg. Sess. (Mich. 2018). *See, e.g.*, *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 836 (E.D. Mich. 2008) ("[A]bsent settlement, all class members would be subject to the uncertainty, risk, hardship and delay attendant to continued litigation which ultimately might leave them with absolutely nothing.").

And, although Class Counsel do not assign a monetary value to the prospective relief the Settlement affords, there is no doubt that this relief is valuable to the class as well—indeed it was one of the goals of the lawsuit. *See, e.g., Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *11 (E.D. Mich. June 19, 2017) (considering changes to defendants' business practices in analyzing the benefit to the class); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (considering structural changes to industry practices in assessing value of benefit); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (considering non-monetary benefits requiring changes in defendant's operating procedures in assessing value of benefit). Here, the Settlement's prospective relief provides additional value to the class by ensuring that, for a period of two years, Defendant will not disclose its Michigan customers' subscriber information to third parties without prior express written consent. (Agreement ¶ 2.2(a).)

Weighed against the risks of continued litigation—including Time's numerous defenses on the merits, the legislative efforts that threaten the VRPA's available statutory damages, and potentially other obstacles that could strip the class of any recovery—the value of the immediate cash and prospective relief that the Settlement affords supports the reasonableness of the requested attorneys' fees. The first factor is well satisfied.

17

**2.** ***Society has a stake in incentivizing the pursuit of complex consumer privacy litigation.***

Society has a strong stake in rewarding attorneys who produce the type of benefits achieved by the settlement here. *See In re Cardizem*, 218 F.R.D. at 533; *see also Gascho*, 822 F.3d at 287 ("Consumer class actions have value to society more broadly, both as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources."). It is therefore in society's interest to encourage litigation that protects important consumer privacy rights that would not otherwise be safeguarded. *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996). ("Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized."); *In re Cardizem,* 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society."). Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974); *Appoloni v. United States*, 218 F.R.D. 556, 563 (W.D. Mich. 2003), *amended*, 219 F.R.D. 116.

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect the privacy of Michiganders'

personal reading choices. *See Rodale*, No. 14-cv-12688, dkt. 54 (finding that

"[s]ociety has an interest in incentivizing the plaintiffs' bar to investigate and

litigate [VRPA] cases through the award of contingent fees"). In fact, class action

litigation in this area is the most realistic means of safeguarding the privacy of

readers under the VRPA, given the complexity and cost of this and similar

litigation compared with the potential individual recovery. (Compl. ¶¶ 2, 3, 27.)

Thus, the realistic alternative to a class action in this case would have been no

enforcement at all, permitting Defendant's allegedly unlawful conduct to continue

unabated. This factor thus supports the requested award.

### 3. *Class Counsel took the case on a contingent basis, confronting a significant risk of nonpayment.*

The fact that Class Counsel litigated this case on a contingency fee basis

lends additional support to the reasonableness of the requested fee award. *See In re*

*Cardizem,* 218 F.R.D. at 533; *Stanley*, 2009 WL 4646647, at *3 ("Numerous cases

recognize that the contingent fee risk is an important factor in determining the fee

award."). When attorneys invest significant time and resources in pursuing the

litigation, in spite of the risk they will not be compensated, courts generally find

this factor weighs in favor of granting the requested fees. *In re Rio*, 1996 WL

780512, at *18; *Kogan v. AIMCO Fox Chase L.P.*, 193 F.R.D. 496, 504 (E.D.

Mich. 2000). The contingent nature of the case is amplified where class counsel

face a formidable defendant. *See In re Cardizem,* 218 F.R.D. at 533.

Here, Class Counsel invested significant time, effort, and resources to prosecuting Time without any compensation, both in this matter and the *Coulter-Owens* matter, which laid the groundwork for success here. (Scharg Decl. ¶ 11.) As explained in detail above, before this case was filed, Class Counsel vigorously litigated the *Coulter-Owens* matter against Time, including extensive written and oral discovery with respect to its alleged data disclosure policies and practices, two rounds of briefing on motions to dismiss, adversarial class certification, cross motions for summary judgment, and an appeal to the Sixth Circuit. (*Id.* ¶ 12.)

Despite this Court's adverse ruling on summary judgment in *Coulter-Owens*, and still cognizant of the risk of nonpayment, Class Counsel took on Plaintiff's case, also on a purely contingent basis, and embarked on yet another fact-intensive investigation of Defendant's practices and Plaintiff's claims, engaged in dispositive Rule 12(b)(1) and 12(b)(6) motion practice, exchanged extensive formal and informal discovery, including substantial third party discovery and the review of thousands of documents, and eventually, engaged in meaningful settlement discussions and numerous rounds of arm's-length negotiations. (*Id.* ¶ 13.) At all times Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case. (*Id.* ¶ 14.) And given the defenses mounted by Time, as well as the fairly limited history of VRPA litigation, success on the legal issues presented was far from certain. (*Id.*)

In addition, Class Counsel faced highly qualified defense counsel, who themselves have represented leading magazine publishers in related VRPA litigation, and who have been successful in defeating other VRPA cases. Thus the expertise and success of defense counsel in other VRPA cases only further underscores the risks Class Counsel faced in pursuing this litigation. (*Id.* ¶ 16.)

