# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CAROLYN PERLIN, individually and on behalf of the settlement class,<br><br>Plaintiff,<br><br>v.<br><br>TIME INC., a Delaware Corporation,<br><br>Defendant. | Case No. 16-cv-10635<br><br>Hon. George Caram Steeh |

## PLAINTIFF'S MOTION FOR AND BRIEF IN SUPPORT OF
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**Respectfully submitted by:**

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn J. Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596-1111
Fax: (248) 671-0335

*Settlement Class Counsel*

**PLAINTIFF'S MOTION FOR
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Plaintiff Carolyn Perlin respectfully moves the Court to grant her Motion for Final Approval of Class Action Settlement. Specifically, Plaintiff requests that the Court find that (i) the notice to the Settlement Class satisfies the requirements of Due Process and Federal Rule of Civil Procedure 23, and (ii) the Settlement is fair, reasonable, and adequate meriting final approval. In accordance with Local Rule 7.1(a), counsel for Defendant will not oppose the relief sought by this motion. (*See* Parties' Class Action Settlement Agreement, ¶¶ 7.1-7.3, 10.1.).)[1]

For the reasons discussed in the accompanying brief, the Motion should be granted.

---

[1]     A copy of the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement") is attached hereto as Exhibit 1. Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Settlement Agreement.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**STATEMENT OF ISSUES PRESENTED**

1.      Whether this Court should find that notice to the Settlement Class

satisfies the requirements of Due Process and Federal Rule of Civil Procedure 23,

when direct notice, detailing the terms of the Settlement Agreement and individual

options for objecting, opting-out, or submitting a claim, was transmitted via email

and postcard and reached 97% of the Settlement Class?

**Plaintiff's Answer: Yes.**

2.      Whether this Court should grant final approval to the Settlement

Agreement under Michigan's Preservation of Personal Privacy Act—which is

popularly referred to as the Video Rental Privacy Act, M.C.L. § 445.1711-15

("VRPA")—finding it fair, reasonable, and adequate, when it delivers meaningful

prospective and monetary relief to the Settlement Class?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST IMPORTANT AUTHORITY

**UNITED STATES SUPREME COURT CASES:**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)

**UNITED STATES COURT OF APPEALS CASES:**

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*,
    636 F.3d 235 (6th Cir. 2011)

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983)

**UNITED STATES DISTRICT COURT CASES:**

*Halaburda v. Bauer Publ'g Co.*,
    No. 12-cv-12831 (E.D. Mich.  2015)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

**OTHER AUTHORITIES:**

Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide (2010)

Fed. R. Civ. P. 23

**TABLE OF CONTENTS**

I.      **INTRODUCTION** ............................................................. 1

II.     **SUMMARY OF THE LITIGATION** ............................... 4

     A.    **Defendant Time Inc. and the *Coulter-Owens* Matter** ...................... 4

     B.    **Perlin's Allegations and the VRPA** ............................... 5

     C.    **The Road to the Settlement Agreement** ........................... 7

III.    **TERMS OF THE SETTLEMENT AGREEMENT** .................................. 9

     A.    **Class Definition** ................................................ 9

     B.    **Monetary Relief** ............................................... 10

     C.    **Prospective Relief** ............................................ 10

     D.    **Payment of Notice and Settlement Administration Expenses** .................................... 10

     E.    **Payment of Incentive Award, Attorneys' Fees, and Expenses** .............................. 11

     F.    **Release** ...................................................... 11

IV.    **THE NOTICE PLAN COMPORTS WITH DUE PROCESS** ............... 11

V.     **THE SETTLEMENT WARRANTS FINAL APPROVAL** .................... 14

     A.    **Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval** ................................. 15

     B.    **In Protecting Reader Privacy and Conserving Judicial Resources, the Settlement Serves the Public Interest** .................. 20

**C.    The Complexity, Expense, and Duration of Further Litigation Favor Final Approval**................................................................ 22

**D.    The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval** .............................. 23

**E.    The Opinion of Class Counsel Supports Final Approval** ............ 25

**F.    The Reaction of Absent Class Members Favors Final Approval**................................................................................................... 27

**G.    The Settlement Is Free from Fraud and Collusion** ...................... 27

**VI.    CONCLUSION** ...................................................................................... 30

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ..................................................................... 11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)............................................................ 7, 8, 16

*Stanley v. Georgia*,
    394 U.S. 557 (1969) ............................................................... 20, 21

## United States Appellate Court Cases

*Coulter-Owens v. Time, Inc.*,
    695 F. App'x 117 (6th Cir. 2017)........................................... 17, 23

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) ........................................................ 12

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) ........................................................ 12

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ..................................................... 14

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
    726 F.2d 1075 (6th Cir. 1984) ..................................................... 16

*In re Pampers Dry Max Litig.*,
    724 F.3d 713 (6th Cir. 2013) ........................................................ 29

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ..................................................... 3, 19

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008)................................................. 27

*Parker v. Time Warner Entm't Co., L.P.*,
  331 F.3d 13 (2d Cir. 2003) ............................................................ 17

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
  636 F.3d 235 (6th Cir. 2011) .................................................. 15, 16

*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ............................................... *passim*

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) .......................................... 14, 20, 25

**United States District Court Cases**

*Coulter-Owens v. Rodale*,
  No. 14-cv-12688 (E.D. Mich. Sept. 29, 2016) .................... 2, 18, 26

*Coulter-Owens v. Time Inc.*,
  No. 2:12-cv-14390 (E.D. Mich.) ........................................ *passim*

*Coulter-Owens v. Time, Inc.*,
  308 F.R.D. 524 (E.D. Mich. 2015) ................................... 16, 22, 26