Given the contingent nature of the litigation and the significant risk of nonpayment, the third factor also supports the reasonableness of the requested fee award.

### 4.     *The complexity of the litigation supports the requested fees.*

The complexity of the litigation reinforces the reasonableness of a requested fee award. *In re Cardizem*, 218 F.R.D. at 533. This case involved multiple layers of legal and factual complexity. It required an extensive preliminary investigation into Time's business practices, its methods of data collection and aggregation, and the nature of its relationships with various third-party companies, including data miner Acxiom Corporation and database cooperative Wiland Direct. The case also entailed an extensive review of thousands of documents—both from Time and numerous third parties—during the discovery phase.

Although much of the way forward was smoothed by this Court's rulings in the *Coulter-Owens* matter, several key factual and legal questions remained unanswered, including whether Time's alleged data recipients—Axciom

Corporation and Wiland Direct—were its agents and whether that precluded liability under the VRPA, whether, in light of this Court's ruling in *Coulter-Owens*, the proposed plaintiff class here purchased their magazines from Time "at retail" such that they could pursue VRPA claims against Time, and whether the Michigan legislature's decision to amend the VRPA applied retroactively. What's more, although the parties litigated the issue of Article III standing in the *Coulter-Owens* matter, that issue was complicated in this case by the Supreme Court's intervening decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and the Sixth Circuit's decision interpreting *Spokeo* in *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576 (6th Cir. 2016). Each of these issues required Class Counsel to form novel legal arguments based on new authority that did not exist at the time of filing. (*See* dkt. 14.) While Plaintiff prevailed on many of these issues at the motion to dismiss stage, Time has made clear that it would continue to assert other complex and novel legal issues, including the constitutionality of the VRPA. (Dkt. 29.)

In the end, because this case involved complex factual and legal questions under the VRPA, the complexity of the litigation further supports the reasonableness of the requested fees.

### 5. *The Parties are both represented by skilled counsel.*

The skill and standing of counsel on both sides, including their experience and professionalism, also validates the reasonableness of a requested fee award. *In*

*re Rio*, 1996 WL 780512, at *18. In cases where counsel for both parties have

significant experience, courts have found that "the ability of [counsel] to negotiate

a favorable settlement in the face of formidable legal opposition further evidences

the reasonableness of the fee award requested." *In re Delphi*, 248 F.R.D. at 504.

Class Counsel are well-respected members of the legal community with

significant experience litigating consumer class actions of similar size, scope, and

complexity. (Scharg Decl. ¶ 15.) (*See also* Edelson PC Firm Resume, attached as

Exhibit 2-A.) In addition to being at the forefront of VRPA litigation, *see*, *e.g.*,

*Halaburda*, No. 12-cv-12831, dkt. 68, Edelson PC is widely known for its work in

the area of consumer privacy litigation. *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct.

1540 (2016); *In re Facebook Privacy Litig.*, No. 10-cv-02389, dkt. 69 at 5 (N.D.

Cal. 2010) (recognizing Edelson PC as "pioneers in the electronic privacy class

action field"); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, dkt. 59 (N.D.

Cal. Aug. 12, 2011) (noting Edelson PC's "significant and particularly specialized

expertise in electronic privacy litigation and class actions"); *see also Harris v.

comScore*, No. 11-cv-05807, dkt. 369 (N.D. Ill. 2014) (granting final approval to

one of the largest consumer class actions ever brought under federal electronic

privacy laws, in which Edelson PC served as sole lead counsel).

As mentioned above, Class Counsel faced formidable defense counsel in this

action. (Scharg Decl. ¶ 16.) Time was represented by two notable defense firms—

Honigman Miller Schwartz and Cohn LLP and ZwillGen PLLC. (*Id.*) ZwillGen has a strong track record defending class actions under the VRPA, having secured appellate victories in *Deacon v. Pandora Media, Inc.*, 655 F. App'x 581 (9th Cir. 2016), and *Coulter-Owens v. Time Inc.*, 695 F. App'x 117 (6th Cir. 2017). Opposing counsel has at all times vigorously defended their client throughout the litigation, including in the *Coulter-Owens* matter, and has made clear that, but for the Settlement, they would continue to dispute Defendant's liability, assert multiple defenses, and even challenge the constitutionality of the VRPA itself through appeal. (Scharg Decl. ¶ 16.)