*Dick v. Sprint Commc'ns Co. L.P.*,
  297 F.R.D. 283 (W.D. Ky. 2014) ........................................ 12, 28

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013) ............................................ 3

*Gentrup v. Renovo Servs., LLC*,
  2011 WL 2532922 (S.D. Ohio June 24, 2011) ............................ 15

*Hainey v. Parrott*,
  617 F. Supp. 2d 668 (S.D. Ohio 2007) ...................................... 20

*Halaburda v. Bauer Publ'g Co, LP*,
  2:12-cv-12831 (E.D. Mich.) ................................................ *passim*

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
  2013 WL 692856 (E.D. Mich. Feb. 26, 2013) ............................ 14

*Harris v. comScore*,
　　No. 11-cv-05807 (N.D. Ill. 2014) ................................................................ 26

*In re Cardizem CD Antitrust Litig.*,
　　218 F.R.D. 508 (E.D. Mich. 2003) ........................................................*passim*

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
　　2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ........................................... 12

*In re Facebook Privacy Litig.*,
　　No. 10-cv-02389 (N.D. Cal. 2010) .............................................................. 26

*In re Google Buzz Privacy Litig.*,
　　No. 10-cv-00627, 2011 WL 7460099 (N.D. Cal. Jun. 2, 2011) .............. 3, 19

*In re Netflix Privacy Litig.*,
　　5:11-cv-00379 (N.D. Cal.) .................................................................. 3, 19, 26

*In re Packaged Ice Antitrust Litig.*,
　　2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .......................................... 21

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
　　1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ...................................... 20, 23

*In re Telectronics Pacing Sys., Inc.*,
　　137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................ 22

*Int'l Union v. Ford Motor Co.*,
　　2006 WL 1984363 (E.D. Mich. July 13, 2006) ........................................... 25

*IUE-CWA v. Gen. Motors Corp.*,
　　238 F.R.D. 583 (E.D. Mich. 2006) ........................................................ 23, 28

*Kinder v. Meredith Corp.*,
　　1:14-cv-11284 (E.D. Mich.) ............................................................ 2, 18, 26

*Kogan v. AIMCO Fox Chase, L.P.*,
　　193 F.R.D. 496 (E.D. Mich. 2000) .............................................................. 27

*Lasalle Town Houses Coop. Ass'n v. City of Detroit*,
  2016 WL 1223354 (E.D. Mich. Mar. 29, 2016) ........................................... 16

*Leonhardt v. ArvinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008) ................................................. *passim*

*Moeller v. Am. Media, Inc.*,
  No. 5:16-cv-11367 (E.D. Mich. Jun. 8, 2017) ................................... 3, 18, 23

*Sheick v. Auto. Component Carrier, LLC*,
  2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ........................................... 28

*Sims v. Pfizer, Inc.*,
  2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ........................................... 21

*Stinson v. Delta Mgmt. Assocs., Inc.*,
  302 F.R.D. 160 (S.D. Ohio 2014) ............................................................ 22

*UAW v. Gen. Motors Corp.*,
  2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ............................... 11, 12, 22

**Statutory Provisions**

28 U.S.C. § 1715 ............................................................................................ 13

Fed. R. Civ. P. 23 ............................................................................... 11, 12, 14

M.C.L. § 445 ................................................................................................ 6, 7

**Other Authorities**

Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
  Checklist and Plain Language Guide (2010) ................................................ 12

*Privacy: Sales, Rentals of Videos, etc.*,
  House Legislative Analysis Section, H.B. 5331, Jan. 20, 1989 ............... 7, 20

## I.   INTRODUCTION

On July 5, 2018, this Court preliminarily approved the class action

settlement between Plaintiff Carolyn Perlin ("Plaintiff") and Defendant Time Inc.

("Defendant" or "Time") (together, the "Parties") and directed that notice be sent

to the Settlement Class. (Dkt. 51.) The Settlement Administrator has implemented

the Court-approved notice plan, and direct notice has reached approximately 97%

of the Settlement Class. The reaction to the Settlement has been overwhelmingly

positive: of the approximately 601,227[2] members of the Settlement Class, not a

single one objected to the Settlement, only six (or 0.001%) have requested to be

excluded, and more than 70,000 have already submitted claims for payment. Given

the complete lack of opposition to the Settlement's terms and the overwhelmingly

positive response from the Settlement Class, the Court should have no hesitation in

granting final approval to the Settlement.

The Settlement's strength largely speaks for itself: it creates a $7.4 million

non-reversionary common fund from which Settlement Class Members' claims,

notice and administrative expenses, Court-awarded attorneys' fees, and an

---

[2]     In Plaintiff's Motion for Preliminary Approval, the number of class
members was estimated as "approximately 719,000 Michigan residents." (Dkt. 49.)
As noted in Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award
(dkt. 53), Defendant provided KCC, the Court-approved Settlement Administrator,
with a class list, that after the duplicates were removed resulted in a list containing
601,227 members. (Declaration of Lana Lucchesi ["Lucchesi Decl."] ¶¶ 7–8,
attached as Exhibit 3.)

incentive award to the Class Representative will be paid. In terms of individual relief, each Settlement Class Member that submits a short and simple Claim Form (either online or in hard-copy), will receive an estimated cash payment of $50. And, just as important, the Settlement delivers strong prospective relief by requiring Defendant to stop disclosing its Michigan customers' personal reading information to third party companies for a period of two years. Put simply, the Settlement achieves the paramount goals of this lawsuit: providing monetary relief to the class for their VRPA claims and stopping the unauthorized disclosure of their magazine preferences.