Given the skill and standing of counsel on both sides, the reasonableness of the requested fee award is apparent.

### 6. *The value of the legal services performed on an hourly basis is reasonable.*

The sixth and final factor assesses the value of the legal services performed on an hourly basis. *In re Cardizem,* 218 F.R.D. at 533. The value of the legal services performed essentially amounts to a lodestar, which involves multiplying the number of hours counsel reasonably expended on the matter by their reasonable hourly rate. *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983)).[7] A good-faith

---

[7]      Although this factor may be viewed as a lodestar cross-check, *see Kogan*, 193 F.R.D. at 504, a cross-check is entirely optional. *See Van Horn v. Nationwide*

effort must be made to exclude hours that are excessive or otherwise unnecessary. *Hensley,* 461 U.S. at 434; *Brian A. v. Hattaway*, 83 F. App'x 692, 695 (6th Cir. 2003).

Excluding the substantial time dedicated to the *Coulter-Owens* matter (3,007.2 hours), Class Counsel have expended 1,667 hours litigating this case to date. (Scharg Decl. ¶ 17.) The value of Class Counsel's services at their current hourly rates for this case alone amounts to $824,238.50.[8] (*Id.* ¶ 18.) Therefore, the value of the time spent litigating Plaintiff's claims and securing the Settlement, including reimbursable expenses of $3,335.49, totals $827,573.99. (*Id.*)[9]

Moreover, it makes sense in these circumstances to account for the work Class Counsel performed in *Coulter-Owens*, which laid the groundwork for success here, especially with respect to discovery related to Time's alleged data

---

*Property & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (finding that district courts have complete discretion when deciding to calculate attorneys' fees based on the percentage-of-the-fund or lodestar methods, and thus a cross-check analysis is optional.)

[8]   Numerous courts have readily approved Class Counsel's rates in similar consumer class action litigation. *See, e.g., Gross v. Symantec Corp.*, No. 12-cv-00154, dkt. 88 (N.D. Cal. March 21, 2014) (noting that Edelson PC's current "hourly rates are reasonable and have previously been approved by other courts throughout the country"); *Kulesa v. PC Cleaner*, No. 12-cv-0725, Dkt. 101, at 16–17 (C.D. Cal. Aug. 26, 2014) (explicitly finding Edelson PC's lodestar reasonable and awarding enhanced lodestar).

[9]   This figure does not include the additional $35,000 to $50,000 in fees that Class Counsel will likely incur in connection with proceeding through final approval of the Settlement and the claims administration process, and dealing with any potential objections. (Scharg Decl. ¶ 18.)

disclosure practices. (*Id.* ¶ 11.) *See, e.g., Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 528-529 (E.D. Mich. 2015). In the *Coulter-Owens* matter, Class Counsel expended 3,007.2 hours—which, based on their current hourly rates, amounts to $1,740,582 of attorney time—in pursuit of efforts that directly benefited the Settlement Class here. (Scharg Decl. ¶ 19.) When both the *Perlin* and *Coulter-Owens* matters are considered, Class Counsel's services amount to $2,568,155.99.

Further, the Court has discretion to increase the base value of Class Counsel's services based on certain factors, known as a "multiplier." *Van Horn v. Nationwide Property & Cas. Ins. Co.*, 436 F. App'x 496, 499-500 (6th Cir. 2011) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Salient factors include the results achieved, the risk of not prevailing in the action, the skill and experience of the attorneys, and awards in similar cases. *See Geier v. Sundquist*, 372 F.3d 784, 793 (6th Cir. 2004); *see also Van Horn*, 436 F. App'x at 500.[10] Typical multipliers in this Circuit range from two to five, *see Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011), but have reached as high as 10 in appropriate cases, *see Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999). Just as results, risk, and skill support the reasonableness of the fees under the percentage

---

[10]     These factors closely track the *Ramey* criteria used to assess reasonableness, discussed in detail above. (*See supra* § III.B.)

method, they also justify a multiplier of the base value of Class Counsel's services.