Ultimately, while the strength of the Settlement should be apparent on its face, the Court need not evaluate the Settlement in a vacuum. Indeed, a review of previous VRPA settlements in this District demonstrates that the Settlement compares favorably to those previously approved by the court. *See, e.g., Coulter-Owens v. Rodale*, No. 14-cv-12688, dkt. 54 (E.D. Mich. Sept. 29, 2016) (securing a $4.5 million fund for a class of approximately 580,000 subscribers with claiming class members receiving a *pro rata* payment of approximately $44); *Kinder v. Meredith Corp.*, No. 13-cv-11284, dkt. 81 (E.D. Mich. May 18, 2016) (securing a $7.5 million fund for a class of approximately 980,000 subscribers with claiming class members receiving a *pro rata* payment of approximately $50); *Halaburda v. Bauer Publ'g Co.*, No. 12-cv-12831, dkt. 68 (E.D. Mich. Jan. 6, 2015) (Steeh, J.)

(securing a $775,000 fund for a class of 40,000 subscribers with claiming class members receiving a *pro rata* payment of approximately $74); *Moeller v. Am. Media, Inc.*, No. 5:16-cv-11367, dkt. 42 (E.D. Mich. Jun. 8, 2017) (securing a $7.6 million fund for a class of 415,000 subscribers with claiming class members receiving an estimated $100).

And when compared to approved settlements of cases alleging violations of similar privacy statutes with statutory damage awards—which typically offer no monetary relief to the class whatsoever—the fairness, reasonableness, and adequacy of the instant settlement becomes even more apparent. *See, e.g.*, *Lane v. Facebook, Inc*., 696 F.3d 811, 820–22 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims, and directing $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig*., No. 5:11-cv-00379, dkt. 256 (N.D. Cal. Mar. 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig*., No. 10-cv-00627, 2011 WL 7460099, at *3 (N.D. Cal. Jun. 2, 2011) (approving $8.5 million *cy pres* settlement); *Fraley v. Facebook, Inc*., 966 F. Supp. 2d 939 (N.D. Cal. 2013) (approving privacy settlement providing claimants with a cash payment of $15).

In the end, if the Settlement is approved, more than 70,000 claiming Settlement Class Members will receive immediate cash payments, Defendant will

3

stop disclosing its subscribers' personal reading information to third parties

without consent, and the Parties will be able to call an end to years of hard-fought

and expensive litigation. *See Coulter-Owens v. Time Inc.*, No. 2:12-cv-14390-

GCS-MKM (E.D. Mich.). For these reasons, and those discussed further below,

Plaintiff respectfully requests that the Court grant final approval to the Parties'

proposed Class Action Settlement Agreement.

## II.   SUMMARY OF THE LITIGATION

The litigation history, allegations, and events leading up to the Settlement

provide context for its fairness, reasonableness, and adequacy.

### A.   Defendant Time Inc. and the *Coulter-Owens* Matter.

Defendant Time Inc. is an American magazine publisher whose portfolio

includes titles such as *Cooking Light*, *Coastal Living*, *Health*, *Southern Living*,

*Sunset*, *This Old House*, *All You*, *Big Picture*, *Essence, Edge*, *Entertainment

Weekly*, *Fortune*, *Golf*, *InStyle*, *Travel & Leisure*, *Time*, *Time for Kids*, *People*,

*People En Español*, *People Style*, *Money*, *Sports Illustrated*, *Sports Illustrated

Kids*, *Real Simple*, *Food & Wine*, and *Wallpaper*. (*See* dkt. 1, Plaintiff's Class

Action Complaint ["Compl."] ¶ 1.) Between its many titles, Time has acquired

millions of magazine subscribers throughout the country, hundreds of thousands of

which reside in the State of Michigan.

As the Court well knows by now, Class Counsel has prosecuted Time for

allegedly violating its Michigan subscribers' privacy rights for over six years. Prior to the instant litigation, Class Counsel litigated a related class action against Time in this Court captioned *Coulter-Owens v. Time Inc.*, Case No. 2:12-cv-14390-GCS-MKM (E.D. Mich.), which also alleged that Time violated the Michigan VRPA, but was brought by a different class representative and on behalf of a different class of magazine subscribers. The *Coulter-Owens* matter was litigated extensively for over four years, through class certification, summary judgment, and appeal. Ultimately, the Court granted, and the Sixth Circuit affirmed, Time's motion for summary judgment, holding that class members who purchased their magazine subscriptions from third-party agents did not purchase from Time "at retail," as required under the statute.

### B.     Perlin's Allegations and the VRPA.

Based on the Court's summary judgment ruling, Plaintiff Carolyn Perlin—represented by Class Counsel—brought this follow-on class action against Time on behalf of Michigan consumers who purchased magazine subscriptions directly from Time. In her complaint, Plaintiff alleges that Time doesn't just make money selling magazines and advertising space—it makes additional profit by selling its subscribers' personal choices in reading material. (Compl. ¶¶ 2, 22, 24–26, 51–53, 60.) And instead of simply selling lists of names that subscribe to certain magazines, Plaintiff alleges that Time offers for sale something far more valuable:

customers' magazine reading choices along with additional data about their income levels, religion, ages, race, political affiliations, travel habits, medical conditions, and other sensitive, personal information. (*Id*. ¶¶ 2, 19, 26, 37, 60.) Time allegedly obtains this demographic and lifestyle data about its customers from data miners and other third parties by offering its subscriber lists in exchange for the supplemental demographic data. (*Id*. ¶¶ 2, 26.)