Here, the requested fee of $2,960,000 represents a multiplier of between 3.4 and 3.5 (depending on the amount of work going forward), falls in the middle of the range of multipliers that are typically approved in this District and Circuit, including in other VRPA cases. *See, e.g., Moeller*, No. 5:16-cv-11367, dkt. 37 at 24 (approving a fee request that represented a multiplier of between 4.8 and 4.9); *Kinder*, No. 13-cv-11284, dkt. 77 at 18 (approving a fee request that represented a multiplier of 2.6). Such a multiplier is more than justified in this case given the complexity of the litigation, the work performed (including the 3,007.2 hours spent litigating the *Coulter-Owens* matter, which have not been accounted for in this analysis), and the outstanding relief secured for the Settlement Class. (Scharg Decl. ¶ 19.) *See Merkner v. AK Steel Corp.*, 2011 WL 13202629, at *5 (S.D. Ohio Jan. 10, 2011) (finding multiplier of 5.3 "acceptable under the facts and circumstances of this case" and collecting cases awarding multipliers between 4.5 and 8.74). When accounting for the additional 3,007.2 hours ($1,740,582) of attorney time that Class Counsel spent prosecuting Time in the *Coulter-Owens* matter, the combined value of Class Counsel's services—$2,568,155.99—represents a multiplier of only 1.1. (Scharg Decl. ¶¶ 17–19.)

Thus, the value of Class Counsel's services on an hourly basis supports the reasonableness of the requested fees here.

**B.     The Requested Incentive Award Reflects Ms. Perlin's Active Involvement in This Action and Should Be Approved.**

Incentive awards are frequently awarded in common-fund cases within this Circuit. *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003). The approval of an incentive award is examined through the following factors: (1) the class representative's actions in protecting the class's interests and whether those actions resulted in a substantial benefit to the class; (2) any direct or indirect financial risk the class representative assumed; and (3) the time and effort the class representative dedicated to the action. *Lasalle Town Houses Coop Assoc. v. City of Detroit*, No. 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016).

Based on these factors, an incentive award of $5,000 is reasonable. It's equal to the amount awarded to the class representatives in *Halaburda v. Bauer*, No. 12-cv-12831, dkt. 69, and *Moeller*, No. 5:16-cv-11367, dkt. 42, and half the amount awarded in *Kinder*, No. 13-cv-11284, dkt. 81. It's also a fraction of amounts often awarded in comparable settlements. *See, e.g.*, *Shane Grp.*, 2015 WL 1498888, at *18 (approving incentive awards for several named plaintiffs totaling $165,000, with individual awards ranging up to $45,000); *In re CMS Energy ERISA Litig.*, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding three class representatives $15,000 each for contributions to the case, including providing information to class counsel, reviewing documents, assisting with discovery, and participating in settlement discussions).

28

That said, the Sixth Circuit continues to express concern that incentive awards unjustly disproportionate to the named plaintiff's work and effort can create an incentive to act against the class's best interests. *See In re Pampers Dry Max Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). But this problem is most acute where paltry settlements are made functionally unavailable to a class, or where a settlement contains no common fund at all. *See, e.g., id.* at 716-17 (denying an incentive award where unnamed class members could not opt out of the settlement, and the likelihood of class members actually being able to take advantage of the monetary or injunctive relief was highly unlikely); *Hadix*, 322 F.3d at 898 (describing it as "plainly inappropriate" to grant an incentive award without a common fund). To avoid situations where a named plaintiff's receipt of a "bounty" acts as a disincentive for the class representative to act fairly, "[class] counsel must provide the district court with specific documentation . . . of the time actually spent on the case by each recipient of an award" so that the court can be sure that the award is designed as compensation, not a windfall. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir. 2016).

As documented in her declaration, Ms. Perlin spent approximately 25 hours protecting and advancing the interests of the class through her involvement in this case. (Declaration of Carolyn Perlin, ¶ 10, attached as Exhibit 3.) Plaintiff assisted Class Counsel in investigating her claims, detailing her magazine subscription

history, and providing input in the complaint drafting process. (*Id.* ¶ 3.) Further,

Plaintiff preserved and produced critical documents that needed to be turned over

to Time in discovery, and assisted in responding to Time's written discovery

requests. (*Id.* ¶ 6.) Plaintiff also actively conferred with counsel via telephone at

least once a month throughout the litigation, including during discovery and the

settlement process, to discuss the case status, case strategy, pending motions, and

the prospects of settlement. (*Id.* ¶¶ 5, 7-8.) As a direct result of her participation,

Class Counsel was able to secure the prospective and monetary relief for the class,

which is readily available for class members to take advantage of, as evidenced by

the tens of thousands of Claim Forms already submitted. (Scharg Decl. ¶¶ 9-10.)

Her $5,000 incentive payment is hardly a "bounty" and should be approved.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1)

approve attorneys' fees in the amount of $2,960,000, (2) grant Ms. Perlin an

incentive award of $5,000 in recognition of her efforts on behalf of the class, and

(3) award such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

Dated: August 28, 2018

**CAROLYN PERLIN**, individually and on behalf of the settlement class,

By: /s/ Ari J. Scharg
One of Plaintiff's attorneys

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596.1111
Fax: (248) 671.0335

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

  I, Ari J. Scharg, an attorney, hereby certify that on August 28, 2018, I served the above and foregoing ***Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

           <u>/s/ Ari J. Scharg    </u>