Of course, none of this is illegal if a magazine publisher informs its subscribers about what it is doing and gets consent to disclose the information. *See* M.C.L. § 445.1713. The problem is, Plaintiff alleges, Time's offline subscribers (i.e., those who subscribe via postcard or over the phone) never provided consent for Time to disclose information to third parties related to their magazine subscriptions. (*Id*. ¶¶ 3, 27, 33–38, 56.)

On February 19, 2016, Perlin—a Michigan citizen that subscribed to Defendant's *People* magazine—initiated this suit. (*Id.* ¶¶ 29–31.) Perlin alleges that at no time did she consent to allow Time to disclose her choice of magazine subscription to any third parties, but Defendant disclosed that information anyway. (*Id.* ¶¶ 32–35.) She further alleges that this conduct violates the VRPA, which prohibits retailers, publishers, and other entities engaged in the business of selling written materials at retail from disclosing records or information concerning the purchase of those materials by a customer that indicates the identity of the

6

customer. M.C.L. § 445.1712. The Michigan legislature rightfully recognized that a person's choice in reading materials "is nobody's business but one's own," and passed the VRPA "to explicitly protect a consumer's privacy in buying and borrowing" such materials. *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. 5331, Jan. 20, 1989. Given the importance of reader privacy, the version of the VRPA at issue here (i.e., the version that existed prior to the Michigan Legislature's 2016 amendments) provides for statutory damages of $5,000 per violation. (*See* dkt. 27 at 7–30.)

### C.     The Road to the Settlement Agreement.

Since Perlin filed this case, Time has mounted a vigorous defense. Defendant's initial attack came on May 6, 2016, when it moved to dismiss, arguing that Plaintiff lacked Article III standing—because, according to Time, the 2016 amendment to the VRPA requiring actual damages applied retroactively and required dismissal—and failed to state a claim for unjust enrichment upon which relief could be granted. (Dkts. 10, 16.) Time then submitted supplemental briefing to the Court highlighting the Supreme Court's then-recent decision on Article III standing in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). (Dkt. 13.) When filed, the questions of whether the amendments to the VRPA applied retroactively to Plaintiff's claims and whether *Spokeo* stripped Plaintiff of Article III standing were complex issues of first impression, which Plaintiff opposed with equal vigor in a

7

lengthy response. (Dkt. 14.) Plaintiff argued that the VRPA amendments only apply prospectively to claims that, unlike Perlin's, accrued after its effective date, and that Defendant misunderstood *Spokeo*, which instead confirmed that Perlin has Article III standing because Time's undisputed disclosure of her personal reading choices was an invasion of her substantive privacy interests. (*Id.*) Ultimately, on February 15, 2017, the Court denied Time's motion to dismiss in its entirety. (Dkt. 27.)

Time thereafter answered Plaintiff's Complaint on March 1, 2017, by denying the allegations and raising 17 affirmative defenses, including that Time does not sell magazines "at retail" even through its direct sales and that the statutory damages sought violate Time's Due Process rights. (Dkt. 29.) The Parties then exchanged initial disclosures and issued written discovery on each other, and Perlin served subpoenas on eight third parties including Acxiom Corporation and Wiland Direct, two entities to which she believed, based on Class Counsel's previous work in *Coulter-Owens*, Time disclosed subscriber information. (*See* Declaration of Ari J. Scharg in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ["Scharg Decl."], attached hereto as Exhibit 2, ¶ 5.)

Over the next five months, the Parties engaged in substantial class- and merits-related discovery, which included the production and review of thousands of documents, numerous meet-and-confer conferences, and the scheduling of

depositions for both Perlin and a corporate representative from Time. (*Id.* ¶ 6.) Before taking the scheduled depositions, however, the Parties engaged in settlement discussions in an effort to resolve the case without the expense of further litigation, which would necessarily include adversarial class certification and summary judgment briefing as in the *Coulter-Owens* matter. (*Id.* ¶ 7.) After multiple rounds of arm's-length negotiations between counsel experienced in valuing and negotiating VRPA class settlements, the Parties ultimately reached an agreement on the principal terms of the Settlement. (*Id.* ¶ 8.) The Parties then diligently prepared and executed a written Settlement Agreement. (*Id.*) The Court granted preliminary approval to that Settlement on July 5, 2018. (Dkt. 51.)

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement Agreement are briefly summarized as follows:

### A.   Class Definition

As part of preliminary approval, the Court certified a Settlement Class, defined as "[a]ll persons with Michigan street addresses who purchased a subscription to a Time Publication directly from Time, but in a manner other than through a Time website, between February 19, 2013 and February 19, 2016."[3]

---

[3]   Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who

(Dkt. 51; Agreement ¶ 1.30.)

## B.      Monetary Relief

Defendant has established a $7.4 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* share, after payment of notice and administrative expenses, attorneys' fees, and any incentive award to the Class Representative. (Agreement ¶¶ 1.32, 2.1.) Individual payments are estimated to be approximately $50. (Scharg Decl. ¶ 9.)

## C.      Prospective Relief

For a period of two years from the Effective Date, and in accordance with the Settlement Agreement, Defendant will not disclose any Michigan customers' subscription information to third-party companies without their prior express written consent. (Agreement ¶ 2.2.)

## D.      Payment of Notice and Settlement Administration Expenses

Defendant has paid, and will continue to pay, all notice and Settlement Administration Expenses out of the Settlement Fund. (*Id*. ¶¶ 1.28, 1.32.)

---

properly execute and file a timely request for exclusion from the Settlement Class; (4) Online Purchasers; and (5) the legal representatives, successors or assigns of any such excluded persons. (Agreement ¶ 1.30.)

### E.     Payment of Incentive Award, Attorneys' Fees, and Expenses

Defendant has agreed to pay an incentive award from the Settlement Fund to

Plaintiff Perlin the amount of $5,000 to compensate her for her service as Class

Representative, as well as reasonable attorneys' fees not to exceed 40% of the

Settlement Fund. (*Id.* ¶¶ 1.32, 8.1, 8.3.) Both awards are subject to the Court's

approval, which Plaintiff has petitioned for separately. (*See* dkt. 53.)

### F.     Release

In exchange for the relief described above, Defendant and each of its related

and affiliated entities will receive a full release of all claims arising out of or

related to Defendant's disclosure of its Michigan customers' magazine subscription

information. (*See* Agreement ¶¶ 1.25–1.27 for full release language.)

## IV.   THE NOTICE PLAN COMPORTS WITH DUE PROCESS.

Before final approval can be granted, Due Process and Rule 23 require that

the notice provided to the Settlement Class is "the best notice that is practicable

under the circumstances, including individual notice to all members who can be

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle

& Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably

calculated . . . to apprise interested parties of the pendency of the settlement

proposed and to afford them an opportunity to present their objections." *UAW v.

Gen. Motors Corp.*, 2006 WL 891151, at *32-33 (E.D. Mich. Mar. 31, 2006)

(citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (citation omitted).

That said, Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 289 (6th Cir. 2016) (finding that notice and claims processes were appropriate where 90.8% of notices were successfully delivered to addresses associated with class members). The notice plan here goes well above these standards, as it provided direct notice via a postcard or email to 97% of the Settlement Class.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. (Dkt. 51 at 5–6.) That plan has now been fully carried out by professional settlement administrator Kurtzman Carson Consultants, LLC ("KCC"). Pursuant to the Settlement, Defendant provided KCC with a list of 602,538 available names, addresses and emails of potential members of the Settlement Class. (Lucchesi Decl. ¶ 7.) After KCC removed duplicates, the Class List contained 601,227 potential members. (*Id.* ¶ 8.) KCC successfully delivered the Court-approved notice via email to 255,006 class members and via postcard to another 328,342 class members. (*Id.* ¶¶ 10–12.) Accordingly, 97% of the Settlement Class was provided with direct notice of the Settlement. (Agreement ¶¶ 4.1(b)-(c)); (Lucchesi Decl. ¶¶ 8–12.)[4] These summary notices also directed members of the Settlement Class to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees; and see deadlines and answers to frequently asked questions. (Agreement ¶ 4.1(d)); (Lucchesi Decl. ¶ 14.)

Given the broad reach of the notice, and the comprehensive information provided, the requirements of Due Process and Rule 23 are met.

---

[4]   KCC also notified the appropriate state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. (Lucchesi Decl. ¶¶ 3–6.)

## V.     THE SETTLEMENT WARRANTS FINAL APPROVAL.

The Federal Rules of Civil Procedure require judicial approval of class

action settlements. Fed. R. Civ. P. 23(e); *Halliday v. Weltman, Weinber & Reis*

*Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013). At final approval,

the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed.

R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

Courts within the Sixth Circuit recognize a strong "federal policy favoring

settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see*

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

To evaluate the fairness, reasonableness, and adequacy of a settlement

agreement at final approval, courts look to seven factors: (1) the likelihood of

success on the merits; (2) the public interest; (3) the complexity, expense, and

duration of future litigation; (4) the opinions of class counsel; (5) the amount of

discovery completed; (6) the reaction of absent class members; and (7) the risk of

fraud or collusion (the "*UAW* factors"). *UAW*, 497 F.3d at 631 (citing *Granada*

*Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *Williams*, 720

F.2d at 922-23). The court need only analyze the factors that are relevant to the

settlement agreement and may weigh "particular factors according to the demands

of the case." *Leonhardt*, 581 F. Supp. 2d at 832 (citations and internal quotations

omitted). Although the factors may be assessed individually, the inquiry into any

one factor often overlaps with other factors. *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011).

As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A.   Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval.

The first and most important *UAW* factor requires weighing the plaintiff's likelihood of success on the merits against the immediate benefits of settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522-23 (E.D. Mich. 2003). "Although this inquiry understandably does not require [the court] to decide the merits of the case or resolve unsettled legal questions," the fairness of a proposed settlement cannot be judged "without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (citation omitted). Ultimately, the question is whether the class's interests "are better served if the litigation is resolved by the settlement." *Leonhardt*, 581 F. Supp. 2d at 836 ("[A]bsent settlement, all class members would be subject to the uncertainty, risk, hardship and delay attendant to continued litigation which ultimately might leave them with absolutely nothing.") (citation omitted); *see also Lasalle Town Houses Coop. Ass'n v. City of Detroit*, 2016 WL 1223354, at *6 (E.D. Mich. Mar. 29, 2016) (granting final approval

where "class members would bear the risk of continued litigation with the potential for an adverse result."). The likelihood that Plaintiff will succeed on the merits thus serves as a "gauge" against which the benefits of the settlement are measured. *Poplar Creek*, 636 F.3d at 245 (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984)).

Here, Perlin believed that her chances of succeeding in certifying an adversarial class and prevailing on summary judgment or at trial were strong, but they were also far from certain. (Scharg Decl. ¶ 10.) Plaintiff had defeated Defendant's main case-dispositive argument—lack of Article III standing due to *Spokeo* and the retroactive application of the amended VRPA—and the uniformity of Time's conduct toward the class made the case amenable to certification, especially given that this Court previously certified a similar class of Time subscribers in *Coulter-Owens*. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015) (certifying class where Time engaged the exact same conduct alleged here).

That said, there remained several ways in which the class could wind up empty-handed. Absent final approval of the Settlement, Time would surely move for summary judgment, asserting any one (or more) of its numerous defenses on the merits. (*See* dkt. 29, asserting 17 affirmative defenses.) For example, Time would likely continue to claim—as it did at summary judgement in *Coulter-*

*Owens*—that the VRPA (i) does not prohibit the disclosure of the magazine subscription information at issue, because Acxiom is its agent and the disclosures to Wiland were permissible under the VRPA's "direct marketing exception," and (ii) does not apply to Time at all because Time is not engaged in the business of selling magazines "at retail," as is required under the scope of the Statute. (Scharg Decl. ¶ 11); *see Coulter-Owens*, 2016 WL 612690 (E.D. Mich. Feb. 16, 2016), *aff'd*, 695 F. App'x 117 (6th Cir. 2017). Time has also made clear that it would continue to challenge the constitutionality of the VRPA. (Scharg Decl. ¶ 11.)

If the case moved past summary judgment, Plaintiff would still need to overcome significant hurdles in proving her case at trial. (*Id.* ¶ 12.) Moreover, Plaintiff recognizes that Time would appeal the merits of any adverse decision at summary judgement or trial. (*Id.*) And, due to the massive aggregated statutory damages in play, Time would be sure to argue—both at trial and on appeal—for a reduction of damages based on due process concerns. (*Id.*); *see Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Against this backdrop of uncertainty, the benefits of the Settlement are unmistakable. In terms of monetary relief, the Settlement's $7.4 million non-reversionary Settlement Fund will be used to pay Settlement Class Members *pro*

17

*rata* cash payments which, given the outstanding response rate to the Settlement (*see* Lucchesi Decl. ¶ 17), are estimated to be $50 per claimant. (Scharg Decl. ¶ 9.) These significant cash payments are in line with—and in some cases exceed—the payments class members have received in previous VRPA settlements approved in this District. *See, e.g., Rodale,* No. 14-cv-12688, dkt. 54 (securing a $4.5 million fund for a class of approximately 580,000 subscribers under VRPA with claiming class members receiving a *pro rata* payment of approximately $44); *Kinder*, No. 13-cv-11284, dkt. 81 (securing a $7.5 million fund for a class of approximately 980,000 subscribers under VRPA with claiming class members receiving a *pro rata* payment of approximately $50); *Halaburda*, No. 12-cv-12831, dkt. 68 (securing a $775,000 fund for a class of 40,000 subscribers under VRPA with claiming class members receiving a *pro rata* payment of approximately $74); *Moeller*, No. 5:16-cv-11367, dkt. 42 (securing a $7.6 million fund for a class of 415,000 subscribers under VRPA with claiming class members receiving an estimated $100).

The reasonableness of the anticipated $50 *pro rata* payments becomes all the more apparent when looking at the relief afforded in the typical privacy settlement, where classes tend to be enormous, but individual class members receive only *cy pres* relief without any individual payments. *See, e.g.*, *Lane*, 696 F.3d at 820-22 (affirming $9.5 million settlement providing *cy pres* payment as sole monetary

relief in case where statutory damages of up to $10,000 per claim were available in class of millions), *cert. denied* 134 U.S. 8 (Nov. 4, 2013); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (approving $8.5 settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in a class of millions); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of $2,500 per claim were available to class of millions).

And, often overshadowed, but just as important, the Settlement delivers meaningful prospective relief. For the next two years, Defendant will not disclose its Michigan customers' subscriber information to third parties without prior express written consent. (Agreement ¶ 2.2(a).) This relief aligns perfectly with both the goals of the VRPA and those of this lawsuit. *See, e.g.*, *Halaburda*, dkt. 69, at *19 (E.D. Mich. Jan. 6, 2015) (Steeh, J.) (finally approving a class action in similar VRPA litigation and finding that "the more important provisions of the settlement agreement are the provisions according equitable relief and a cessation of the disclosure altogether").

Where, as in this case, Plaintiff's likelihood of success on the merits is tempered by uncertainty, the benefits of the Settlement—both prospective and monetary—are readily apparent. The first *UAW* factor thus supports final approval.

**B.**   **In Protecting Reader Privacy and Conserving Judicial Resources, the Settlement Serves the Public Interest.**

A settlement that serves the public interest is likely to be found fair, reasonable, and adequate. *In re Cardizem*, 218 F.R.D. at 530. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See id.*; *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *12 (E.D. Mich. Dec. 20, 1996) ("Voluntary resolution [of complex class action litigation] is in the public interest"); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("Public policy generally favors settlement of class action lawsuits"). To serve the public interest, a settlement agreement that seeks to enforce a statute "must be consistent with the public objectives" that the legislature sought to attain. *Williams*, 720 F.2d at 923 (citations omitted).

The instant Settlement furthers the objectives sought by the Michigan Legislature when it enacted the VRPA over 30 years ago. The statute recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. At its core, the VRPA protects Plaintiff's "right to read or observe what [s]he pleases—the right to satisfy h[er] intellectual and emotional needs in the privacy of h[er] own home." *Stanley v. Georgia*, 394 U.S. 557, 565 (1969). Thus, the Settlement serves the legislature's goal of protecting an individual's right to privacy in the written materials he or she

20

chooses to read because it prevents the disclosure of magazine reading preferences by Defendant without express consent. (*See* Agreement ¶ 2.2.)

It also advances the public interest by conserving judicial resources, avoiding "notoriously difficult and unpredictable" class action litigation that can consume the court's time and money. *See In re Cardizem*, 218 F.R.D. at 530; *see also Leonhardt*, 581 F. Supp. 2d at 839. To be sure, if the Settlement does not receive the Court's final approval, the case's complex and lengthy litigation would continue and would require significantly more motion practice and potential appeals. *See Sims v. Pfizer, Inc.*, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016) (finally approving settlement and finding that "absent settlement, all class members would be subject to the uncertainties, hardship, and delay attendant to continued litigation."). Here, there is no need to deviate from the "strong public interest in encouraging settlement of complex class action litigation." *See In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) (citation omitted).

Simply put, the Settlement serves the public interest because it furthers the underlying purpose of the VRPA—to protect the privacy of consumers' personal reading habits—and conserves judicial resources. The second factor therefore weighs in favor of final approval.

**C.    The Complexity, Expense, and Duration of Further Litigation Favor Final Approval.**

The third *UAW* factor requires the consideration of the complexity, expense, and duration of further litigation, and the comparison of those risks to the relief afforded under the settlement. *See, e.g., In re Cardizem*, 218 F.R.D. at 523; *UAW*, 2006 WL 891151, at \*18 (citation omitted). Final approval is favored in cases such as this one, where the parties are "likely [to] expend significant time and money litigating [a] case through class certification, dispositive motions, trial, and appeal," further chipping away at the amount—and possibility—of class recovery. *Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 164 (S.D. Ohio 2014); *see In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).

Undoubtedly, further litigation in this case would produce substantially more motion practice, including, as described above, an adversarial motion for class certification, motions for summary judgment, and inevitable appeals. This is especially true given that Class Counsel and Defendant have already been down that road having litigated the *Coulter-Owens* matter, which required complex and time-consuming briefing on class certification, for summary judgment, and appeal. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015) (granting class certification); *Coulter-Owens v. Time, Inc.*, No. 12-cv-14390, 2016 WL 612690 (E.D. Mich. Feb. 16, 2016) (ruling on the parties' cross-motions for summary judgment); *Coulter-Owens v. Time, Inc.*, Nos. 16-1321 & 16-1380, 695 F. App'x

117 (6th Cir. 2017) (affirming the district court's summary judgment ruling). And, absent a summary judgment victory here, such a hard-fought case would ultimately lead to a trial, thus guaranteeing that the matter would not conclude any time in the near future. Ultimately, failure at any one of these points could strip the class of all recovery, making further litigation "a high stakes 'zero sum' undertaking." *Leonhardt*, 581 F. Supp. 2d at 833.

Absent final approval of the instant Settlement, the complexity, expense, and duration of further litigation will threaten a positive outcome for the class. Accordingly, the third *UAW* factor supports final approval.

### D. The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval.

The fourth *UAW* factor examines the stage of the proceedings and the amount of discovery that has taken place. *In re Rio*, 1996 WL 780512, at *13. Although "[t]here is no precise yardstick to measure the amount of litigation that the parties should conduct before settling," the case should be developed enough to raise the court's decision "above mere conjecture." *Id.* (citation and internal quotations omitted). What is imperative is not the amount of formal discovery completed, but whether the parties and the court have sufficient information to make a reasoned decision with respect to settlement. *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("That the parties conducted their investigation through informal discovery . . . is not unusual or problematic, so long

23

as they and the court have adequate information in order to evaluate the parties' relative positions.").

The considerable amount of class and merits discovery completed in this case ensured that the Parties and the Court would have sufficient information to assess the strength of the Settlement. Indeed, before this case even began, Class Counsel had a thorough understanding of Time's disclosure practices given the hundreds of thousands of documents they obtained and reviewed, and the high-ranking corporate representative they deposed in the *Coulter-Owens* matter. (Scharg Decl. ¶ 4.) With that knowledge, Perlin was able to propound targeted formal discovery requests, which resulted in Time producing thousands of responsive documents that Class Counsel diligently analyzed throughout the discovery process. (*Id.* ¶¶ 5–6.) Plaintiff also served subpoenas on eight third parties, including Acxiom Corporation and Wiland Direct, who provided more detailed information about the data transmissions at issue. (*Id.* ¶ 5.)

As the case progressed toward settlement, Plaintiff obtained additional, albeit informal, discovery from Time regarding the size and composition of the class. (*Id.* ¶ 7.) With these final data points in hand, along with the knowledge acquired from litigating and settling other VRPA class actions in this District, the Parties and their respective counsel had all the information they needed to fully understand the pertinent issues of the case and reach an informed resolution.

In the end, counsel for both Parties are well equipped at this advanced stage of the litigation with the information needed to make a reasoned decision about settlement, and they have conveyed this information to the Court. As such, the fourth *UAW* factor weighs in favor of final approval.

### E.    The Opinion of Class Counsel Supports Final Approval.

The fifth *UAW* factor assesses the opinion of experienced counsel regarding the settlement. *UAW*, 497 F.3d at 631; *Williams*, 720 F.2d at 922-23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Counsel's judgment is entitled to significant weight. *Leonhardt*, 581 F. Supp. 2d at 837. The deference afforded to counsel's opinion depends on both their skill and experience, *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *25 (E.D. Mich. July 13, 2006), as well as "the amount of discovery completed and the character of the evidence uncovered." *Williams*, 720 F.2d at 923.

Here, Class Counsel are well-respected attorneys with significant experience litigating consumer class actions of similar size, scope, and complexity. (Scharg Decl. ¶ 13); (Firm Resume of Edelson PC, a true and accurate copy of which is attached hereto as Exhibit 2-A). In addition to being at the forefront of VRPA litigation, *see, e.g., Halaburda*, No. 12-cv-12831, dkt. 68, Edelson PC is widely known for its work in the area of consumer privacy litigation. *See, e.g., In re*

*Facebook Privacy Litig.*, No. 10-cv-02389, dkt. 69 (N.D. Cal. 2010) (recognizing Edelson PC as "pioneers in the electronic privacy class action field"); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, dkt. 59 (N.D. Cal. Aug. 12, 2011) (noting Edelson PC's "significant and particularly specialized expertise in electronic privacy litigation and class actions"); *Harris v. comScore*, No. 11-cv-05807, dkt. 369 (N.D. Ill. 2014) (granting final approval to one of the largest consumer class actions ever brought under federal electronic privacy laws, in which Edelson PC served as sole lead counsel); *see also Coulter-Owens v. Time, Inc.*, 308 F.R.D. at 527 (Steeh, J.) (achieved adversarial certification in a related VRPA class action against Time, Inc. and appointed class counsel); *Kinder*, No. 14-cv-11284, 2016 WL 454441 (E.D. Mich. Feb. 5, 2016) (appointing attorneys from Edelson PC as class counsel for settlement purposes in a similar VRPA class action); *Rodale, Inc*., No. 1:14-cv-12688-RHC-RSW, dkt. 44 (E.D. Mich. May 3, 2016) (same); *Moeller*, No. 5:16-cv-11367-JEL-EAS, dkt. 34 (E.D. Mich. Jun. 8, 2017) (same).

Class Counsel believe that the Settlement is fair, reasonable, and adequate. (Scharg Decl. ¶ 14.) In light of their experience, and bolstered by the significant amount of discovery completed in this case, their opinion in support of final approval satisfies this *UAW* factor.

**F.      The Reaction of Absent Class Members Favors Final Approval**

The sixth *UAW* factor weighs in favor of approval where the majority of class members have elected to remain in the settlement class without objecting. *In re Cardizem*, 218 F.R.D. at 527. A small number of opt-outs and objections "are to be expected in a class action" and do not impact the settlement's fairness. *Id.* (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 29 out of 11,000 class members objected).

In this case, more than 70,000 people have already filed claim forms, not a single Settlement Class Member has objected, and only 6 individuals have opted out (a mere 0.001% of the Settlement Class). (Lucchesi Decl. ¶¶ 15–17.) This exceptional participation rate and complete lack of opposition to the Settlement Class leaves no question that the class members view the Settlement favorably, which further underscores its fairness.

Given this favorable reaction, the sixth *UAW* factor supports final approval.

**G.      The Settlement Is Free from Fraud and Collusion.**

The final *UAW* factor ensures that the settlement is the "product of arm's-length negotiations as opposed to collusive bargaining." *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501-02 (E.D. Mich. 2000); *see also Sheick v. Auto. Component Carrier, LLC,* 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010)

(explaining that arm's-length negotiations conducted "by adversarial parties and experienced counsel" are indicative of a settlement's fairness, reasonableness, and adequacy). The absence of fraud or collusion is presumed unless there is evidence to the contrary. *IUE-CWA*, 238 F.R.D. at 598. *See UAW*, 497 F.3d at 628; *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. at 295 (recognizing that courts "presume the absence of fraud or collusion in class action settlements" and finding that the exchange of data through litigation and the absence of allegations of fraud or collusion indicated that the settlement was the result of a good-faith negotiation) (quoting *Leonhardt*, 581 F.Supp. 2d at 838).

The instant settlement is the product of informed negotiations conducted at arm's-length by experienced counsel representing adversarial parties. (Scharg Decl. ¶ 15.) As detailed above, Class Counsel have built their practice upon complex consumer class action litigation, and have significant experience with the VRPA. (*See* Section V.E., *supra*.) Likewise, defense counsel—attorneys from sophisticated law firms—have a wealth of experience representing magazine publishers across the country, and have been successful in defeating several other VRPA class actions, including the related *Coulter-Owens* matter. (Scharg Decl. ¶ 15.) As reflected by the dockets in this case and *Coulter-Owens*, the Parties have vigorously pursued their own interests and positions throughout the litigation, further confirming the absence of fraud or collusion. *See Leonhardt*, 581 F. Supp.

2d at 838; (Scharg Decl. ¶ 16.) And when the Parties were finally ready to discuss the possibility of settlement, all of their negotiations occurred only at arm's-length and neither party discussed the issue of attorneys' fees until after the class relief had been negotiated and secured. (Scharg Decl. ¶ 16.)

The arm's-length nature of these negotiations is not altered by the fact that the Settlement permits the Court to award Plaintiff a modest $5,000 service award to compensate her for the approximately 25 hours of service she provided to ensure the class she represented obtained meaningful relief. (*See* dkt. 53.) As explained in detail in Perlin's request for a service award, here, an incentive award of $5,000 is not a bounty or a windfall, and is in fact reasonable to compensate her for the significant amount of time she invested in obtaining a $7.4 million common fund settlement for the class. (*Id.* at 28–30, discussing *In re Pampers Dry Max Litig.*, 724 F.3d 713 (6th Cir. 2013) and Plaintiff's substantial service throughout this litigation.) Modest service awards—like the one sought here—are routinely approved in this District and do not create either an adequacy issue nor indicate collusion when, as here, the award provides compensation for time that is spent on a case that secures meaningful relief for the class. (*See* dkt. 53.)

There should be no question that the Settlement is entirely free from fraud or collusion and the final *UAW* factor supports granting final approval.

29

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order (i) granting final approval to the Settlement Agreement, and (ii) awarding such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

Dated: October 1, 2018

**CAROLYN PERLIN**, individually and on behalf of the settlement class,

By: /s/ Ari J. Scharg
          One of Plaintiff's attorneys

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Schuyler R. Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596.1111
Fax: (248) 671.0335

*Settlement Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on October 1, 2018, I served the above and foregoing ***Plaintiff's Motion for and Brief in Support of Final Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

/s/ Ari J. Scharg